## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION, et al., <br><br> *Petitioners,* <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> *Respondents.* | No. 26-1037 |

## <u>PRIVATE RESPONDENTS-INTERVENORS' OPPOSITION TO MOTION TO COMPLETE THE ADMINISTRATIVE RECORD</u>

This Court should deny petitioners' motion to complete the administrative record. Although styled as a motion to "complete" the record, petitioners are in fact asking to supplement the administrative record with two untimely supplemental comments and to require the EPA to "disclose the response-to-comments document that existed at the time of EPA's decision," even though the response-to-comments document already included in the record was finalized before the rule was promulgated. Mot.1. Granting petitioners' meritless request—along with their accompanying motion to stay EPA's rescission of the 2009 endangerment finding— would delay merits briefing and the ultimate resolution of this case. Because

petitioners are unable to show that EPA inappropriately excluded anything from the administrative record, the Court should reject the motion.

## BACKGROUND

On February 18, 2026—not February 12, 2026, *contra* Mot.8—EPA published a rule that rescinded the 2009 Endangerment Finding, as well as all greenhouse-gas emission standards for model years 2012 to 2027 and beyond.  91 Fed. Reg. 7686 (Feb. 18, 2026).  As part of the rulemaking process, EPA also posted a response-to-comments document on February 13, 2026—nearly a week before the rule's publication date.  Petitioners acknowledge that the relevant document was posted on the morning of February 13, 2026, and note that the "document's metadata show it was created after 11 PM on February 12."  Mot.9-10.  That document is part of the administrative record and the current record before this Court.

Before the rule was finalized, petitioner Environmental Defense Fund raised concerns about the agency's reliance on various draft reports authored by the Department of Energy's Climate Working Group.  *See* Ex.A, EPA-HQ-OAR-2025-0194-2608 at 188-93.  The Environmental Defense Fund also raised the same concerns in the untimely supplemental comments at issue here.  91 Fed. Reg. at 7691 n.8.  In explaining its final decision to return to its pre-2009 interpretation of Section 202 of the Clean Air Act, the agency expressly disclaimed reliance on the draft reports.  *Id*.  EPA similarly received post-comment-period comments from state and

local government petitioners objecting that the agency's draft regulatory impact analysis (RIA) contained an appendix that was apparently drafted by a private citizen.  Mot.7.  Once again, EPA addressed any potential issue by removing that appendix from the final RIA.  EPA-HQ-OAR-2025-0194-31089, at 249.

Petitioners have now moved this Court to compel EPA to include those untimely comments in the administrative record and either certify that the response-to-comments document was finalized before the rule's publication or disclose the version of the document that "existed at the time of EPA's decision."  Mot.1.

## ARGUMENT

Petitioners ask this Court to order EPA to provide reassurance that a response-to-comments document posted on February 13, 2026, was really finalized before the agency made its final decision.  That request is meritless, as the appropriate date for finalizing both the rule and any responses to a significant comment is "the date of … promulgation," 42 U.S.C. §7607(d)(6)(C)—here, February 18, 2026—and the response-to-comments document already in the record was indisputably finalized before then.

Petitioners' request to supplement the record with their untimely comments is similarly unavailing.  42 U.S.C. §7607 specifies that only those comments received "during the comment period shall be placed in the docket."  *Id*. §7607(d)(4)(B)(i).  That forecloses the relief they seek here.  Moreover, petitioners were aware of the

alleged issues that form the basis for their untimely comments prior to the close of the comment period, and they had every opportunity to raise their objections in a timely fashion—and indeed, some of them did just that.  This Court should reject the motion.

## I.  EPA Appropriately Included The Response-to-Comments Document Prepared Before Final Publication.

The Clean Air Act requires an EPA "promulgated rule" to be "accompanied by a response to each of the significant comments" that were submitted during the comment period, 42 U.S.C. §7607(d)(6)(B), and prohibits "a promulgated rule" from being "based (in part or whole) on any information or data which has not been placed in the docket as of the date of such promulgation," *id*. §7607(d)(6)(C).  "The record for judicial review," in turn, "shall consist exclusively of the material referred to in," *inter alia*, "subparagraphs (A) and (B) of paragraph (6)"—i.e., the responses to comments and information placed on the docket "as of the date of … promulgation." *Id*. §7607(d)(6), (7)(A).  The "ordinary meaning" of the term "promulgation" is "publication in the Federal Register." *Horsehead Res. Dev. Co. v. EPA*, 130 F.3d 1090, 1093 (D.C. Cir. 1997); 40 C.F.R. §23.3.  Under the plain text of §7607, then, any response-to-comments document finalized before a rule's publication is undoubtedly a proper part of the record for judicial review, not a post-hoc addition. Simply put, the date at which the record must be finalized is "the date of …

4

promulgation," which is when the rule is officially published in the Federal Register and can be challenged in Court as a "final action." 42 U.S.C. §7607(b).

Petitioners concede that the record can include only documents and information "placed in the docket as of the date of [rule] promulgation." Mot.13 (quoting 42 U.S.C. §7607(d)(6)(C)). According to petitioners, the response-to-comments document in the current record was created on February 12, 2026, and posted on the docket on February 13, 2026, nearly a week before the final rule's promulgation date of February 18, 2026. Mot.9, 14-15. So according to petitioners' own timeline, there is little question that the response-to-comments document currently in the administrative record was properly included because it was created and placed on the docket before "the date of … promulgation," as the statute requires. 42 U.S.C. §7607(d)(6), (d)(7)(A).

Despite the rule's promulgation on February 18, 2026, petitioners argue that the response-to-comments document is not properly included in the administrative record because metadata suggests that it was created on February 12, a few hours after the EPA Administrator said in a press conference at the White House that the then-forthcoming recission was "signed, sealed, delivered." Mot.4, 15. By that logic, petitioners maintain that the response-to-comments in the current record must be a "post-decisional" document. Mot.15. Petitioners' remarkable suggestion that the EPA Administrator's statement at a press conference was the equivalent of a

formal "promulgation" of the final rule finds no support in the law. "An agency rule is considered promulgated on the date it is published in the Federal Register," *N.Y. Stock Exch. LLC v. SEC*, 2 F.4th 989, 992 n.1 (D.C. Cir. 2021), not when an agency head says it is "signed, sealed, delivered" at a press conference. *Cf. Horsehead Res. Dev. Co.*, 130 F.3d at 1093 (rule was "promulgated" the day it was published in the Federal Register, not "on the day it was signed" by EPA's Administrator).[1]

Petitioners maintain that the Administrator "reached a decision" when he spoke at the February 12 press conference. Mot.15. But, again, §7607(d)(7)(A) requires that the record be finalized when the final rule is "promulgat[ed]," 42 U.S.C. §7607(d)(7)(A), not when EPA "reache[s] a decision." Petitioners cite no authority stating otherwise, and such a rule would make little sense. The response-to-comments document is supposed to explain the agency's decision, meaning that by definition it will be finalized after the agency has reached a decision, but before the rule is promulgated by publication in the Federal Register. Additionally, petitioners do not explain what EPA stood to gain by altering its response-to-comments in the

---

[1] Some recent cases suggest that a rule may be finalized as early as when it is made available for public inspection by the Office of the Federal Register. *See, e.g.*, *GPA Midstream Ass'n v. U.S. Dep't of Transp.*, 67 F.4th 1188, 1195 (D.C. Cir. 2023) ("A final rule is not duly fixed *at least* until it is filed for public inspection with the Office of the Federal Register") (emphasis added). That is no help to petitioners because here the rule was made available for public inspection on February 17, 2026, *after* the record was finalized. *See* Nat'l Archives, Off. of the Fed. Reg., *Public Inspection Issue* (Feb. 17, 2026), perma.cc/NQ62-7SQ4.

"10 hours" between the Administrator's press conference and the document's creation—a window so brief as to make petitioners' theory implausible on its face. *See* Mot.1. In all events, litigants, affected parties, agency lawyers, and courts do not need to parse an agency head's press statements to make sure they do not miss the moment when a rule becomes final and the related record must be completed. The statute instead makes the "date of … promulgation" the key (and straightforward) date for determining whether a document may be the basis for the agency's decision and included in the record. 42 U.S.C. §7607(d)(6)(B)-(C), (d)(7)(A).

Because February 18 was the "date of … promulgation" of the final rule, *id.*, and the response-to-comments document was admittedly prepared and posted before then, petitioners' request for further clarification and/or supplementation fails.

## II. Petitioners Have Not Shown That EPA Was Required To Include Their Supplemental Comments In The Administrative Record.

Petitioners' request for this Court to order EPA to supplement the administrative record with two untimely comments should also be denied. Mot.16-22. Specifically, petitioners request that the record be supplemented to include: (1) Environmental Defense Fund's untimely comment concerning certain working group reports—which was submitted nearly four months after the commenting period closed; and (2) an untimely comment filed by state and local governments,

complaining that the agency's proposed RIA was partially drafted by a private citizen. Mot.16-22. Petitioners' request is foreclosed by statute.

EPA's "designation of the record is … entitled to a strong presumption of regularity." *Bazzi v. Gacki*, 2020 WL 5653599, at *2 (D.D.C. Sept. 23, 2020). And here, §7607 makes it clear that EPA appropriately excluded the untimely comments from the record because the record shall include only comments received "during the comment period." 42 U.S.C. §7607(d)(4)(B)(i); *id*. §7607(d)(7)(A) ("The record for judicial review shall consist exclusively of the material referred to in … clause (i) of paragraph (4)(B)); *Util. Air Reg. Grp. v. EPA*, 744 F.3d 741, 747 (D.C. Cir. 2014). This Court, too, can consider only "an objection to a rule or procedure which was raised … during the period for public comment." *Id*. §7607(d)(7)(B).

Petitioners ignore the plain text. Instead, they argue that the untimely comments should have been in the record because they "are of central relevance to the rulemaking." Mot.16 (quoting 42 U.S.C. §7607(d)(4)(B)(i)). Petitioners mischaracterize the statutory language, which states in full that:

> Promptly upon receipt by the agency, all written comments and documentary information on the proposed rule received from any person for inclusion in the docket during the comment period shall be placed in the docket. The transcript of public hearings, if any, on the proposed rule shall also be included in the docket promptly upon receipt from the person who transcribed such hearings. All documents which become available after the proposed rule has been published and which the Administrator determines are of central relevance to the rulemaking shall be placed in the docket as soon as possible after their availability.

42 U.S.C. §7607(d)(4)(B)(i).  The "central relevance" language follows *after* the statute clarifies that "*all* written comments and documentary information" shall be included in the docket only if they were received "during the comment period."  *Id*. (emphasis added).  The specific provision regarding untimely comments controls here.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general").  Regardless, the "central relevance" standard does not apply to petitioners' untimely comments, which were not "documents which bec[a]me available after the proposed rule" was published, and the same is true for the underlying Climate Working Group reports and RIA, which were referred to in the proposed rulemaking. 42 U.S.C. §7607(d)(4)(B)(i); Mot.4.

Moreover, petitioners omit that the statute specifies that only those documents "which the *Administrator* determines are of central relevance … shall be placed in the docket," 42 U.S.C. §7607 (emphasis added), meaning the question of central relevance is for the EPA to decide, not petitioners.  The comments at issue here concerned reports and analyses that the EPA ultimately did not rely on, making objections to those materials peripheral at best.  91 Fed. Reg. at 7691 n.8, 7692. Indeed, Environmental Defense Fund *did* timely file a 200-page-plus comment that raised the very concerns addressed by its untimely comment, making the later

untimely comment even less relevant. *See* Ex.A, EPA-HQ-OAR-2025-0194-2608, at 188-93.

Petitioners also overlook 42 U.S.C. §7607(d)(7)(B)'s specification that "[o]nly an objection to a rule … which was raised with reasonable specificity during the period for public comment … may be raised during judicial review." The statute provides that when "the person raising an objection can demonstrate to the Administrator that it was impracticable to raise such objection within such time or if the grounds for such objection arose after the period for public comment" *and* "if such objection is of central relevance to the outcome of the rule," then the "Administrator shall convene a proceeding for reconsideration of the rule." *Id.* As petitioners acknowledge, this provision governs the circumstances for seeking reconsideration of the rule before EPA and not the standard for supplementing the record, and they cannot satisfy this standard in any event.

Notably, petitioners do not point to a single case in which a court even considered, much less granted, a motion to add untimely comments to an administrative record. The cases petitioners cite as "hornbook … law" do not involve untimely comments at all. Mot.16-17; *see, e.g.*, *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (rejecting motion to add "documents introduced in prior [environmental impact statement] processes"); *Bazzi*, 2020 WL 5653599, at *6 (rejecting motion to add a letter sent by the plaintiff in an adjudication); *Est. of*

*Insinga ex rel. Gilmore v. Comm'r*, 149 F.4th 709, 722-23 (D.C. Cir. 2025) (granting motion to supplement adjudication record with documents that were "part of [the agency's] decision-making" and "contradict[ed]" its "conclusion").

Even if §7607 did not independently foreclose petitioners' request (which it does), motions to "supplement the record" are typically rejected even absent a statutory record rule, "unless [the movant] can demonstrate unusual circumstances justifying a departure from this general rule." *City of Dania Beach*, 628 F.3d at 590 (quoting *Tex. Rural Legal Aid v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991)).  A party seeking to supplement the record, therefore, cannot merely point to the "relevance" of a document, much less of an untimely supplemental comment. Mot.2.  Instead, the party must prove, *e.g.*, that the agency "deliberately or negligently exclude[d]" a document that was not just relevant but "material" and "may have been adverse to [the agency's] decision." *Est. of Insinga*, 149 F.4th at 722-23 (quoting *City of Dania Beach*, 628 F.3d at 590).

Petitioners have not even tried to meet that stringent standard here as to either of the untimely comments they seek to include in the administrative record.  As to the proposed supplemental comment filed by state and local governments, petitioners concede that they were aware of the draft RIA from an EPA email sent in July 2025, Mot.7—weeks before the agency extended the comment period until late September 2025, 90 Fed. Reg. 39,345, 39,346 (Aug. 15, 2025).  Nonetheless,

petitioners waited until two months after the close of the comment period to file their proposed supplemental comment. EPA-HQ-OAR-2025-0194-28396. That untimely comment did not break new ground; it simply mentions additional facts that purportedly confirm what those petitioners argued in their timely-filed comment on the same issue—that the then-proposed rule was "procedurally defective because EPA unlawfully outsourced a major portion of its RIA." EPA-HQ-OAR-2025-0194-28396, at 3-4.

Similarly, the Environmental Defense Fund was well aware of the supposed problems with the working group reports and had plenty of time to file its comment within the period for public comment—indeed, as highlighted above, it timely filed a 200-page-plus comment that raised the very concerns addressed by its untimely comment, making the later comment largely redundant. *Compare* Ex.A, EPA-HQ-OAR-2025-0194-2608 at 188-93 (arguing that the working group violated the Federal Advisory Committee Act, its membership was biased in favor of those skeptical of the impact of climate change, its reports lacked scientific integrity, and the proposed rule's reliance on the working group reports was arbitrary and capricious), *with* Mot.App.3 at 1 (arguing that documents obtained from the Federal Advisory Committee Act litigation "confirm[]" that the proposed rule "rests on a fatally flawed legal and technical foundation").

Moreover, Petitioners cannot show that these documents are material to EPA's decision to promulgate the Repeal Rule because EPA expressly disclaimed reliance on the working group reports and rested its decision on its determination that it "lacks statutory authority to regulate in response to global climate change concerns under CAA section 202(a)(1)," rather than on a reconsideration of "the scientific inputs and analyses underlying the Endangerment Finding."  91 Fed. Reg. at 7691 & n.8.

Last, petitioners contend that EPA is estopped from objecting to their request to supplement the record because the agency promised in a separate preliminary-injunction hearing that petitioners would be able to challenge the final rule's reliance on the working group reports in future litigation.  Mot.19-21 (citing *Env't Def. Fund v. Wright*, No. 25-cv-12249 (D. Mass. filed Aug. 12, 2025)).  Putting aside that petitioners provide no support for the notion that such equitable considerations can trump the plain text of §7607, petitioners fail to meet the demanding standard in this Circuit for estoppel against the government.[2]

"To apply equitable estoppel against the government, a party must show that (1) 'there was a "definite" representation to the party claiming estoppel,' (2) the

---

[2] The Supreme Court has reserved the question whether estoppel is ever available against the government.  *See Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419-24 (1990).

party 'relied on its adversary's conduct in such a manner as to change his position for the worse,' (3) the party's 'reliance was reasonable' and (4) the government 'engaged in affirmative misconduct.'" *Morris Commc'ns, Inc. v. F.C.C.*, 566 F.3d 184, 191 (D.C. Cir. 2009) (quoting *Graham v. SEC,* 222 F.3d 994, 1007 (D.C. Cir. 2000)).  Petitioners cannot meet that standard, most glaringly because they do not even allege that EPA engaged in affirmative misconduct.  *See GAO v. Gen. Acct. Off. Pers. Appeals Bd.*, 698 F.2d 516, 526 (D.C. Cir. 1983) ("Estoppel generally requires that government agents engage—by commission or omission—in conduct that can be characterized as misrepresentation or concealment, or, at least, behave in ways that have or will cause an egregiously unfair result.").  Nor do petitioners contend that they relied on any of EPA's representations in *Wright*, much less reasonably relied on any EPA representation to their detriment.  And, of course, they cannot rectify those failures in reply.  *See, e.g.*, *Wyman Gordon Pa., LLC v. Nat'l Lab. Rels. Bd.*, 836 F. App'x 1, 6 (D.C. Cir. 2020).

Petitioners' only argument is that EPA's counsel made a representation in *Wright* that is inconsistent with the agency's position here.  But petitioners misconstrue EPA's representation in *Wright*.  During  that litigation over the working group reports, counsel for EPA objected that petitioners' challenge was premature because EPA had "yet to decide whether to rely on the [working group's] work."  Defs.' Mot. to Dismiss at 8, 15, *Wright*, No. 25-cv-12249 (D. Mass. Sept. 4,

2025), Dkt.47.  And at the hearing in *Wright*, EPA's counsel stated that petitioner Environmental Defense Fund would have an opportunity to "challenge the final rule in using those documents."  Prelim. Inj. Hearing Transcript at 18, *Wright*, No. 25-cv-12249 (D. Mass. Oct. 2, 2025), Dkt.61.  That statement on its face is not the kind of definite, "deliberate, express, and unequivocal" admission needed to bind the government to a position, *United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510 n.6 (D.C. Cir. 1996); *see also In re Motors Liquidation Co.*, 957 F.3d 357, 360-61 (2d Cir. 2020) (per curiam), nor does it "unequivocal[ly]" commit EPA to reviewing and docketing all untimely comments, or even the specific comment in question.  On the contrary, counsel for EPA merely suggested then that petitioners would have an opportunity to raise their concerns at a later date to the extent the published rule in fact "us[ed] those documents" published by the working groups, which it ultimately did not.  That is not a basis for estoppel here, nor does it justify ignoring §7607(d)(7)(B).

*    *    *

In short, petitioners have not overcome the strong presumption of regularity that attaches to EPA's certification of the administrative record.  *See* p.8, *supra*. Petitioners have not established a basis to impose the delay on this case that revising the record would demand.  *Contra* Mot.22.

15

# CONCLUSION

For the foregoing reasons, this Court should deny petitioners' motion.

Dated: June 12, 2026

Respectfully Submitted,

/s/ Daniel J. Feith
Daniel J. Feith
Justin A. Savage
Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Tel.: (202) 736-8000
Facsimile: (202) 736-8711
dfeith@sidley.com
jsavage@sidley.com
kmueller@sidley.com

*Counsel for American Fuel
and Petrochemical Manufacturers and
Energy Marketers of America*

/s/ Andrew M. Grossman
Andrew M. Grossman
Mark W. DeLaquil
BAKER & HOSTETLER LLP
Washington Square
 Suite 1100
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Tel.: (202) 861-1697
agrossman@bakerlaw.com

*Counsel for CO$_2$ Coalition*

/s/ Paul D. Clement
Paul D. Clement
Danielle Sassoon
Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
paul.clement@clementmurphy.com

*Counsel for American Petroleum Institute*

/s/ James R. Conde
Michael Buschbacher
James R. Conde
Laura B. Ruppalt
BOYDEN GRAY PLLC
800 Connecticut Avenue, NW
 Suite 900
Washington, D.C. 20006
Tel.: (202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com

*Counsel for American Free Enterprise
Chamber of Commerce, National
Federation of Independent Business, Inc.,
and the Illinois, Iowa, Kentucky,
Missouri, North Dakota, and Tennessee
Corn Growers Associations*

17

/s/ Theodore Hadzi-Antich
Robert Henneke
rhenneke@texaspolicy.com
Chance Weldon
cweldon@texaspolicy.com
Theodore Hadzi-Antich
tha@texaspolicy.com
Eric Heigis
eheigis@texaspolicy.com
Laura Elizabeth King Latimer
lblatimer@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Tel.: (512) 472-2700

*Counsel for Construction Industry Air Quality Coalition, Inc.; Liberty Packing Company, LLC.; Nuckles Oil Company, Inc.; and Western States Trucking Association, Inc.*

/s/ Frank D. Garrison
Frank D. Garrison
fgarrison@pacificlegal.org
Tyler S. Fry
tfry@pacificlegal.org
PACIFIC LEGAL FOUNDATION
3100 Clarendon Boulevard,
  Suite 1000
Arlington, VA 22201
Tel.: (202) 888-6881

/s/ Brinton Lucas
Brinton Lucas
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
Tel.: (202) 879-3686
blucas@jonesday.com

S. Matthew Krsacok
JONES DAY
150 West Jefferson
  Suite 2100
Detroit, MI 48226
Tel.: (313) 230-7923
mkrsacok@jonesday.com

Jeffery D. Ubersax
KUSHNER & HAMED CO., LPA
1375 East Ninth Street
  Suite 1390
Cleveland, OH 44114
Tel.: (216) 696-6700
jdubersax@kushnerhamed.com

*Counsel for NACCO Natural Resources Corporation*

/s/ Ondray T. Harris
Ondray T. Harris
ondray.harris@cei.org
Soriya R. Chhe
soriya.chhe@cei.org
Marin Murdock
marin.murdock@cei.org
COMPETITIVE ENTERPRISE
INSTITUTE
1310 L Street NW,
  7th FL
Washington, D.C. 20005
Tel.: (202) 331-1010

*Counsel for Domestic Energy
Producers Alliance*

/s/William L. Wehrum
William L. Wehrum, Jr.
ENVIRONMENTAL LAW, LLC
1629 K Street, NW
  Suite 300
Washington, D.C. 20006
Tel.: (302) 300-0388

/s/ Timothy A. French
Timothy A. French
CHICAGO LAW PARTNERS, LLC
333 West Wacker Drive
  Suite 810
Chicago, IL 60606
Tel.: (312) 929-1954
tfrench@clpchicago.com

*Counsel for Truck and Engine
Manufacturers Association*

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATION**

I hereby certify that:

1. This opposition complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,572 words, excluding the parts of the opposition exempted by Fed. R. App. P. 32(f).

2. This opposition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

June 12, 2026

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement