NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 26-1037 and consolidated cases

U.S. COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

AMERICAN PUBLIC HEALTH ASSOCIATION, et al.,
Petitioners,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,
Respondents.

———————————

Petitions for Review of Action of the U.S. Environmental Protection Agency

———————————

**EPA's Opposition to Motion to
Complete the Administrative Record**

———————————

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

RILEY WALTERS
SUE CHEN
DANIEL J. MARTIN
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044

# TABLE OF CONTENTS

Table of Contents ................................................................................. i

Table of Authorities ............................................................................ ii

Glossary ............................................................................................. vi

Introduction ........................................................................................ 1

Background .......................................................................................... 2

    I.      Statutory background ............................................................ 2

    II.     Factual background ............................................................... 3

    III.    Procedural history ................................................................ 5

Standard of Review .............................................................................. 6

Argument ............................................................................................. 7

    I.      EPA properly finalized the Response to Comments on the date of the Rule's promulgation. ................................................... 7

    II.     EPA properly excluded late comments ................................ 12

        A.    EPA did not determine that the disputed portion of State Petitioners' late comment was centrally relevant ................. 14

        B.    EPA did not determine that Environmental Petitioners' late comment was centrally relevant. ...................................... 15

        C.    In any event, Petitioners suffer no prejudice from the exclusion of these late comments. ........................................ 19

    III.    Petitioners cannot file more procedural motions now that the deadline for doing so has passed. ....................................... 20

Conclusion .......................................................................................... 22

Certificates of Compliance and Service ............................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Am. Petroleum Inst. v. Costle*,
609 F.2d 20 (D.C. Cir. 1979) ................................................................. 7

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971) .........................................................................9, 10

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ............................................................................ 8

*Connors v. B&H Trucking Co.*,
871 F.2d 132 (D.C. Cir. 1989) ............................................................. 7

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ...........................................................................10, 11

*Friends of Earth, Inc. v. EPA*,
446 F.3d 140 (D.C. Cir. 2006) ............................................................. 7

*IMS, P.C. v. Alvarez*,
129 F.3d 618 (D.C. Cir. 1997) .............................................................10

*In re Dominion Energy Brayton Point, LLC*,
12 E.A.D. 490 (2006) .........................................................................11

*Jazz Pharms., Inc. v. Kennedy*,
141 F.4th 254, 261 (D.C. Cir. 2025) ..................................................... 6

*Kennecott Copper Corp. v. EPA*,
462 F.2d 846 (D.C. Cir. 1972) ............................................................. 9

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ............................................................................ 6

*Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010) ............................................................................ 9

*Nat'l Lime Ass'n v. EPA*,
233 F.3d 625 (D.C. Cir. 2000) .............................................................12

*Nat'l Min. Ass'n v. Jackson*,
   856 F. Supp. 2d 150 (D.D.C. 2012) ........................................................13

*Sierra Club v. Costle*,
   657 F.2d 298 (D.C. Cir. 1981) ...........................................................2, 19

*Small Refiner Lead Phase-Down Task Force v. EPA*,
   705 F.2d 506 (D.C. Cir. 1983) ............................................................9, 11

*Smalls v. Bd. for Corr. of Naval Recs.*,
   No. 17-cv-606, 2018 WL 11411254 (D.D.C. July 12, 2018)............................ 6

*Steel Point Sols., LLC v. United States*,
   180 Fed. Cl. 463 (Fed. Cl. 2026) ..........................................................11

*Timbisha Shoshone Tribe v. Salazar*,
   678 F.3d 935 (D.C. Cir. 2012) ...................................................6, 13, 15

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*,
   10 F.4th 869 (D.C. Cir. 2021)...............................................................6, 13

*Util. Air Regul. Grp. v. EPA*,
   744 F.3d 741 (D.C. Cir. 2014) ..............................................................22

*Walter O. Boswell Mem. Hosp. v. Heckler*,
   749 F.2d 788 (D.C. Cir. 1984)..............................................................10

**Statutes**

7 U.S.C. § 5316(a) ...................................................................................... 9

42 U.S.C. § 7521(a)(1).................................................................................. 3

42 U.S.C. § 7607(d) .................................................................................... 2

42 U.S.C. § 7607(d)(1) ......................................................................2, 9, 11, 22

42 U.S.C. § 7607(d)(2) ................................................................................. 2

42 U.S.C. § 7607(d)(4)(B)(i)..........................................................................2, 12

42 U.S.C. § 7607(d)(6)(B) ...........................................................................3, 12

42 U.S.C. § 7607(d)(6)(C) ...............................................................1, 3, 10

42 U.S.C. § 7607(d)(7)(A) ................................................................3, 6, 12

42 U.S.C. § 7607(d)(8) .............................................................................19

42 U.S.C. § 9603(a) ................................................................................... 9

**Rules**

Cir. R. 27(g)(1) .......................................................................................20

**Federal Register**

74 Fed. Reg. 66496 (Dec. 15, 2009)......................................................... 3

75 Fed. Reg. 25324 (May 7, 2010)............................................................ 3

76 Fed. Reg. 57106 (Sept. 15, 2011) ........................................................ 3

77 Fed. Reg. 62624 (Oct. 15, 2012) ......................................................... 3

81 Fed. Reg. 73478 (Oct. 25, 2016) .......................................................... 3

85 Fed. Reg. 24174 (Apr. 30, 2020)......................................................... 3

86 Fed. Reg. 74434 (Dec. 30, 2021).......................................................... 3

89 Fed. Reg. 27842 (Apr. 18, 2024).......................................................... 3

89 Fed. Reg. 29440 (Apr. 22, 2024).......................................................... 3

90 Fed. Reg. 36288 (Aug. 1, 2025) ...............................................4, 14, 16

90 Fed. Reg. 39345 (Aug. 15, 2025) ........................................................ 4

91 Fed. Reg. 7686 (Feb. 18, 2026)......................................................vi, 4, 16, 19

**Legislative History**

Clean Air Act Amendments—1975:
  Hearings Before the Subcomm. on Health and the Env't of the Comm. on
  Interstate and Foreign Comm. of H.R. 2633 & H.R. 2650,
  94th Cong. 1258 (1975)...................................................................... 2

H.R. Rep. No. 94-1175, at 260-61 (1976) ...........................................................2, 9

Pub. L. No. 95–95, title III, §§ 303(d), 305(a), (c), (f)–(h),
   91 Stat. 772 (1977) ........................................................................................ 9

S. Rep. No. 101-228 (1989) ............................................................................22

**Websites**

EPA, Final Rule: Rescission of the Greenhouse Gas Endangerment Finding and
   Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act
   (Apr. 9, 2026), https://www.epa.gov/regulations-emissions-vehicles-and-
   engines/final-rule-rescission-greenhouse-gas-endangerment ...........................4, 8

EPA, Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle
   Greenhouse Gas Emission Standards Under the Clean Air Act: Response to
   Comments (Feb. 18, 2026), https://www.regulations.gov/document/EPA-HQ-
   OAR-2025-0194-31089 ................................................................................. 6

# GLOSSARY

| | |
|---|---|
| Draft Reg. Impact Statement | Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards: Draft Regulatory Impact Analysis, EPA-HQ-OAR-2025-0194-0086, attached as Dunham Decl. Ex. 1 |
| EPA | U.S. Environmental Protection Agency |
| Resp. to Comments | Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards – Response to Comments, EPA-HQ-OAR-2025-0194-31089, attached as Dunham Decl. Ex. 14 |
| Rule | Recission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act, 91 Fed. Reg. 7686 (Feb. 18, 2026) |

## INTRODUCTION

In this petition challenging EPA's rule rescinding a greenhouse-gas finding and related motor-vehicle emission standards, Petitioners spent weeks combing through the administrative record. From that effort, they scraped together two objections to the record's content. The Court should have no trouble rejecting them.

First, the Response to Comments—finalized, as required by the Clean Air Act, on the "date" that the rule was promulgated—is properly part of the record. 42 U.S.C. § 7607(d)(6)(C). In this Circuit, as in everyday speech, "date" means date. The Court should reject Petitioners' invitation to rewrite the statute to require the Response to Comments to be finalized, docketed, and time-stamped at either the hour or the exact moment of promulgation.

Second, EPA lawfully excluded late comments from the record. The agency is not required to consider late comments. Nor did EPA make the necessary relevance determination to require their inclusion in the record. More problematically still for Petitioners, they submitted timely comments raising the same issues, which EPA responded to. So the exclusion of the late comments was harmless.

The fight that Petitioners pick here also speaks to larger issues. Though Petitioners rushed to Court on the first day they could challenge the rule, since then they have shown no alacrity to proceed to merits litigation. And now, Petitioners'

choice to raise these flimsy record arguments achieves little but to further delay litigation. This Court should deny Petitioners' motion and order the parties to promptly propose a briefing schedule and format.

## BACKGROUND

### I.    Statutory background

In the Clean Air Act, Congress created "a logical system" for EPA to develop a rulemaking record. *Clean Air Act Amendments—1975: Hearings Before the Subcomm. on Health and the Env't of the Comm. on Interstate and Foreign Comm. of H.R. 2633 & H.R. 2650*, 94th Cong. 1258 (1975); 42 U.S.C. § 7607(d). That provision, all agree, applies here. Mot. at 13; *see* 42 U.S.C. § 7607(d)(1) (enumerating covered actions, including actions under Section 7521).

The statute requires EPA to establish a rulemaking docket by the date that a rule is proposed. *Id.* § 7607(d)(2). Congress intended this docket to include "only those documents in [the agency's] possession which are of genuine material relevance to the rule." H.R. Rep. No. 94-1175, at 260-61 (1976). In doing so, Congress "vest[ed] EPA with discretion" to determine the documents that are "of central relevance" and must be placed in the docket. *Sierra Club v. Costle*, 657 F.2d 298, 403 (D.C. Cir. 1981); 42 U.S.C. § 7607(d)(4)(B)(i).

Among the things that Section 7607(d) directs EPA to include in the record are responses to significant comments that were submitted "during the comment

period." 42 U.S.C. § 7607(d)(6)(B). Congress also specified the cutoff point at which the docket closes: EPA's final action must be based on information that is placed in the docket as of the "date of . . . promulgation." *Id.* § 7607(d)(6)(C). And courts evaluate the reasonableness of EPA's action based on this record. *Id.* § 7607(d)(7)(A).

## II.     Factual background

The Act authorizes EPA to regulate emissions from new motor vehicles and engines "which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). EPA lacks authority to issue standards for emissions that do not satisfy this statutory standard.

In 2009, EPA issued standalone findings of endangerment and contribution—the Endangerment Finding—for six "well-mixed" greenhouse gases, some of which are emitted by new motor vehicles and engines. 74 Fed. Reg. 66496 (Dec. 15, 2009). Over time, it issued eight sets of greenhouse-gas emission standards for these vehicles.[1]

---

[1] 75 Fed. Reg. 25324 (May 7, 2010); 76 Fed. Reg. 57106 (Sept. 15, 2011); 77 Fed. Reg. 62624 (Oct. 15, 2012); 81 Fed. Reg. 73478 (Oct. 25, 2016); 85 Fed. Reg. 24174 (Apr. 30, 2020); 86 Fed. Reg. 74434 (Dec. 30, 2021); 89 Fed. Reg. 27842 (Apr. 18, 2024); 89 Fed. Reg. 29440 (Apr. 22, 2024).

Upon further consideration of the statutory text and intervening case law, EPA announced in early 2025 that it would reconsider the Endangerment Finding and related regulations. 91 Fed. Reg. 7686, 7692/3 (Feb. 18, 2026) . A few months later, it proposed to rescind the Endangerment Finding and repeal the greenhouse-gas emission standards on several independent grounds. 90 Fed. Reg. 36288, 36288/1 (Aug. 1, 2025).

EPA initially gave the public 45 days to comment and later extended that period by a week. *Id.* at 36288/1 (closing comment period on September 15); 90 Fed. Reg. 39345, 39346/2 (Aug. 15, 2025) (extending comment period to September 22). During the comment period, EPA received over 570,000 comments, including from Petitioners. *See* Resp. to Comments at i; Att. 1, Dunham Decl. ¶¶ 8, 9, 14, Ex. 5 (ZETA Comment), Ex. 6 (Env'tl Pet'rs Comment), Ex. 11 (State Pet'rs Endangerment-Finding Comment).

On February 12, 2026, EPA took final action in the Rule to rescind the Endangerment Finding and repeal the associated greenhouse-gas vehicle-emission standards. *See* https://www.epa.gov/regulations-emissions-vehicles-and-engines/final-rule-rescission-greenhouse-gas-endangerment (noting date of signature); *see also* 91 Fed. Reg. at 7686.

Although EPA posted all comments it received in the rulemaking docket, some 250 of those comments were received "after the comment period closed at

4

midnight on September 22, 2025" and EPA did not consider them. Resp. to Comments at ii. Among the late comments EPA received were from State Petitioners (64 days late) and Environmental Petitioners (121 days late). Dunham Decl. ¶¶ 15-16, Ex. 12 (State Pet'rs Late Comment), Ex. 13 (Env'tl Pet'rs Late Comment).

Petitioners filed administrative requests for reconsideration that did not raise any of the issues identified in their late comments. *See* Doc. No. 2169572 (Apr. 20, 2026). These requests are pending.

## III. Procedural history

Although the Clean Air Act gives parties 60 days from the rule's Federal Register publication to sue, Environmental Petitioners (Case No. 26-1037) filed suit on publication day, to great fanfare. Petition for Review (Feb. 18, 2026). Others, including State Petitioners, soon followed. *See, e.g.*, Petition for Review (Case No. 26-1039) (Feb. 20, 2026); Petition for Review (Case No. 26-1061) (Mar. 19, 2026). Over EPA's objection, the Court granted Petitioners' request to extend the procedural- and dispositive-motions deadlines by two months. Case No. 26-1037, Doc. No. 2169939 (Apr. 22, 2026). That relief partially addressed Petitioners' opposed motion to defer a call for proposed briefing schedules. *Id.*

Meanwhile, EPA timely filed its certified index to the Rule's administrative record. Case No. 26-1037, Doc. No. 2163128 (Mar. 11, 2026). Among the

documents listed in the index is EPA's Response to Comments, finalized and docketed on February 12, the day that EPA signed the Rule. *See, e.g.*, Certified Index at 503; https://www.regulations.gov/document/EPA-HQ-OAR-2025-0194-31089 (noting February 12, 2026, as Response to Comments' docketing date). But EPA excluded late comments, including the two that Petitioners submitted months after the close of the comment period. *See* 42 U.S.C. § 7607(d)(7)(A).

## STANDARD OF REVIEW

To resolve the meaning of disputed statutory language, a court adopts the interpretation that it concludes is "best" "after applying all relevant interpretive tools[.]" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). In doing so, courts start with the "text of the statute." *Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 261 (D.C. Cir. 2025).

In designating the record, the agency is entitled to a presumption of administrative regularity. *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 878 (D.C. Cir. 2021); *see also Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935, 938 (D.C. Cir. 2012). Petitioners bear a "heavy burden" to overcome this presumption by clear contrary evidence. *Smalls v. Bd. for Corr. of Naval Recs.*, No. 17-cv-606, 2018 WL 11411254, at *1 (D.D.C. July 12, 2018); *Timbisha Shoshone Tribe*, 678 F.3d at 938.

6

# ARGUMENT

This Court should deny Petitioners' motion because the administrative record complies with the Clean Air Act. First, as required by Section 7607(d)(6)(C)'s plain text, EPA finalized the Response to Comments and docketed it on the same day that the Rule was promulgated. Second, EPA properly excluded late comments from the administrative record: The agency is not required to consider them, and it did not determine they were centrally relevant to the rulemaking. The exclusion is, at any rate, harmless and irrelevant to this litigation.

## I.  EPA properly finalized the Response to Comments on the date of the Rule's promulgation.

Under Section 7607(d)(6)(C), the Response to Comments needs to be—and was—finalized "as of the date" of the Rule's promulgation. This Court has explained that this language in Section 7607(d)(6)(C) means "the date that the rule is signed and released to the public." *Am. Petroleum Inst. v. Costle*, 609 F.2d 20, 24 (D.C. Cir. 1979). And more broadly, this Court has held that "[c]ommon usage" dictates that "when we say date, we mean day," not "'week' or 'year'" or any other interval, like hour. *Connors v. B&H Trucking Co.*, 871 F.2d 132, 135 (D.C. Cir. 1989); *cf. Friends of Earth, Inc. v. EPA*, 446 F.3d 140, 144 (D.C. Cir. 2006) (holding that "daily" unambiguously means "every day").

Petitioners agree that the Response to Comments was completed on February 12, the day that the Rule was promulgated. Mot. at 1, 9-10; *Id.*, Ex. C

https://www.epa.gov/regulations-emissions-vehicles-and-engines/final-rule-rescission-greenhouse-gas-endangerment.[2]     The Response to Comments thus complies with Section 7607(d)(6)(C) to the letter.  That should end the matter.

For their part, Petitioners do not seriously dispute that the statute says "date" or that "date" means date.  Instead, they resort to and misapply administrative-law principles to urge that the Response to Comments should have been finalized, docketed, and time-stamped at the exact moment of promulgation.  *See, e.g.* Mot. at 12 (demanding a response-to-comments document that is "current at the time of the Administrator's decision" and pointing to metadata on the docketed PDF); *see generally id.* at 13-16.  That argument is wrong for four reasons.

First, the statutory text controls. Had Congress wanted the Response to Comments to be finalized, docketed, and time-stamped at the exact same time as a rule's promulgation, it would have said so.  *Id.* at 16.  But it did not, and the Court should give effect to Congress's words rather than rewrite Section 7607(d)(6)(C) to suit Petitioners.  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)

---

[2] Petitioners' background section notes in passing that EPA did not post the Response to Comment on its website until the morning of February 13, Mot. at 9, but their argument is that EPA did not finalize that document at the moment of promulgation, not that it was docketed late.  *See id.* at 13-16.  In any case, the metadata Petitioners cite ("after 11PM on February 12") was created when the Response to Comments was docketed.  For simplicity, this filing refers to the "completion" or "finalization" of the Response to Comments rather than its docketing.

("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").[3]

Second, general administrative-law principles about the cutoff for record documents do not apply here. That principle, along with the line of cases relying on *Citizens to Preserve Overton Park v. Volpe*, address the Administrative Procedure Act, a general statute. 401 U.S. 402, 420 (1971) ; *see* Mot. at 12-14 (citing *Overton Park* line of cases). But as Petitioners acknowledge, here the Clean Air Act's more specific procedural requirements govern. Mot. at 12; 42 U.S.C. § 7607(d)(1); *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 518 (D.C. Cir. 1983).

Third, when Congress enacted Section 7607(d) six years after *Overton Park* was decided, it sought to address, among other things, the need for EPA "to state clearly the reasons for [its] action" and to provide a clear record for judicial review. H.R. Rep. No. 94-1175, at 260-61 (referencing *Kennecott Copper Corp. v. EPA*, 462 F.2d 846 (D.C. Cir. 1972), which discusses *Overton Park*); Pub. L. No. 95–95, title III, §§ 303(d), 305(a), (c), (f)–(h), 91 Stat. 772, 776, 777 (1977); *see also Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010) (Courts "assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."). In doing so,

---

[3] Congress, of course, knows how to enact more specific temporal requirements when it wants to. *See, e.g.*, 42 U.S.C. § 9603(a) (requiring a person to "immediately notify" the agency after certain releases); 7 U.S.C. § 5316(a) (requiring the President, "at the same time as the submission of the annual budget" to Congress, to submit a congressional report).

9

Congress limited the record for judicial review to material docketed "as of the date of . . . promulgation." 42 U.S.C. § 7607(d)(6)(C). Again, that text controls here.

Fourth and in any event, Section 7607(d)(6)(C)'s same-day requirement aligns with the general administrative-law principle of limiting the record to the information before the agency at the time a decision is made. This principle against *post hoc* rationalization ensures that an agency is bound by its reasoning and avoids creating a "moving target" by raising new bases for its actions to promote convenient litigating positions. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020). So affidavits presenting rationales for the first time in litigation are outside the administrative record. *Overton Park*, 401 U.S. at 419-20; *see also Walter O. Boswell Mem. Hosp. v. Heckler*, 749 F.2d 788, 793-94 (D.C. Cir. 1984) (cited in Mot. at 13, 15); *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623-24 (D.C. Cir. 1997) (cited in Mot. at 13). But "contemporaneous explanations" provide the agency's bases for its decision when that decision is made and creates no moving target. *DHS*, 591 U.S. at 23.

The Response to Comments sets forth EPA's contemporaneous responses. Even on Petitioners' view of the facts, EPA finalized the Response to Comments on the date of promulgation—and mere *hours* after the Rule was initially posted online. Mot. at 9-10. This is not a case where EPA "rushed" to a decision and later made up a rationale for litigation convenience. *Contra id.* at 15. Rather, after months of considering and responding to the public's voluminous comments, EPA made a final

decision. It then announced that decision and finished up the Response to Comments later that day. Nothing here comes close to *post hoc* rationalization. *See Steel Point Sols., LLC v. United States*, 180 Fed. Cl. 463, 472 (Fed. Cl. 2026) (holding that an agency's reasons for its action, issued later but on the same day as the action, did not amount to *post hoc* rationalization).

Petitioners' remaining arguments are easily refuted. For one thing, they wrongly rely on EPA guidance and what they call EPA's "usual practice." Mot. at 14. That guidance provides recommendations for EPA actions that are reviewable under the Administrative Procedure Act. It does not apply here because Clean Air Act's more specific procedural provision governs. 42 U.S.C. § 7607(d)(1); *Small Refiner*, 705 F.2d at 518. As for the Environmental Appeals Board case that Petitioners cite, that case simply holds that documents submitted right after the agency takes final action are not part of the administrative record. *In re Dominion Energy Brayton Point, LLC*, 12 E.A.D. 490, at *22-23 (2006). It does not speak to whether a Response to Comments that is completed on the day of promulgation belongs in the record. *DHS*, 591 U.S. at 23.

The Response to Comments is properly part of the record because it was completed on the date of the Rule's promulgation. The Court should reject Petitioners' contrary arguments.

## II. EPA properly excluded late comments.

EPA properly excluded Petitioners' two late comments from the administrative record. Section 7607(d) requires EPA to consider and respond only to comments received "during the comment period." 42 U.S.C. § 7607(d)(6)(B). It does not require EPA to consider any late comments, including Petitioners'. Indeed, Petitioners admit these comments were late and do not contend that EPA was required to consider them. Mot. at 11, 16-22.

Late comments can become part of the administrative record, but only if EPA, in its discretion, considers them and "determines [they] are of central relevance to the rulemaking." 42 U.S.C. § 7607(d)(4)(B)(i); *see id.* § 7607(d)(7)(A); *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 641 (D.C. Cir. 2000). But no such determination appears anywhere in the record or in anything Petitioners have filed. That's because EPA made no such determination. In fact, EPA did not even consider late comments. Resp. to Comments at ii. That should be the end of the matter.

Petitioners nevertheless argue that EPA secretly determined that the late comments were centrally relevant but refused to docket them. Mot. at 16, 18, 22. This argument should be rejected as a matter of law because an allegation of a secret and subjective "determination" is categorically insufficient evidence to support a challenge under Section 7607(d)(4)(B)(i). To be clear, Petitioners do not

argue that EPA *should* have made the determination or that the comments *were* centrally relevant; instead they argue that EPA did in fact make the determination, but Plaintiffs offer no more than speculation in support. *Id.* at 18, 22. That argument should fail as a matter of law for lack of cognizable evidence.

Petitioners also fall far short of their high burden to overcome the presumption of regularity. EPA's exclusion of concededly late comments from the record is entitled to a strong presumption of regularity. *Transp. Div.*, 10 F.4th at 878. To overcome that presumption, Petitioners must—but do not—offer clear contrary evidence. *Timbisha Shoshone Tribe*, 678 F.3d at 938. It is not enough to merely contend that EPA "reviewed" their comments. Mot. at 22 (citing Resp. to Comments at ii); *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012) (holding that movants cannot simply assert that the agency "knew about these documents"). Petitioners must offer clear evidence that EPA determined that the two late comments are centrally relevant to the rulemaking. They cannot because those determinations do not exist. All they offer are vague words, agency silence, and a sequence of events. Mot. at 18, 22. That is not evidence, much less clear evidence, of a determination of central relevance. In any event, exclusion of the late comments did not prejudice Petitioners.

13

A.     **EPA did not determine that the disputed portion of State Petitioners' late comment was centrally relevant.**

Petitioners seek to include only one issue raised in State Petitioners' late comment—an objection that the EPA improperly outsourced the drafting of proposed Appendix B of the draft Regulatory Impact Analysis.  *Id.* at 21; *see generally* State Pet'rs Late Comment.  But they offer no clear evidence (or any evidence) of an EPA determination that their late comment on this issue was centrally relevant.

Along with the proposed rule,  a draft Regulatory Impact Analysis went out for public comment.  90 Fed. Reg. at 36326/1.  The draft analyzed the proposed rule's projected impacts.  Draft Reg. Impact Statement at 4.  Appendix B proposed an alternative methodology for assessing the proposed rule's costs and benefits.  *Id.* at 5, 33-62.  Timely comments on the draft Appendix B—including from State Petitioners—objected that it relied on "unjustified methods and outdated data," Dunham Decl. ¶ 11, Ex. 8 (Res. for the Future Comment) at 9-10,[4] and that it was improperly drafted by someone outside the agency, *id.*¶ 10, Ex. 7 (State Pet'rs Vehicle Comment) at 130.  Based on that *timely* and "significant feedback," EPA did "not finaliz[e] Appendix B as part of this final action."  Resp. to Comments at

---

[4] *See also, e.g.*, Dunham Decl. ¶ 13, Ex. 10 (Inst. for Policy Integrity Comment) at 62-64 (stating that the methodology "double count[s]" cost); State Pet'rs Vehicle Comment at 83-89 (stating that the methodology suffers from several defects).

274. But EPA appropriately did "not consider[]" State Petitioners' *late* comment. *Id.* at ii.

EPA, in short, did not determine that State Petitioners' late comment on this issue was centrally relevant to the rulemaking. As State Petitioners admit, their late comment raised the same substantive issue that was raised in their timely comment. State Pet'rs Late Comment at 3, 8; *see also* Mot. at 21. Petitioners offer no clear evidence that EPA's decision to omit Appendix B from the final rule was based on their *late* comment, as opposed to the many timely ones that are part of the record. *Timbisha Shoshone Tribe*, 678 F.3d at 938. And they offer no evidence at all of a central-relevance determination: All they point to are the absence of an explanation and a "sequence" of events that supposedly "speaks for itself." Mot. at 22. That is not evidence, and certainly not clear evidence, that EPA made a determination that the comments are of central relevance. This Court should thus deny Petitioners' request to include this portion of State Petitioners' late comment.

### B. EPA did not determine that Environmental Petitioners' late comment was centrally relevant.

EPA made no determination that Environmental Petitioners' late comment was centrally relevant to the rulemaking. To the contrary, the comment was not centrally relevant because it raised an issue the agency had already considered in timely comments.

15

At proposal, EPA offered an alternative basis for rescinding the Endangerment Finding that revolved around the scientific record.  90 Fed. Reg. at 36307/3.  As part of this alternative basis, EPA reviewed recently available information on climate change, including a draft report by the Climate Working Group, a group of scientists assembled by the Department of Energy.  *Id.* at 36308/1.

EPA received many timely comments on whether the Group was lawfully formed and operating under the Federal Advisory Committee Act.[5]  And in light of these *timely* concerns, EPA said it "is not relying on the . . . [Climate Working Group] draft report . . .  for any aspect of this final action."  91 Fed. Reg. at 7691 n.8; *contra* Mot. at 20-21.  But that is not a determination that Environmental Petitioners' *late* comment, which raised the same substantive issue as their timely comment, was centrally relevant to the rulemaking.  *See* Mot. at 18-19.  And the mish-mash of vague words and material from various proceedings that Petitioners cobbled together cannot pass off as evidence of a determination of central relevance. *Id.* at 18.

---

[5] *See, e.g.*, Env'tl Pet'rs Comment at 188-96; State Pet'rs Endangerment-Finding Comment at 98-121; Dunham Decl. ¶ 7, Ex. 4 (Climate Sci. Legal Def. Fund Comment) at 5-7; *id.* ¶ 12, Ex. 9 (McKinstry Comment) at 92-95.

EPA also received many timely comments making similar critiques of climate-impact modeling as the Climate Working Group did the draft report.[6]  And based on those timely comments, EPA said that these models contain "significant uncertainties."  Resp. to Comments at 215.  EPA's view was not, as Petitioners wrongly contend, based on the Climate Working Group's draft report.  *Contra* Mot. at 20-21 (wrongly asserting that EPA "conspicuously omit[ed]" citations to the draft report).

Nor do equitable considerations warrant including Environmental Petitioners' late comment.  *Contra id.* at 19-21.  Petitioners rely on and mischaracterize the United States' statements in *Environmental Defense Fund v. Wright*, in which some Environmental Petitioners sued the federal government, alleging that it violated the Federal Advisory Committee Act in forming the Climate Working Group.  Case No. 1:25-cv-12249-WGY (D. Mass.); Mot. at 19-20.  The suit ultimately resulted in EPA being dismissed as a defendant.  Judgment at 4, *EDF v. Wright*, Case No. 1:25-cv-12249-WGY (D. Mass. Jan. 30, 2026) (finding "no persuasive evidence of [EPA] conduct" that violated the Federal Advisory Committee Act).

As relevant here, the issue at the preliminary-injunction stage was whether plaintiffs would be irreparably harmed if the United States withheld disclosing the

---

[6] *See, e.g.*, Resp. to Comments at 214-15; Dunham Decl. ¶ 5, Ex. 2 (Tex. Pub. Policy Found. Comment) at 28-31; *id.* ¶ 6, Ex. 3 (West Virginia et al. Comment) at 53-56.

Climate Working Group's documents given that the Rule's comment period was running. *See* U.S. Resp. at 13, *EDF v. Wright*, No. 1:25-cv-12249 (D. Mass. Sept. 4, 2025), ECF No. 43. The United States' consistent position was that if plaintiffs prevailed on their claims and the Group's documents were produced, then plaintiffs could use those documents "to challenge any final action taken by the Government in reliance on the [Climate Working Group] Report . . . *if such reliance actually occurs.*" *Id.* at 15 (emphasis added); *see also id.* at 16 (noting that if the court declares the Group's establishment unlawful, "Plaintiffs could use that declaration as ammunition *if the Government were to take final action in reliance on the [Group's] Report*" (emphasis added)).

Petitioners take the United States' statement during the preliminary-injunction hearing out of context. Mot. at 19-20. The United States said that "plaintiffs' harm [may] never mature" because it is possible that "EPA will take their [already submitted] comments [regarding the Group] to heart and not rely on th[e] report at all." Tr. at 17, *EDF v. Wright*, 1:25-cv-12249 (D. Mass. Sept. 11, 2025). Put simply, the point here was that these Climate Working Group documents are not relevant if EPA opted not to rely on the Group's report (and indeed, that is what happened). After making this point, the United States went on to note the remedies plaintiffs "could pursue after the fact"—meaning if EPA *does* rely on the report. *Id.* And in

18

that event, the United States noted that plaintiffs at that time "c[ould] challenge the final rule in using those documents." *Id.* at 18.

That event did not occur. EPA specified that it "is *not* relying on the . . . [Group's] draft report . . . for *any aspect* of this final action." 91 Fed. Reg. at 7691 n.8 (emphases added). So the Group's documents, produced in *Wright*, are not relevant to the Rule, let alone centrally relevant. And because those documents were attached to late comments, EPA properly excluded them from the record.

**C.    In any event, Petitioners suffer no prejudice from the exclusion of these late comments.**

Even if it were error to exclude the late comments, any error is harmless. Under the Clean Air Act, courts may reverse an EPA action on procedural grounds only if the errors were "so serious" and related to matters of such central relevance to the rule that there is a "substantial likelihood that the rule would have been significantly changed if such errors had not been made." 42 U.S.C. § 7607(d)(8); *Sierra Club*, 657 F.2d at 391 (recognizing that under Section 7607(d), EPA's action "[can]not be casually overturned for procedural reasons").

Here, any error in excluding Petitioners' late comments would not change the Rule's outcome. That is because the late comments raised the same issues as the timely comments. EPA considered those issues when it reviewed the timely comments. And as a result, EPA decided to not rely on either the draft Climate Working Group Report or the draft Appendix B. *See supra* Args. II.A-B.

19

Petitioners, who objected to both drafts in their late comments (and in their timely comments), thus got what they wanted. As they implicitly concede, including the untimely comments does not change the Rule's outcome. *See* Mot. at 16 n.12.

To recap, EPA lawfully excluded the two late comments from the administrative record: It is not required to consider them. And it did not determine that they are centrally relevant to the rulemaking. Petitioners have not overcome their burden to show clear contrary evidence. Any error, moreover, is harmless because EPA considered issues raised in the late comments. This Court should deny Petitioners' request to include portions of their late comments in the record.

## III.    Petitioners cannot file more procedural motions now that the deadline for doing so has passed.

To the extent Petitioners appear to try to reserve their rights to file more procedural motions in the future, they will have missed the filing deadline. *Id.* at 10; *see* Cir. R. 27(g)(1). Petitioners already received a two-month extension of the procedural-motions deadline, to May 20. Doc. No. 2169939. That deadline has now passed. If Petitioners have concerns about EPA's representation on artificial intelligence or the United States' compliance with the Federal Records Act, they should have raised them in a procedural motion by May 20. Or they should raise these issues in merits briefing and explain why EPA is legally obligated to "docket the information concerning the [artificial intelligence] tool that was used" for the limited purpose of producing rough draft of computer code for identifying comments

containing certain keywords.  Mot., Ex. D at 3; Mot., Ex. C at 4.  In merits briefing, Petitioners should also explain why EPA, as one federal agency among many, is legally obligated to attest that (a) "*no one in the federal government* used a generative AI tool in any other manner or for any other purpose . . . in connection with this rulemaking" and (b) "*no federal officials* sought or facilitated input on the [proposed rule] by sharing any pre-release text with non-federal parties."  Mot., Ex. D at 2, 3 (emphases added).

*    *    *

Petitioners' motion offers no good reason why EPA's record is incomplete.  All it does is delay merits litigation.  The Court should order the parties to promptly submit proposals for briefing schedules and format.  And merits briefing should begin without further delay, especially in light of another Petitioning group's stay motion.  *See, e.g.*, Order, *West Virginia v. EPA*, Case No. 24-1120 (D.C. Cir. July 19, 2024), Doc. No. 2065493 (denying stay motion and ordering parties to propose briefing schedules 14 days later); Order, *North Dakota v. EPA*, Case No. 24-1119 (D.C. Cir. Aug. 6, 2024), Doc. No. 2068631 (ordering the same).

Prompt merits briefing is also in keeping with congressional intent.  To be sure, Petitioners' requests for administrative reconsideration are pending.  But in the Clean Air Act, Congress expressly rejected the general rule that such requests make an agency action unreviewable.  *See Util. Air Regul. Grp. v. EPA*, 744 F.3d 741, 746

21

(D.C. Cir. 2014).  Under the Act's judicial-review provision, a request to reconsider "any otherwise final rule or action shall not affect the finality of such rule or action for purposes of judicial review."  42 U.S.C. § 7607(b)(1).  This language, the Senate Committee explained when Congress amended the Act in 1990, is designed to "ensure prompt judicial review" of EPA's final actions and to "assure" that a pending reconsideration request "does not delay that review."  S. Rep. No. 101-228, at 3755 (1989).    That is, the statute envisions parallel reconsideration and judicial proceedings.  The Court should give effect to congressional intent by ordering prompt proposals on briefing schedules and format.

## CONCLUSION

The Court should deny the motion to supplement the administrative record.

22

Submitted on June 12, 2026

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney
General*

/s/ Robert N. Stander
ROBERT N. STANDER
*Deputy Assistant Attorney General*

RILEY WALTERS
SUE CHEN
DANIEL J. MARTIN
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 717-7067 (Stander)
(202) 718-3109 (Walters)
(202) 598-5334 (Chen)
(202) 598-1869 (Martin)
robert.stander@usdoj.gov
riley.walters@usdoj.gov
sue.chen@usdoj.gov
daniel.martin3@usdoj.gov

## CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that this filing complies with Fed. R. App. P. 27(d)(1)(E) because it uses 14-point Times New Roman, a proportionally spaced font.

I also certify that this filing complies with Fed. R. App. P. 27(d)(2)(A), because by Microsoft Word's count, it has 5,083 words, excluding the parts exempted under Fed. R. App. P. 32(f).

Finally, I certify that on June 12, 2026, I electronically filed this brief with the Court's CM/ECF system, which will serve each party.

 */s/ Riley Walters*
RILEY WALTERS

Counsel for Respondents

24