No. 26-1037
(Consolidated with 26-1038, 26-1039
26-1043 & 26-1051)

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

AMERICAN PUBLIC HEALTH ASSOCIATION, ET AL.,
*Petitioners,*

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
ET AL.,
*Respondents.*

_____

On Appeal from the Environmental Protection Agency
EPA-HQ-OAR-2025-0194; FRL-12715-02-OAR

_____

MOTION OF WESTERN STATES TRUCKING ASSOCIATION,
INC., CONSTRUCTION INDUSTRY AIR QUALITY COALITION,
INC., LIBERTY PACKING COMPANY, LLC, AND NUCKLES OIL
COMPANY, INC. DBA MERIT OIL COMPANY FOR LEAVE TO
INTERVENE AS RESPONDENTS

# RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Proposed Intervenor-Respondents Western States Trucking Association, Inc., Construction Industry Air Quality Coalition, Inc., Liberty Packing Company, LLC, and Nuckles Oil Co., Inc. dba Merit Oil Company make the following disclosures:

Western States Trucking ("WSTA") is a non-profit California trade association representing the interests of thousands of members in a variety of businesses which own and operate on-road and non-road vehicles, engines, and equipment. WSTA has no parent companies, and no publicly held corporation has a ten percent or greater ownership in it.

Construction Industry Air Quality Coalition ("CIAQC") is a nonprofit California trade association representing the interests of other California nonprofit trade associations and their members whose air emissions are regulated by California state, regional, and local regulations, as well as federal regulations. CIAQC does not have any parent corporations, and no publicly held corporation has a ten percent or greater ownership in it.

Liberty Packing Company LLC ("Liberty Packing") is a California limited liability company. Liberty is a bulk processor of tomato products and relies on natural gas boilers for production of its tomato products. Liberty does not have any parent corporations, and no publicly held corporation has a ten percent or greater ownership in it.

Nuckels Oil Company, Inc. dba Merit Oil Company ("Merit Oil") is a California corporation and is a petroleum jobber, wholesaler, and distributor. Merit Oil does not have any parent corporations, and no publicly held corporation has a ten percent or greater ownership in it.

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT.................................................ii

INDEX OF AUTHORITIES...................................................................vi

LIST OF ACRONYMS..........................................................................ix

INTRODUCTION AND BACKGROUND.............................................2

I.    EPA Issues the 2009 Endangerment Finding and Regulations
      Based Thereon..........................................................................2

II.   EPA's Endangerment Finding and Regulations Based Thereon
      Injure Proposed Intervenor-Respondents......................................6

III.  EPA Rescinds the 2009 Endangerment Finding and
      Mobile Source GHG Emission Standards.......................................8

IV.   Procedural History ...................................................................9

ARGUMENT .......................................................................................10

I.    Proposed Intervenor-Respondents Are "Directly Affected"
      by the Endangerment Finding, the Mobile Source GHG
      Emissions Standards, and the Recession Rule...........................10

II.   The Court Should Grant the Motion to Intervene .......................12

      A.    The Proposed Intervenor-Respondents are entitled to
            intervene as of right because they have legally
            protected interests at stake that are not adequately
            represented by the parties ................................................13

            1.    This motion is timely because it meets Rule
                  15(d)'s 30-day requirement.........................................13

            2.    Proposed Intervenor-Respondents' Article III
                  standing meets Rule 24's interest requirement..........14

3. Proposed Intervenor-Respondents' interests will be impaired if Petitioners succeed in vacating the Rescission Rule ........................................ 17

4. The existing parties do not adequately represent Proposed Intervenor-Respondents' interests .................................................................... 18

B. The Proposed Intervenor-Respondents should be granted permissive intervention because they share a common question of law or fact ............................................ 22

CONCLUSION .................................................................................. 22

CERTIFICATE OF COMPLIANCE ...................................................... 23

CERTIFICATE OF SERVICE .............................................................. 24

# INDEX OF AUTHORITIES

*Cases:*                                                                                                          *Page(s):*

*Am. Petroleum Inst. v. Costle,*
    665 F.2d 1176 (D.C. Cir. 1981) ....................................................................... 3

*Amador Cty. v. U.S. Dep't of the Interior,*
    772 F.3d 901 (D.C. Cir. 2014) ................................................................. 13, 14

*Amalgamated Transit Union Int'l v. Donovan,*
    771 F.2d 1551 (D.C. Cir. 1985) ..................................................................... 12

*Coalition for Responsible Reg., Inc. v. EPA,*
    684 F.3d 102 (D.C. Cir. 2012) ......................................................................... 3

*Czyzewski v. Jevic Holding Corp.,*
    580 U.S. 451 (2017) ....................................................................................... 16

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020) ........................................................................................... 21

*Diamond Alt. Energy, LLC v. EPA,*
    606 U.S. 100 (2025) ....................................................................... 11, 14, 16

*Dimond v. District of Columbia,*
    792 F.2d 179 (D.C. Cir. 1986) ................................................................. 18, 19

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ........................................................................... 13

*Fund For Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ........................................................... 18, 19, 21

*Garcia v. Vilsack,*
    304 F.R.D. 77 (D.D.C. 2014), *aff'd*, 14-5175,
    2014 WL 6725751 (D.C. Cir. Nov. 18, 2014) ............................................. 13

*Int'l Union v. Scofield,*
    382 U.S. 205 (1965) ....................................................................................... 12

*Jones v. Prince George's Cnty., Md.,*
    348 F.3d 1014 (D.C. Cir. 2003) ............................................................... 14, 17

*Kaseman v. District of Columbia,*
444 F.3d 637 (D.C. Cir. 2006)........................................................20

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ........................................................................9

*Massachusetts v. EPA,*
549 U.S. 497 (2007) ..................................................................9, 21

*Mova Pharm. Corp. v. Shalala,*
140 F.3d 1060 (D.C. Cir. 1998)..............................................20, 21

*NRDC v. Costle,*
561 F.2d 904 (D.C. Cir. 1977)................................................18, 19

*Roeder v. Islamic Republic of Iran,*
333 F.3d 228 (D.C. Cir. 2003)......................................................21

*Sierra Club, Inc. v. EPA,*
358 F.3d 516 (7th Cir. 2004) ........................................................12

*Synovus Fin. Corp. v. Bd. of Gov's. of Fed. Reserve Sys.,*
952 F.2d 426 (D.C. Cir. 1991).......................................................10

*Trbovich v. United Mine Workers of Am.,*
404 U.S. 528 (1972) ......................................................................18

*United States v. Am. Bar Assn.,*
118 F.3d 776 (D.C. Cir. 1997)........................................................12

*United States v. Kirby,*
74 U.S. 482 (1869) ........................................................................20

*United States v. Texas,*
599 U.S. 670 (2023) ......................................................................14

*United Steel v. Mine Safety & Health Admin.,*
925 F.3d 1279 (D.C. Cir. 2019)......................................................17

*Utility Air Regulatory Group v. EPA,*
573 U.S. 302 (2014) ........................................................................4

*West Virginia v. EPA,*
 597 U.S. 697 (2022) ....................................................................3, 4

*Wildlife v. Perciasepe,*
 714 F.3d 1317 (D.C. Cir. 2013)............................................ 14, 15, 17

*Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.,*
 840 F.2d 72 (D.C. Cir. 1988) ......................................................13

*Yakima Valley Cablevision, Inc. v. FCC,*
 794 F.2d 737 (D.C. Cir. 1986)......................................................10

**Statutes & Rules:**

42 U.S.C.
 § 4365(a) .............................................................................2
 § 4365(c)(1) ..........................................................................2

Fed. R. App. P. 15(d) ........................................................ 9, 10, 13

Fed. R. Civ. P. 1 ........................................................................12
Fed. R. Civ. P. 24 .......................................................................20
Fed. R. Civ. P. 24(a)(2) .............................................................17
Fed. R. Civ. P. 24(b)(1)(B) ........................................................22
Fed. R. Civ. P. 24(b)(3) ..............................................................22

74 Fed. Reg. 66,496 (Dec. 15, 2009) ...................................... 2, 3, 10
75 Fed. Reg. 25,234 (May 7, 2010)............................................3
76 Fed. Reg. 57,106 (Sept. 15, 2011) ........................................4
89 Fed. Reg. 39,798 (May 9, 2024) ...........................................5
89 Fed. Reg. 29,440 (Apr. 22, 2024) ...................................... 5, 10
89 Fed. Reg. 27,861 (Apr. 18, 2024) ........................................5
90 Fed. Reg. 25,752 (June 17, 2025) ........................................5
91 Fed. Reg. 7,686 (Feb. 18, 2026) ..................................... 8, 11, 21

**Other Authorities:**

Veronica M. Dougherty, *Absurdity and the Limits of Liberalism:*
 *Defining The Absurd Result Principle in Statutory Interpretation,*
 44 Am. U.L. Rev. 127 (1994) .....................................................20

# LIST OF ACRONYMS

CAA – Clean Air Act

CIAQC – Construction Industry Air Quality Coalition, Inc.

$CO_2$ – Carbon Dioxide

CPP – Clean Power Plan

E.O. – Executive Order

EPA – U.S. Environmental Protection Agency

GHG – Greenhouse Gas

SAB – Science Advisory Board

WSTA – Western States Trucking Association, Inc.

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and D.C. Circuit Rules 15(d) and 27, Western States Trucking Association, Inc. ("WSTA"), Construction Industry Air Quality Coalition, Inc. ("CIAQC"), Liberty Packing Company, LLC ("Liberty Packing"), and Nuckles Oil Co., Inc. dba Merit Oil Company ("Merit Oil") (collectively "Proposed Intervenor-Respondents") respectfully move for leave to intervene in support of respondents U.S. Environmental Protection Agency ("EPA") and EPA Administrator Lee Zeldin to defend the respondents' (1) rescission of the 2009 Greenhouse Gas Endangerment Finding ("Endangerment Finding"); and (2) repeal of all greenhouse gas ("GHG") emissions standards for light-duty, medium-duty, and heavy-duty vehicles and engines ("Mobile Source GHG Emissions Standards"). The Endangerment Finding and the Mobile Source GHG Emissions Standards have imposed substantial costs on Proposed Intervenor-Respondents, which the rescission and repeal annul. Through this motion, Proposed Intervenor-Respondents are seeking intervention in all petitions for review of the final rule rescinding the Endangerment Finding and repealing the Mobile Source GHG Emissions Standards. *See* D.C. Cir. R. 15(b).

Counsel for the Proposed Intervenor-Respondents contacted all parties in Case No. 26-1037 regarding this motion. Petitioners have informed counsel that they take no position on the motion. Respondents

1

have informed counsel that they reserve their position until they have reviewed the motion.

## INTRODUCTION AND BACKGROUND

### I. EPA Issues the 2009 Endangerment Finding and Regulations Based Thereon.

In 2009, EPA determined it had the authority to regulate greenhouse gas emissions under the Clean Air Act ("CAA") and promulgated the Endangerment Finding under CAA section 202(a). 74 Fed. Reg. 66,496 (Dec. 15, 2009). EPA found that vehicle emissions of carbon dioxide ("$CO_2$"), $CH_4$, $N_2O$, HFCs, PFCs, and $SF_6$ together constitute a single "air pollutant" that contributes to harmful "air pollution." *Id.* at 66,516, 66,519. In fact, automobiles do not emit two of the six (PFCs and $SF_6$) and emit two others ($CH_4$ and $N_2O$) only in minute amounts. The Endangerment Finding's true target was $CO_2$, a ubiquitous natural substance essential to life on Earth.

EPA made the Endangerment Finding without input from the Science Advisory Board ("SAB"). In 1978, Congress directed the EPA Administrator to establish the SAB to function as a peer review panel of experts that ensures EPA's actions are scientifically and technically sound and defensible. 42 U.S.C. § 4365(a). Section 4365's operative language provides that EPA "shall" make its regulatory proposals available to the SAB for peer review. 42 U.S.C. § 4365(c)(1). The SAB submittal requirement applies to all regulatory proposals made by EPA

under the statutes it administers, including the CAA, and the submittal requirement is nondiscretionary. *Am. Petroleum Inst. v. Costle*, 665 F.2d 1176, 1188 (D.C. Cir. 1981). Yet "EPA did not submit the Endangerment Finding for review by its Science Advisory Board." *Coalition for Responsible Reg., Inc. v. EPA*, 684 F.3d 102, 124 (D.C. Cir. 2012).

Instead, EPA relied almost exclusively on "assessment literature" generated by third parties that summarized their own views of global climate change science. The EPA Administrator "relied heavily" on the assessments of the United States Global Change Research Program, the Intergovernmental Panel on Climate Change, and the National Research Council as the "*primary* scientific and technical basis of her endangerment decision." 74 Fed. Reg. at 66,510 (emphasis added). In response to comments calling on EPA to make "its own assessment of all of the underlying studies and information," EPA refused, on the ground that it "ha[d] no reason to believe" the reports of the three organizations were inaccurate. *Id.* at 66,511.

EPA then used the Endangerment Finding to initiate an "aggressive transformation in the domestic energy industry." *West Virginia v. EPA*, 597 U.S. 697, 714 (2022) (quoting a White House Fact Sheet). EPA first imposed stringent GHG emissions standards on new cars and trucks starting in model year 2012. Light-Duty Vehicle Greenhouse Gas Emission Standards and Corporate Average Fuel Economy Standards, 75 Fed. Reg. 25,234 (May 7, 2010); Greenhouse Gas

Emissions Standards and Fuel Efficiency Standards for Medium- and Heavy-Duty Engines and Vehicles, 76 Fed. Reg. 57,106 (Sept. 15, 2011).

EPA also attempted to extend the Endangerment Finding to certain stationary sources emitting GHGs. In *Utility Air Regulatory Group v. EPA,* 573 U.S. 302 (2014), the Supreme Court largely rejected EPA's attempt to extend GHG standards to stationary sources subject to CAA Title I and Title V requirements. The Court held those regulations exceeded EPA's authority under the CAA, including because EPA admitted that it would be unworkable to apply the statutory scheme as written to GHG emissions from most covered stationary sources. *Id.* at 316–17, 320. The Court also rejected EPA's attempt to rewrite the statute by regulation. *Id.* at 328.

Further addressing GHG emissions standards from stationary sources, the Obama Administration's Clean Power Plan ("CPP") would have compelled power generators to shift away from coal and toward wind and solar power generation. *West Virginia*, 597 U.S. at 712–14. The CPP would have imposed billions in compliance costs and would have forced dozens of coal-fired power plants to close. *Id.* at 714. The CPP explicitly relied on the Endangerment Finding to support its requirements under the Clean Air Act. *Id.* at 711. Following the Supreme Court's *West Virginia* decision rejecting the CPP, the Biden Administration issued a replacement rule colloquially referred to as the "Clean Power Plan 2.0" that again relied on the Endangerment Finding.

New Source Performance Standards for Greenhouse Gas Emissions From New, Modified, and Reconstructed Fossil Fuel-Fired Electric Generating Units, 89 Fed. Reg. 39,798, 39,807 (May 9, 2024).[1]

EPA also used the Endangerment Finding to justify further tightening of GHG emission standards for trucks and cars, set forth in two separate rulemakings: (1) Greenhouse Gas Emissions Standards for Heavy-Duty Vehicles—Phase 3, 89 Fed. Reg. 29,440, 29,442, 29,460 (Apr. 22, 2024) ["Heavy Duty Phase 3 Rule"]; and (2) Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles, 89 Fed. Reg. 27,842, 27,861 (Apr. 18, 2024) ["Light-Medium Duty Rule"]. Together, these two rules require that at least 45% of trucks and 70% of cars be all-electric by 2032. Heavy Duty Phase 3 Rule, 89 Fed. Reg. at 29,567–68; Light-Medium Duty Rule, 89 Fed. Reg. at 28,057.

In short, the Endangerment Finding triggered a cascade of regulations governing GHG emissions from numerous mobile and stationary sources.

---

[1] In 2025, EPA proposed rescinding the Clean Power Plan 2.0. Repeal of Greenhouse Gas Emissions Standards for Fossil Fuel-Fired Electric Generating Units, 90 Fed. Reg. 25,752 (June 17, 2025) (Proposed Rule). That proposed rescission has not yet been finalized.

## II. EPA's Endangerment Finding and Regulations Based Thereon Injure Proposed Intervenor-Respondents.

The Endangerment Finding and the Mobile Source GHG Emissions Standards it supports inflict serious harm on Proposed Intervenor-Respondents by increasing their costs. If EPA's recission of those rules is vacated, they will continue to impose costs on Proposed Intervenor-Respondents. If the rescission is upheld, those costs will be eviscerated, thereby reducing or eliminating the harms caused to the Proposed Intervenor-Respondents by the Endangerment Finding and the Mobile Source GHG Emissions Standards.

Proposed Intervenor-Respondents WSTA and CIAQC are trade organizations whose members use light-, medium-, and heavy-duty trucks in the ordinary course of their businesses. *See* Brown Decl. ¶¶ 2–3, 5 and its Exs. A and B; Aboudi Decl. ¶¶ 2, 4 and its Ex. A; Lewis Decl. ¶ 2–3, 5 and its Exs. A and B; Santoro Decl. ¶ 2 and its Ex. A. The Endangerment Finding and the Mobile Source GHG Emissions Standards it supports—including the Light-Medium Duty Rule and Heavy Duty Phase 3 Rule—limit the availability of vehicles needed for WSTA and CIAQC members to profitably conduct their businesses.

Specifically, the Heavy Duty Phase 3 Rule's electric vehicle sales requirement imposes increased market scarcity of reliable and cost-effective diesel-powered heavy-duty vehicles, parts, and supplies necessary to maintaining a profitable fleet. *See* Brown Decl. at its Ex. B

6

¶¶ 10–13; Aboudi Decl. at its Ex. A ¶¶ 7–8; Lewis Decl. at its Ex. B ¶¶ 8–10. Each electric truck required by the Heavy Duty Phase 3 Rule costs approximately $300,000 more to initially acquire and $3,000 more yearly to operate as compared to diesel-powered trucks. Aboudi Decl. at its Ex. A ¶¶ 12–13. Additionally, as fewer diesel-powered heavy-duty vehicles remain on the road thanks to the knock-on effects of the Heavy Duty Phase 3 Rule, the cost of diesel fuel will increase and the prevalence of diesel refueling stations will decrease. *See* Brown Decl. at its Ex. B ¶ 14; Aboudi Decl. at its Ex. A ¶ 9; Lewis Decl. at its Ex. B ¶ 11. If WSTA and CIAQC's members wish to continue operating, the Heavy Duty Phase 3 Rule would force them to purchase unreliable electric vehicles that often break down or catch fire. Further, there is no nationwide or even statewide charging infrastructure yet available for such vehicles. *See* Brown Decl. at its Ex. B ¶ 15; Aboudi Decl. at its Ex. A ¶ 10; Lewis Decl. at its Ex. B ¶ 12. Moreover, their employees will lose valuable time and be made to risk their lives due to these regulations. *See id.* The Light-Medium Duty Rule imposes similar types of injuries on WSTA and CIAQC members. Santoro Decl. at its Ex. A ¶¶ 7–10; Lewis Decl. at its Ex. A ¶¶ 4-13.

Proposed Intervenor-Respondent Merit Oil is a family business that has operated in California for three generations. Merit Oil stores, transports, and wholesales a variety of petroleum products, including gasoline, diesel fuels, solvents, and kerosene, and operates a number of

7

delivery trucks. These operations emit carbon dioxide, which is the single largest GHG subject to the Endangerment Finding and its Mobile Source GHG Emissions Standards.

Proposed Intervenor-Respondent Liberty Packing is a bulk processor of tomato products. The company relies on natural gas boilers to produce its tomato products and uses trucks to deliver them. Burning natural gas creates carbon dioxide as a byproduct, which is emitted by Liberty Packing's boilers. Its trucks also emit carbon dioxide. The Endangerment Finding provides the federal springboard for regulating the carbon dioxide emissions of Liberty Packing's boilers and mobile sources.

## III. EPA Rescinds the 2009 Endangerment Finding and Mobile Source GHG Emission Standards.

In February 2026, EPA finalized a rule rescinding the Endangerment Finding. Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act, 91 Fed. Reg. 7686 (Feb. 18, 2026) ("Rescission Rule"). This rule also repeals greenhouse gas emission standards for light-duty, medium-duty, and heavy-duty vehicles and engines. *Id.* at 7686. The preamble to the Rescission Rule concludes: (1) EPA lacks the authority to regulate greenhouse gases under the major questions doctrine, *id.* at 7723, and (2) the CAA only allows EPA to

regulate air pollution that threatens public health or welfare through local or regional exposure, not global concerns, *id.* at 7711.

Proposed Intervenor-Respondents submitted comments to EPA supporting the proposed Rescission Rule on the ground that the Endangerment Finding did not undergo SAB review and, therefore, the Endangerment Finding was void *ab initio*. Additionally, Proposed Intervenor-Respondents commented that the recent Supreme Court decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), required a reevaluation of *Massachusetts v. EPA*, 549 U.S. 497 (2007). Proposed Intervenor-Respondents argued that it was incumbent on EPA to base its rescission on the fact that a careful reading of *Loper Bright* shows that the *Massachusetts v. EPA* court improperly re-wrote the text of the CAA. In the final Rescission Rule, EPA essentially ignored these comments submitted by the Proposed Intervenor-Respondents.

## IV. Procedural History

Petitioners filed the instant petition for review on the same day the Rescission Rule was published in the Federal Register. Proposed Intervenors are filing their motion less than 30 days after the petition for review was filed. *See* Fed. R. App. P. 15(d).

## ARGUMENT

### I. Proposed Intervenor-Respondents Are "Directly Affected" by the Endangerment Finding, the Mobile Source GHG Emissions Standards, and the Rescission Rule.

Federal Rule of Appellate Procedure 15(d) requires a proposed intervenor to move for leave to intervene within 30 days and to state, "the interest of the moving party and the grounds for intervention." Fed. R. App. P. 15(d); *see also Synovus Fin. Corp. v. Bd. of Gov's. of Fed. Reserve Sys.*, 952 F.2d 426, 433 (D.C. Cir. 1991). A proposed intervenor that "ha[s] been directly affected by an application" of the rule at issue satisfies Rule 15(d)'s interest and grounds requirement. *See Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 744–45 (D.C. Cir. 1986).

The Proposed Intervenor-Respondents are "directly affected" by the Endangerment Finding, the Mobile Source GHG Emissions Standards, and the Rescission Rule. The Endangerment Finding designated carbon dioxide and other GHGs as a danger to "both the public health and the public welfare." 74 Fed. Reg. at 66,496. The Mobile Source GHG Emissions Standards based on the Endangerment Finding, such as the Heavy Duty Phase 3 Rule, sought to reduce carbon dioxide and other GHG emissions. 89 Fed. Reg. at 29,442 ("These final regulations . . . will significantly reduce GHG emissions"). The Heavy Duty Phase 3 Rule also would have required 45% of trucks to be all-electric by 2032. *Id.* at 29,567–68.

WSTA and CIAQC members have been directly affected by the regulations at issue in this case. The Rescission Rule repeals the Heavy Duty Phase 3 Rule. 91 Fed. Reg. at 7745. If the Rescission Rule were invalidated, the Heavy Duty Phase 3 Rule would be reinstated and WSTA and CIAQC members would have to transition their fleets to electric vehicles. As explained above, each heavy-duty electric truck costs approximately $300,000 more to acquire and $3,000 more per year to operate as compared to diesel-powered trucks. Aboudi Decl. at its Ex. A ¶¶ 12–13. These substantial additional costs show that members of Proposed Intervenor-Respondents WSTA and CIAQC will be directly and negatively affected if the Rescission Rule is vacated. Therefore, the Court should grant intervention under Rule 15(d).

Another of the Proposed Intervenor-Respondents, Merit Oil, is a company that distributes via truck petroleum products. In addition to the greater costs required by the Mobile Source GHG Emissions Standards to replace Merit Oil's trucks, the Endangerment Finding and Heavy Duty Phase 3 Rule directly reduce demand for Merit Oil's petroleum products. The Supreme Court recently recognized that carbon dioxide emissions standards inflict a monetary injury-in-fact to fuel producers and distributors. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 113–14 (2025). Litigants need not "introduce evidence from expert economists or from directly regulated third parties" to prove a "predictable chain of events." *Id.* at 121. Accordingly, under *Diamond Alternative Energy,*

11

Merit Oil has interests directly affected by the regulations at issue in this case.

Proposed Intervenor-Respondent Liberty Packing relies on natural gas boilers to produce its tomato products and uses trucks to deliver them. Burning natural gas creates carbon dioxide as a byproduct, which is emitted by Liberty Packing's boilers. Its trucks also emit carbon dioxide. The Endangerment Finding is the federal springboard for regulating the carbon dioxide that Liberty Packing's boilers and trucks emit.

Accordingly, Proposed Intervenor-Respondents have been "directly affected" by the Endangerment Finding and have an interest in preserving the Rescission Rule from the challenge posed by the Petitioners in the instant litigation and its consolidated cases.

## II.    The Court Should Grant the Motion to Intervene.

Although the Federal Rules of Civil Procedure "nominally apply only to 'procedure in the United States district courts,' Fed. R. Civ. P. 1, we apply them—specifically Rule 24—to interventions solely for purposes of appeal." *United States v. Am. Bar Assn.*, 118 F.3d 776, 779 (D.C. Cir. 1997). This Court and many others have looked to Rule 24's standards for guidance on whether to grant intervention under Rule 15(d). *See, e.g.*, *Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1553 n.3 (D.C. Cir. 1985); *Int'l Union v. Scofield*, 382 U.S. 205, 217 n.10 (1965); *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004). The Proposed

Intervenor-Respondents meet Rule 24's standard for intervention both as of right and permissive intervention.

### A. The Proposed Intervenor-Respondents are entitled to intervene as of right because they have legally protected interests at stake that are not adequately represented by the parties.

When considering intervention as of right under Rule 24, this Court considers four factors: "(1) timeliness, (2) cognizable interest, (3) impairment, and (4) lack of adequate representation." *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988). "[T]he inquiry" into these factors "is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996); *see also Garcia v. Vilsack*, 304 F.R.D. 77, 82 n.9 (D.D.C. 2014), *aff'd*, 14-5175, 2014 WL 6725751 (D.C. Cir. Nov. 18, 2014) (noting that the D.C. Circuit endorsed a "flexible approach" to intervention).

### 1. This motion is timely because it meets Rule 15(d)'s 30-day requirement.

Timeliness is a threshold requirement. *Amador Cty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014). Under Rule 24, timeliness considers all of the circumstances, with a particular eye toward the time elapsed since the suit began. *Id.* Here, Rule 15(d) gives a specific timeliness standard: the motion "must be filed within 30 days after the petition for review is filed." Fed. R. App. P. 15(d). This motion was filed within the 30-day period. Because Rule 15(d) requires filing the motion

near the commencement of the case, it would also meet Rule 24's timeliness requirement. *See Amador Cty.*, 772 F.3d at 903. Accordingly, this motion is timely.

### 2. Proposed Intervenor-Respondents' Article III standing meets Rule 24's interest requirement.

The second Rule 24 factor weighs the Proposed Intervenor-Respondents' interests in the case. "Article III standing satisfies second element of Rule 24(a)(2)." *Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013) (citing *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1018–19 (D.C. Cir. 2003)).

WSTA and CIAQC have Article III standing. The electric trucks the Heavy Duty Phase 3 Rule requires cost approximately $300,000 more in acquisition costs and $3,000 more per year in operational costs as compared to diesel-powered trucks. Aboudi Decl. at its Ex. A ¶¶ 12–13. Operating these trucks will make WSTA and CIAQC's members less profitable. *See* Brown Decl. at its Ex. B ¶¶ 10–13; Aboudi Decl. at its Ex. A ¶¶ 7–8; Lewis Decl. at its Ex. B ¶¶ 8–10. "Those monetary costs 'are of course an injury.'" *Diamond Alt. Energy*, 606 U.S. at 114 (quoting *United States v. Texas*, 599 U.S. 670, 676 (2023)). Accordingly, keeping the Mobile Source GHG Emissions Standards repealed will result in at least "'one dollar' of additional revenue" for WSTA and CIAQC's members. *Id.* WSTA and CIAQC members thus have an injury in fact.

WSTA and CIAQC can assert associational standing on behalf of its members. "An association only has standing to bring suit on behalf of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests it seeks to protect are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members." *Wildlife*, 714 F.3d at 1323. William Aboudi's declaration describes the injuries faced by WSTA member Oakland Port Services, specifically under the heavy-duty standards. Aboudi Decl. at its Ex. A ¶¶ 2, 7–8, 12–13. Thomas Santoro's declaration describes injuries faced by WSTA member Santoro Transportation, Inc. under the Light-Medium Duty Rule. Santoro Decl. at its Ex. A ¶¶ 2, 6–9. Both WSTA and CIAQC are organized to litigate cases to advance their members' interests. Brown Decl. at its Ex. B ¶ 3; Lewis Decl. at its Ex. B ¶ 4. In fact, both WSTA and CIAQC petitioned for review of the Heavy Duty Phase 3 Rule. *See Nebraska v. EPA*, No. 24-1129 (D.C. Cir.) (consolidated with petition for review no. 24-1157). WSTA and CIAQC also petitioned for review of the Light-Medium Duty Rule. *See Kentucky v. EPA*, No. 24-1087 (D.C. Cir.) (consolidated with petition for review no. 24-1158). Both of these cases are still pending. Finally, the defenses WSTA and CIAQC will assert do not require the participation of its individual members. Accordingly, WSTA and CIAQC have associational standing and, therefore, meet Rule 24's interest requirement.

As explained above, the Supreme Court recently found Article III standing for a group of fuel producers and distributors challenging carbon dioxide emissions standards. *Diamond Alt. Energy*, 606 U.S. at 113–14. That is because carbon dioxide emissions regulations decrease petroleum-based fuel purchases and hurt their bottom line. *Id.* These emissions regulations also increase costs for petroleum products distributors like Merit Oil and industrial natural gas users like Liberty Packing. "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017).

The traceability requirement is satisfied because EPA originally made the Endangerment Finding and promulgated the Mobile Source GHG Emissions Standards that injure the Proposed Intervenor-Respondents, and the Rescission Rule removes their injuries caused by those prior EPA actions. Ensuring the regulations remain rescinded "would likely redress at least some of the fuel producers' monetary injuries. Even 'one dollar' of additional revenue . . . would satisfy the redressability component of Article III standing." *Diamond Alt. Energy*, 606 U.S. at 114. The Proposed Intervenor-Respondents have identified hundreds of thousands of dollars of threatened future injuries caused by the Endangerment Finding and the Mobile Source GHG Emissions Standards. Therefore, the Proposed Intervenor-Respondents have Article

III standing, which also satisfies Rule 24's interest element. *Perciasepe*, 714 F.3d at 1323 (citing *Jones*, 348 F.3d at 1018–19).

### 3. Proposed Intervenor-Respondents' interests will be impaired if Petitioners succeed in vacating the Rescission Rule.

The third Rule 24 factor weighs whether the case "may as a practical matter impair or impede" the Proposed Intervenor-Respondent's interest. Fed. R. Civ. P. 24(a)(2). This case will decide whether EPA properly promulgated the Rescission Rule under the Administrative Procedure Act. The default remedy for violating the Administrative Procedure Act is vacatur. *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019). Vacatur will revive the Endangerment Finding and the Mobile Source GHG Emissions Standards. That will substantially impede the interests of the Proposed Intervenor-Respondents, as explained *supra* in Section II.A.2. of this Argument, because vacatur would (1) reimpose, as a practical matter, the need for WSTA and CIAQC members to replace their existing diesel-fueled mobile sources with more costly electric ones, (2) reduce demand for Merit Oil's products, and (3) inhibit Liberty Packing's ability to obtain the requisite fuel for its natural gas boilers and trucks.

Furthermore, as generally described above in Section III of the Introduction and Background, *supra*, and as addressed in more detail in Section II.A.4. of this Argument, *infra,* the Proposed Intervenor-Respondents will defend the Rescission Rule by making arguments that

EPA is unlikely to make in defense of the rule. And there is no other forum where they can advance these defenses to protect their interests. Therefore, the Proposed Intervenors-Respondents' interests will be impaired if this motion to intervene is not granted.

### 4. The existing parties do not adequately represent Proposed Intervenor-Respondents' interests.

The fourth Rule 24 factor weighs whether any existing party adequately represents Proposed Intervenor-Respondents' interests. Rule 24's inadequate representation requirement is "not onerous." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). True, the Proposed Intervenor-Respondents and EPA will be advancing the same goal in this litigation: upholding the Rescission Rule's validity. But the Proposed Intervenor-Respondents need only show that the representation of their interests by others "may be" inadequate, not that their representation will in fact be inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *NRDC v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977).

This Court has frequently concluded that, even where the interests of a private party seeking intervention and those of a government agency are aligned, the government agency does not adequately represent the private party. *See, e.g., NRDC*, 561 F.2d at 912–13; *Dimond*, 792 F.2d at 192–93; *Fund for Animals*, 322 F.3d at 736. As the Court has pointed out

18

in these cases, the government agency is charged with acting in the interest of the general public, whereas the private party is seeking to protect a narrower and more focused financial or other specific interest and thus cannot be considered to be adequately represented by the government agency. *NRDC*, 561 F.2d at 912; *Dimond*, 792 F.2d at 192–93; *see also Fund for Animals*, 322 F.3d at 736–37. In *NRDC*, the Court noted further that, due to that more narrow and focused interest, the private party's participation is "likely to serve as a vigorous and helpful supplement to EPA's defense." 561 F. 2d at 912–13. Accordingly, because of the adverse financial impacts of vacatur of the Rescission Rule on the Proposed Intervenor-Respondents, Respondent EPA does not adequately represent their interests.

Moreover, Proposed Intervenor-Respondents' and EPA's interests directly diverge on at least two specific issues: (1) the SAB submission requirement and (2) the status of *Massachusetts v. EPA* in light of *Loper Bright*.

First, during the comment period the Proposed Intervenor-Respondents' argued that the original Endangerment Finding was void *ab initio* because EPA had failed to submit the proposed finding to the SAB for peer review. *See* Liberty Packing et al., Comments to Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards 11–24, Docket No. EPA-HQ-OAR-2025-019, https://www.regulations.gov/comment/EPA-HQ-OAR-2025-0194-0095.

19

EPA took a directly adverse position in the preamble to the Rescission Rule by stating that EPA was not required to submit the Endangerment Finding to the SAB. 91 Fed. Reg. at 7694–95. Thus, EPA and the Proposed Intervenor-Respondents are directly adverse on the SAB issue.

Given this direct conflict, it would be unreasonable and absurd to rely on EPA to represent the interests of Proposed Intervenor-Respondents with regard to their SAB arguments. *See e.g., Kaseman v. District of* Columbia, 444 F.3d 637, 642 (D.C. Cir. 2006) (observing that courts should avoid "unreasonable results" or "unjust or absurd consequences"); *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1067–68 (D.C. Cir. 1998) (citing the "long standing rule" that courts should avoid "absurd results"); *see also* Veronica M. Dougherty, *Absurdity and the Limits of Liberalism: Defining The Absurd Result Principle in Statutory Interpretation,* 44 Am. U.L. Rev. 127 (1994).[2] Clearly, having taken a position adverse to that of Proposed Intervenor-Respondents on the SAB issue in the preamble to the Rescission Rule, EPA is not in a position here to argue that very same issue on their behalf. Accordingly, EPA does not and cannot adequately represent the interests of the Proposed Intervenor-Respondents in connection with the SAB issue. *See Roeder v.*

---

[2] The doctrine of avoiding absurd results has traditionally been applied in the context of statutory interpretation. There is no reason why it should not be applied in equal measure to the interpretation of Fed. R. Civ. P. 24 on the issue of inadequate representation. *See United States v. Kirby,* 74 U.S. 482, 486 (1869) ("All laws should receive a sensible construction").

*Islamic Republic of Iran*, 333 F.3d 228, 233-34 (D.C. Cir. 2003) (opining that intervenor-defendant is not adequately represented when existing parties do not or cannot make arguments to protect the intervenor's interest). Moreover, the SAB issue is one that only the Proposed Intervenor-Respondents can secure for judicial review. *See Fund for Animals*, 322 F. 3d at 737–38; *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (observing that an agency cannot itself rely on rationalizations for its action not based on grounds "invoked when it took the action").

Second, EPA asserted in the Rescission Rule's preamble that the rescission is consistent with *Massachusetts v. EPA*. 91 Fed. Reg. at 7712. In contrast, Proposed Intervenor-Respondents argued in their comment that *Massachusetts v. EPA* was wrongly decided based on the Supreme Court's recent decision in *Loper Bright*. *See* Liberty Packing et al., Comment *supra*, at 2, 24–28. Indeed, based on the Rescission Rule's language, as well as a review of thousands of comments made during the comment period, it appears that neither EPA nor others are going to argue in this Court, and, if necessary, on appeal to the Supreme Court, that *Massachusetts v. EPA* conflicts with *Loper Bright* and should be overturned. This is another reason why Proposed Intervenor-Respondents' motion should be granted. *See, e.g., Mova Pharm. Corp. v. Shalala*, 140 F.3d at 1067–68.

**B. The Proposed Intervenor-Respondents should be granted permissive intervention because they share a common question of law or fact.**

Rule 24 authorizes permissive intervention where an applicant shows, in a timely motion, that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As set forth in great detail in Section III.A. of this Argument, *supra,* Proposed Intervenor-Respondents: (1) have submitted a timely motion, (2) showing that they have defenses for the Rescission Rule that share with the main action common questions of law and fact dealing with whether or not the Rescission Rule should be vacated, and (3) their intervention will not "unduly delay or prejudice the adjudication" of the Petitioners' claims, *see* Fed. R. Civ. P. 24(b)(3), because the motion is being submitted at an early stage and well before this Court has established a briefing schedule.

Accordingly, in addition to being entitled to intervention as of right, Proposed Intervenor-Respondents meet the standards for permissive intervention under Federal Rule of Civil Procedure 24(b) and Federal Rule of Appellate Procedure 15(d).

## CONCLUSION

For these reasons, the Court should grant the Proposed Intervenor-Respondents' motion for leave to intervene.

DATE: March 19, 2026        Respectfully submitted,

*/s/Theodore Hadzi-Antich*
ROBERT HENNEKE
rhenneke@texaspolicy.com
CHANCE WELDON
cweldon@texaspolicy.com
THEODORE HADZI-ANTICH
tha@texaspolicy.com
ERIC HEIGIS
eheigis@texaspolicy.com
LAURA ELIZABETH KING LATIMER
lblatimer@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:(512) 472-2700
Facsimile: (512) 472-2728

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with Fed. R. App. P. 27(d)(1)(E) because it uses 14-point Century Schoolbook, a proportionally spaced font.

I also certify that this motion complies with Fed. R. App. P. 27(d)(2)(A), because by Microsoft 365's count it has 4,991 words, excluding the parts exempted under Fed. R. App. P. 32(f).

*/s/Theodore Hadzi-Antich*
THEODORE HADZI-ANTICH

# CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2026, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the D.C. Circuit by using the CM/ECF system, and that service to all participants will be accomplished by the appellate CM/ECF system.

/s/ Theodore Hadzi-Antich
THEODORE HADZI-ANTICH