ORAL ARGUMENT NOT YET SCHEDULED

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION, et al., <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and LEE ZELDIN, in his official capacity as Administrator, United States Environmental Protection Agency, <br><br> Respondents. | Case No. 26-1037 (consolidated with Nos. 26-1038, 26-1039, 26-1043, 26-1051, and 26-1061) |

On Petition for Review of Final Action of the United States Environmental Protection Agency

**MOTION FOR LEAVE TO INTERVENE AS RESPONDENT**

Pursuant to Federal Rule of Appellate Procedure 15(d) and Circuit Rule 15(b), the Truck and Engine Manufacturers Association ("EMA") hereby moves to intervene as a respondent in Case No. 26-1037 and consolidated cases, actions seeking review of the final rule entitled, "Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards," published at 91 Fed. Reg. 7686

(Feb. 18, 2026) ("Reconsideration Rule"). As explained below, EMA seeks to intervene with respect to the Reconsideration Rule's repeal of the "Phase 3" greenhouse gas ("GHG") emission standards applicable to medium- and heavy-duty ("MHD") engines and vehicles.

EMA is the not-for-profit trade association that represents the interests of the world's leading manufacturers of new MHD engines and vehicles, including in connection with rulemakings and emission-control regulations developed and finalized by EPA. EMA was a key stakeholder in the development of the GHG emission standards applicable to MHD engines and vehicles, and also submitted extensive comments regarding the proposal that led to the final rule at issue. *See* 90 Fed. Reg. at 36288-36365.

Respondent the United States Environmental Protection Agency reserves its position until it reviews the motion. Petitioners in Nos. 26-1037, 26-1038, 26-1043 and 26-1051 take no position on the motion.

## BACKGROUND

This case involves a petition challenging EPA's Reconsideration Rule. The Reconsideration Rule repealed multiple sets of GHG standards that the Agency adopted for new motor vehicles and engines, including, the "Phase 3" GHG standards applicable to new MHD trucks and engines at the start of the 2027 model

year (“MY”), less than nine months from now. *See* 87 Fed. Reg. 29440 (April 22, 2024). EMA seeks to intervene as a respondent to support and defend the repeal of the Phase 3 standards.

**Summary of the Reconsideration Rule**

On February 18, 2026, EPA published the final Reconsideration Rule and plaintiffs immediately filed their petition challenging the Rule. *See* ECF Doc. No. 2159562. 91 Fed. Reg. at 7686. The Rule finalized EPA’s proposed rescission of the 2009 endangerment finding for GHGs emitted from new mobile sources, and, as a consequence, also abrogated all of the applicable GHG emissions standards for new motor vehicles and engines, including the Phase 3 MHD GHG standards. EPA based the final Reconsideration Rule primarily on a “best reading” of EPA’s standard-setting authority under CAA section 202(a)(1), as informed by more recent Supreme Court cases.

The final Rule also relies on the “major questions doctrine,” specifically finding that “the major questions doctrine applies and bars the EPA from asserting the authority to decide the Nation’s policy response to global climate change concerns, including by attempting to force a shift to electric vehicles (“EVs”), based on [CAA] language authorizing the Agency to prescribe emission standards.” *Id*. at 7695. The final Reconsideration Rule goes on to confirm that whether and how to address global climate change “present a major question of undeniable political and

economic significance" with "extraordinary consequences, including an increasing trend toward forcing a shift from internal combustion engine ("ICE") vehicles to EVs for virtually all classes of LD, MD and HD vehicles." EPA then concludes that, "It is highly unlikely that Congress would leave to 'agency discretion' the decision whether and how many consumers and manufacturers in the United States may use ICE in their vehicles." *Id*. at 7723-24.

Importantly, EPA's Reconsideration Rule makes it clear that each basis for its rescission of the 2009 endangerment finding and repeal of the subsequent GHG standards "is severable, and each basis alone provides sufficient justification to repeal the GHG emission standards for new motor vehicles and engines." *Id*. at 7692.) In particular, the final Rule specifies that "the new [Phase 3] motor vehicle standards issued by the EPA separately and independently trigger the major questions doctrine by forcing a transition toward the use of EVs rather than the ICE in a manner similar to the generation shifting at issue in *West Virginia."* (*Id.* at 7727).

**<u>The Reconsideration Rule Involves Matters that are Vital to the Interests of EMA and its Members</u>**

The Phase 3 GHG Standards that the Reconsideration Rule rescinded were adopted in 2024, and in effect call for an annually increasing phase-out of new MHD trucks powered by conventionally-fueled ICE starting in MY 2027, which, as noted, begins in less than 9 months. While the Reconsideration Rule has precluded the

imminent implementation of that EPA-mandated phase-out of ICE-powered trucks, a successful challenge to (or stay of) the Reconsideration Rule could reinstate the Phase 3 standards concurrent with the start of the 2027 MY, notwithstanding a massive decline in demand for EV trucks from the already low percentage of sales due to policy changes, funding reductions and infrastructure challenges.

More specifically, trucking fleets and other entities in the goods movement sector that need to purchase new 2027 and later MY trucks to operate their businesses could face reduced availability of diesel-fueled vehicles as a consequence of the Phase 3 EV-forcing standards. Those standards effectively preclude the sale of sufficient numbers of 2027 and later MY ICE-powered trucks to meet the demands of the commercial trucking market due to the mandated sales ratios between zero-emission ("ZE") trucks (*i.e.* trucks powered by rechargeable batteries or by hydrogen fuel cells) and diesel-powered trucks. Manufacturers would not be able to guarantee a sufficient number of ZE truck sales and so, under the rule, risk having to curtail their overall production of new ICE-powered trucks, leaving the marketplace with few trucks of any kind.

These adverse outcomes stem from the fact that EPA's Phase 3 Standards include requirements that manufacturers sell increasing percentages of ZE MHD trucks starting in MY 2027 and extending out to MY 2032. Those required percentage-sales numbers were slated to increase to as much as 60% in MY 2032,

as set forth in the following table (Table ES-3) from the Preamble to the final Phase 3 rule:

**Table ES-3 Example 1 Projected Percent Mix of Vehicle Technologies that Support the Feasibility of the Phase 3 Standards**

| Regulatory Subcategory Grouping | MY 2027 | | MY 2028 | | MY 2029 | | MY 2030 | | MY 2031 | | MY 2032 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ZEV | ICEV | ZEV | ICEV | ZEV | ICEV | ZEV | ICEV | ZEV | ICEV | ZEV | ICEV |
| Light Heavy-Duty Vocational | 17% | 83% | 22% | 78% | 27% | 73% | 32% | 68% | 46% | 54% | 60% | 40% |
| Medium Heavy-Duty Vocational | 13% | 87% | 16% | 84% | 19% | 81% | 22% | 78% | 31% | 69% | 40% | 60% |
| Heavy Heavy-Duty Vocational | N/A, begins in MY 2029 | | | | 13% | 87% | 15% | 85% | 23% | 77% | 30% | 70% |
| Short-Haul (Day Cab) Tractors | N/A, begins in MY 2028 | | 8% | 92% | 12% | 88% | 16% | 84% | 28% | 72% | 40% | 60% |
| Long-Haul (Sleeper Cab) Tractors | N/A, begins in MY 2030 | | | | | | 6% | 94% | 12% | 88% | 25% | 75% |

Note: Please see section II.F for the full set of technology packages, including for optional custom chassis vehicles.

EPA's de facto ZE truck sales mandates were and are not feasible or cost-effective, and, if those Phase 3 mandates are reinstated with immediate effect through this litigation, manufacturers will have no ability whatsoever to comply with the ZE truck sales requirements, which again would take effect on January 1, 2027. Thus, given the materially disruptive consequences of any adverse ruling in this case, it is beyond question that EMA and its members, as the regulated parties subject to the GHG Phase 3 regulations, are facing direct and potentially severe market impacts from the resolution of this matter, which fully warrants EMA's intervention in this case as explained further below.

While the EPA Reconsideration Rule has broad implications for all mobile source greenhouse gas regulations, EMA's defense is focused on the rescission of the Phase 3 standards under the major questions doctrine. As evidenced by the table

of annually increasing ZE-truck sales-percentage requirements highlighted above, the Phase 3 Standards amount to EPA-issued de facto mandates to transition the MHD transportation sector to battery- and hydrogen-powered trucks over the next five years, starting in the range of 13% to 17% in MY 2027, and then increasing year-over-year to a range of 40% to 60% in 2032. Those required percentage deployment rates – deployment rates that amount to a fundamental transformational shift for the entire goods movement sector – are infeasible and beyond the scope of EPA's delegated authority.

More specifically, EPA adopted MHD GHG standards so stringent that manufacturers could only meet them by decreasing their production of conventionally-fueled ICE-powered vehicles and dedicating an increasing percentage of their MHD truck sales offerings to battery-powered or fuel-cell vehicles. That mandated paradigm shift for the nation's good-movement economic sector is the type of major question that Congress is meant to address.

EMA has a vital and valid interest in acting on behalf of its members to defend the application of the major questions doctrine to the rescission of the Phase 3 standards under that doctrine.

## LEGAL STANDARD

Federal Rule of Appellate Procedure 15(d) authorizes intervention in circuit court proceedings to review agency actions on a motion containing "a concise

statement of interest of the moving party and the grounds for intervention" that is filed within 30 days after a petition for review. In determining whether to grant intervention, this Court typically draws on the policies underlying Federal Rule of Civil Procedure 24. *See Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997).

Under Federal Rule of Civil Procedure 24, a party seeking to intervene as of right must satisfy four factors: 1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015); *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1233 (D.C. Cir. 2018). A party that satisfies the requirements of Rule 24(a) will also meet the standing requirement under Article III of the Constitution. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).

A court may also grant permissive intervention when a movant makes a timely application and the applicant's claim or defense and the main action have a question of law or fact in common. Fed. Rule Civ. Proc. 24(b)(1); *see EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

## ARGUMENT

### I. EMA IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

EMA clearly satisfies the Federal Rule of Appellate Procedure 15(d) standard for intervention and the showings required for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). First, this motion is timely filed within 30 days of the filing of the petition for review, so that requirement been satisfied. *See* Fed. Rule App. Proc. 15(d). Second, EMA has legally protected interests in the Reconsideration Rule's rescission of the Phase 3 GHG standards, since those standards apply directly to the new MHD trucks and engines manufactured by EMA's members. *See Air All. Houston v. EPA*, 906 F.3d 1049, 1059-60 (D.C. Cir. 2018). Third, as explained above, the legally protected interests of EMA and its members would be impaired by any grant of the petition (or stay) in this case, which would reinstate the Phase 3 standards with what amounts to immediate effect on January 1, 2027. *See Crossroads Grassroots*, 788 F.3d at 320. And finally, no existing party to the action can adequately represent EMA's unique and vital interests in defending the Reconsideration Rule's severable rescission of the Phase 3 GHG standards that relate directly to the design, manufacture and sale of EMA's members' MHD products. *See id.* at 321.

### A. EMA has Legally Protected Interests in the Rule that Would Be Impaired if the Petition is Granted.

EMA has longstanding and legally protected interests in advocating on behalf of its manufacturer-members for sound, technologically feasible and cost-effective emission control regulations for the new motor vehicles and engines that EMA's members design, manufacture and sell. As detailed above, those concrete regulatory, environmental, and economic interests would be significantly impaired if the Phase 3 standards, which were set to take effect at the start of 2027, are reinstated and, as a practical matter, immediately enforced.

The Phase 3 standards were unprecedented in their nature and stringency. Moreover, in setting those de facto ZE truck sales mandates, EPA relied on a number of flawed assumptions. Chief among those assumptions were (i) the continuing availability of the significant financial incentives provided under the Inflation Reduction Act (IRA) and the Bipartisan Infrastructure Law (BIL) for the purchase of ZE trucks and the development and build-out of the necessary ZE-truck battery-recharging and hydrogen-refueling infrastructure; and (ii) the continuing market influence of California's previously-enacted ZE-truck sales mandates.

Now, however, the Trump Administration and Congress have eliminated virtually all of the ZE truck incentives previously put in place under the IRA and BIL. In addition, just last year Congress enacted and the President signed resolutions

adopted pursuant to the Congressional Review Act that have nullified California's ZE truck sales mandates. As a result, any reinstatement of the Phase 3 standards, as the Petitioners are seeking, will reimpose de facto ZE-truck mandates, which are now even more unreasonable if not wholly unachievable and cost-prohibitive.

Given the fundamentally changed circumstances related to the validity of the infeasible Phase 3 standards and EPA's original legal justifications for those ZE-truck mandates, EMA and its members have clear and direct interests in defending the Agency's rescission of those mandates. Simply stated, EMA's members – the world's leading manufacturers of new MHD trucks and internal combustion engines – will have their current business, manufacturing and sales plans completely upended if the Phase 3 standards are reinstated. Indeed, it could be that the only way that manufacturers could try to comply with a reinstatement of the now-even-more-infeasible Phase 3 ZE-truck mandates would be to reduce their overall production and sale of conventionally-fueled ICE-powered trucks such that the required sales percentages of ZE-trucks would be reduced to the nominal numbers that the new MHD truck market might be able to absorb. Such an outcome would be devastating to the new MHD truck market and the broad sectors of the nation's economy that the trucking industry supports.

All of this clearly demonstrates that EMA is a proper and indeed necessary intervenor in this case. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733

(D.C. Cir. 2003) (determining that intervention in administrative review proceedings is appropriate where movant would be harmed by successful challenge to regulatory action and that harm could be avoided by ruling denying relief sought by petitioner).

### B. EMA's Interests Are Not Adequately Represented.

EMA also satisfies the other criterion for intervention as of right because no existing party in the case can fully represent its interests. This requirement is "not onerous," and a "movant ordinarily should be allowed to intervene unless it is clear that" existing parties "will provide adequate representation." *Crossroads Grassroots*, 788 F.3d at 321.

EMA readily satisfies this "minimal burden" because its interests are not adequately represented by the other parties. EMA is focused on the application of the major questions doctrine, which supports the severable revocation of the Phase 3 standards, while EPA will necessarily be more focused on the multiple other legal grounds it has raised in support of the Reconsideration Rule.

EMA's more focused interests and concerns regarding the Phase 3 standards are sufficiently distinct from EPA's broader interest in defending the rescission of the endangerment finding, such that EPA and EMA would likely choose to advance different arguments emphasizing different legal grounds in this litigation.

More specifically, EMA plans to focus on how the "major questions doctrine" directly applies to and fully supports the rescission of the Phase 3 standards, because

these standards will mandate a broad-based transition of the goods movement industry to ZE trucks and a phase out of conventionally-fueled ICE-powered trucks. EPA has embraced that argument (*see* 91 Fed. Reg. at 7723-7728), but is also emphasizing other legal arguments in finalizing the Reconsideration Rule, including arguments tied to specific terms and provisions of section 202(a)(1) of the Clean Air Act.

In addition, in light of the potential change in presidential administrations before this matter is fully and finally resolved, there is no guarantee that EPA will continue to vigorously defend the Reconsideration Rule subsequent to November of 2028. EMA therefore readily satisfies this final requirement for intervention as of right.

**C. For the Same Reasons, EMA has Article III Standing.**

As this Court has observed, "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder*, 333 F.3d at 233; *see also Crossroads Grassroots*, 788 F.3d at 320. Thus, for the same reasons that EMA satisfies Federal Rule of Civil Procedure 24(a)'s standard for intervention as of right, it has Article III standing as well. This Court's "cases have generally found a sufficient injury in fact [for a respondent intervenor] where a party benefits from

agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots*, 788 F.3d at 317.

As described above, EMA's members are directly and uniquely impacted by the rescission of the Phase 3 GHG standards. As a natural corollary to that, any decision in favor of the Plaintiffs reversing that rescission and reinstating the Phase 3 standards would place financial burdens on manufacturers and prevent them from fulfilling the natural market demand for their products, with detrimental impacts and higher costs to the goods movement industry.

That injury to EMA's members is "directly traceable" to Petitioners' challenge to the Rule, and a successful defense of the rescission of the Phase 3 standards would thus "prevent the injury," establishing the requisite causation and redressability. *Air All. Houston*, 906 F.3d at 1059- 60; *Crossroads Grassroots*, 788 F.3d at 316; *see also Fund for Animals*, 322 F.3d at 733.

**D. EMA Meets the Requirements for Associational Standing**

For the same reasons explained above, EMA also meets the requirements for "associational standing." As the Supreme Court has established, a trade association like EMA has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests the association seeks to protest are germane to its purpose; and (c) neither the claim asserted nor the relief sought requires the participation of individual members of the

association. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333.343 (19776).

Here, EMA clearly satisfies all of those requirements. First, EMA's members are directly regulated under the Phase 3 standards that EPA has revoked and that Petitioners seek to reinstate. Accordingly, EMA's individual manufacturer-members would otherwise have standing to intervene to defend the revocation of the Phase 3 MHD GHG standards.

Second, EMA's core purpose is to represent the truck and engine industry in the development, implementation of, and where warranted, challenge to EPA rulemakings that establish emission standards and other requirements related to the certification and sale of new MHD engines and trucks. In that regard, EMA submitted extensive comments both on the Phase 3 rulemaking and on the NPRM for the Reconsideration Rule. *See* EMA Comments, June 21, 2023, Docket ID No. EP-HQ-OAR-2022-1985; EMA Comments, September 23, 2025, Docket ID No. EPA-HQ-OAR-2025-0194. In addition, EMA has previously filed petitions and amicus briefs with this Court in challenges to other EPA rulemakings. *See e.g., EMA v. EPA,* 88 F.3d 1075 (D.C. Cir. 1996). *See also EMA v. SCAQMD*, 541 U.S. 246 (2004). Thus, federal courts have previously recognized that EMA is a proper party to litigate challenges to rulemakings that apply to or significantly impact EMA's members' products.

Third and finally, this case does not involve any unique particularized injury or any monetary damage calculations that might require the participation of any individual EMA member. Rather, this case involves, as a severable part, the generally applicable issue of whether EPA had proper legal bases for the revocation of the ZEV-truck-forcing Phase 3 GHG standards, including under the major questions doctrine.

## II. ALTERNATIVELY, EMA IS ENTITLED TO PERMISSIVE INTERVENTION.

EMA also satisfies the requirements for permissive intervention. Under Federal Rule of Civil Procedure 24(b)(1), courts may "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact" so long as the motion is timely and intervention would not "unduly delay or prejudice the rights of the original parties." Fed. Rule Civ. Proc. 24(b)(1)(B), (3).

EMA's defense of the revocation of the Phase 3 standards will address shared questions of law relating to the challenge that the Plaintiffs will raise against the Reconsideration Rule. Among other things, EMA will defend EPA's rescission of the Phase 3 standards under the "major questions doctrine." *See* 91 Fed. Reg. at 7723-7726. And, as noted at the outset, EMA's motion was timely filed within 30 days of the petition, such that intervention at this early stage in the litigation will not

cause any delay or prejudice. *See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 (D.C. Cir. 2004).

## CONCLUSION

For all the foregoing reasons, EMA respectfully requests that this Court grant EMA's motion to intervene as a respondent in this matter.

Dated: March 20, 2026

Respectfully submitted,

THE TRUCK AND
ENGINE MANUFACTURERS
ASSOCIATION

s/Timothy A. French
Timothy A. French
*Counsel of Record*
CHICAGO LAW PARTNERS LLP
333 W. Wacker Drive
Suite 810
Chicago, IL 60606
(312) 929-1954
tfrench@clpchicago.com

William L. Wehrum
Wehrum Envt'l Law LLC
1629 K Street, NW, Suite 300
Washington, D.C. 20006
(302) 300-0388
William_Wehrum@comcast.net
*Counsel for the Truck and*
*Engine Mfrs. Ass'n*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(f) and (g), I hereby certify that the foregoing motion complies with the type volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3375 words, excluding exempted portions, according to the count of Microsoft Word.

I further certify that the motion complies with Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in 14-point Times New Roman type.

Respectfully submitted,

*/s/ William L. Wehrum*
William L. Wehrum

Dated: March 20, 2026

**RULE 26.1 DISCLOSURE STATEMENT OF MOVANT-INTERVENOR THE TRUCK AND ENGINE MANUFACTURERS ASSOCIATION**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, movant-intervenor the Truck and Engine Manufacturers Association ("EMA") files the following statement:

EMA is the not-for-profit trade association that represents the interests of the world's leading manufacturers of new medium and heavy duty engines and vehicles, including in connection with rulemakings and emission-control regulations developed and finalized by EPA. EMA has no parent company, and no publicly held company has a 10 percent or greater ownership interest in EMA.

Respectfully submitted,

*/s/ William L. Wehrum*

Dated: March 20, 2026

**CERTIFICATE OF MOVANT-INTERVENOR**
**THE TRUCK AND ENGINE MANUFACTURERS ASSOCIATION**
**AS TO PARTIES, RULINGS AND RELATED CASES**

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1)(A), Movant Intervenor the Truck and Engine Manufacturers Association certifies that the parties, including intervenors, and *amici curiae* in this case are as set forth below. Because this case involves direct review in this Court of agency action, the requirement to furnish a list of parties, including intervenors, and *amici curiae* that appeared below is inapplicable.

## I. Parties and Amici

**Petitioners:** Petitioners in the consolidated cases are American Public Health Association, Alliance of Nurses for Healthy Environments, American Lung Association, Center for Biological Diversity, Center for Community Action and Environmental Justice, Clean Air Council, Clean Wisconsin, Conservation Law Foundation, Environmental Defense Fund, Environmental Law & Policy Center, Friends of the Earth, Natural Resources Defense Council, Inc., Physicians for Social Responsibility, Public Citizen, Rio Grande International Study Center, Sierra Club, and Union of Concerned Scientists, Elena Venner; Ariela Lara; Emma Weibel; Katherine McIntosh; Linnea Lentfer; Maya Williams; Taylin Nishida; C.E., a minor, by and through her guardian B.K.; E.S., a minor, by and through his

guardian K.S.; J.K., a minor, by and through his guardian L.K.; J.G., a minor, by and through her guardian T.L.; L.R.F., a minor, by and through her guardian A.F.; L.D. and R.D., minors, by and through their guardian S.D.; M.B., a minor, by and through her guardian G.M.; M.D, a minor, by and through her guardian S.A.; N.N., a minor, by and through his guardian K.S.N.; and N.G., a minor, by and through her guardian E.G., the Business Climate Initiative Action d/b/a the Zero Emission Transportation Association (ZETA), Metropolitan Congregations United for St. Louis and Missouri Coalition for the Environment, and the Service Employees International Union, the Commonwealths of Massachusetts and Virginia; Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania; and the States of Arizona, California, Colorado, Connecticut, Delaware, Hawai‘i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, Wisconsin; the District of Columbia; the United States Virgin Islands; the Cities of Albuquerque, New Mexico; Boston, Massachusetts; Chicago, Illinois; Cleveland, Ohio; Columbus, Ohio; Los Angeles, California; and New York, New York; the Counties of Harris, Texas; Martin Luther King, Jr., Washington; and Santa Clara, California; and the Cities and Counties of Denver, Colorado, and San Francisco, California.

**Respondents:** Respondents in the consolidated cases are U.S.

Environmental Protection Agency and Lee Zeldin, Administrator, U.S. Environmental Protection Agency.

**Intervenors:** Movant intervenors are John Worthington; the States of West Virginia, Kentucky, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Missouri, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, and Utah; the Domestic Energy Producers Alliance; and the Western States Trucking Association, Inc., Construction Industry Air Quality Coalition, Inc., Liberty Packing Company, LLC, and Nuckles Oil Company, Inc. dba Merit Oil Company.

***Amici Curiae*:** Movant intervenors are John Worthington; and Government Accountability & Oversight, Government Oversight & Education dba Protect the Public's Trust.

## II. Ruling Under Review

"Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards," published at 91 Fed. Reg. 7686 (Feb. 18, 2026).

## III. Related Cases

There are no other related cases at the time of this filing.

Respectfully submitted,

*<u>/s/ William L. Wehrum</u>*

Dated: March 20, 2026

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and Circuit Rule 25(c), I hereby certify that, on March 20, 2026, I caused the foregoing Motion of the Truck and Engine Manufacturers Association for Leave to Intervene as Respondent and accompanying documents to be electronically filed with the Clerk of the Court by using the court's CM/ECF system. All registered counsel will be served by the Court's CM/ECF system.

*/s/ William L. Wehrum*
William L. Wehrum