# ORAL ARGUMENT NOT YET SCHEDULED

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. Environmental Protection Agency,<br><br>Respondents. | Case No. 26-1037 |

## MOTION OF CO₂ COALITION TO INTERVENE AS RESPONDENT

ANDREW M. GROSSMAN
MARK W. DELAQUIL
BENJAMIN D. JANACEK
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Attorneys for Movant-Intervenor*

In this proceeding for review, Petitioners challenge the Environmental Protection Agency's (EPA) decision to rescind the 2009 Greenhouse Gas Endangerment Finding, which served as the EPA's basis for regulating new motor vehicle and new motor vehicle engine emissions. *See* 91 Fed. Reg. 7686 (Feb. 18, 2026) ("Final Rule"). Under Federal Rule of Appellate Procedure 15(d), the $CO_2$ Coalition moves to intervene as Respondent.[1]

## BACKGROUND

### A.    EPA Issues and Now Rescinds the Endangerment Finding

The Clean Air Act (CAA) "regulates pollution-generating emissions from both stationary sources, such as factories and powerplants, and moving sources, such as cars, trucks, and aircraft." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 308 (2014).

In 2008, EPA "embarked on a course of regulation resulting in 'the single largest expansion in the scope of the [Act] in its history.'" *Id.* at 310

---

[1] Counsel for Movant contacted all parties joined in this litigation. Petitioners in Case Nos. 26-1037, 1039, 1043, and 1051 take no position on this motion. Petitioner in Case No. 26-1038 did not respond to Movant's inquiry. State and Local Government Petitioners in Case No. 26-1061 could not provide a position before filing. Respondents informed counsel they reserve their position until they have reviewed the motion.

1

(quoting Clean Air Act Handbook, at xxi). That course culminated in EPA's 2009 Endangerment Finding, in which EPA "found that greenhouse-gas emissions from new motor vehicles contribute to elevated atmosphere concentrations of greenhouse gases, which endanger public health and welfare by fostering global 'climate change.'" *Id.* at 311 (citing 74 Fed. Reg. 66523, 66537). Providing an "extreme degree of deference to the agency," this Court upheld the Endangerment Finding. *Coalition for Responsible Reg., Inc. v. EPA,* 684 F.3d 102, 120 (D.C. Cir. 2012). However, the Supreme Court has sustained two challenges to EPA rules issued pursuant to the Endangerment Finding because the rules imposed major regulatory burdens without a sufficient basis in the CAA's text. *See West Virginia v. EPA,* 597 U.S. 679 (2022); *Util. Air Regul. Grp.,* 573 U.S. at 333.

Last month, EPA moved to rescind the Endangerment Finding. EPA has concluded that it does not possess the statutory authority under the CAA to maintain its Endangerment Finding. *See* 91 Fed. Reg. at 7688. Consistent with the Supreme Court's approach to "major questions," the agency concluded that "Congress did not decide the

2

Nation's policy response to global climate change" in the CAA and did not authorize EPA to "prescribe[e] emission standards." *Id.*

Petitioners filed the initial petition for review on February 18, 2026. Subsequent petitions were filed, and consolidated with Petitioners' case, on February 20, February 23, February 27, and March 13, 2026. On March 6, 25 States moved to intervene as Respondents. On March 19, 2026, Protect the Public's Trust and the Western States Trucking Association filed motions to intervene as Respondents.

## B.    Movant Has Long Advocated for the Benefits of $CO_2$

The $CO_2$ Coalition is a 501(c)(3) tax-exempt corporation with a mission to advance the public understanding of the essential role carbon dioxide plays in sustaining plant life, agriculture, and the global ecosystem. Declaration of Professor William Happer ¶ 8 (Happer Decl.). Professor William Happer, Roger Cohen, and Rodney W. Nichols founded the organization in 2015 because they believed there needed to be an organization that advocated for environmental and energy policies grounded in honest, complete cost-benefit analysis that accounts for the many benefits of $CO_2$. *Id.* ¶¶ 7, 8.

3

Since then, the Coalition has participated in the public conversation around carbon dioxide through public events, interviews, articles, expert opinions, amicus briefs, testimonies, white papers, and comments submitted to federal agencies, including EPA. *Id.* ¶ 11; *see infra*, p. 8 (discussing some of the Coalition's comments to federal agencies regarding environmental rulemaking). The Coalition has many members, some of whom have submitted declarations attached to this motion, who have been or will be harmed by the EPA's 2009 Endangerment Finding and would benefit from its recission in the Final Rule at issue in this case. *Id.* ¶ 12. Among them are members whose agricultural activities benefit from the global and localized effects of vehicle emissions subject to regulation resulting from the Endangerment Finding. *Id.*

## ARGUMENT

Under Federal Rule of Appellate Procedure 15(d), any person may move to intervene in a proceeding for review of an administrative order within 30 days after the petition for review is filed. The motion need only contain "a concise statement of the interest of the moving party and the

4

grounds for intervention." Fed. R. App. P. 15(d); *see also Ala. Mun. Distribs. Grp. v. FERC*, 300 F.3d 877, 879 (D.C. Cir. 2002).

Since Rule 15(d) does not provide standards for intervention, "appellate courts have turned to the rules governing intervention in the district courts under Fed. R. Civ. P. 24." *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517 (7th Cir. 2004); *see also Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1553 n.3 (D.C. Cir. 1985) (per curiam) (recognizing Rule 24 informs the "grounds for intervention" under Rule 15(d)). This Court has adopted a liberal approach to intervention, especially in administrative cases. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910 (D.C. Cir. 1977). Rule 24 provides for both intervention-as-of-right and permissive intervention. The $CO_2$ Coalition should be permitted to intervene under either standard.

## I.    Movant Satisfies the Standard for Intervention as of Right

Under Federal Rule of Civil Procedure 24(a)(2), a movant is entitled to intervene as-of-right whenever (1) its motion is "timely;" (2) the movant claims an "interest relating to the . . . subject of the action;" (3) disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest;" and (4) the existing parties

5

may not "adequately represent" the movant's interest. Fed. R. Civ. P. 24(a)(2); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). Movant satisfies all four criteria because its motion is timely, its interest in the litigation is clear and direct, an adverse ruling will harm its and its members' interests, and Respondent may not adequately represent its interests.[2]

---

[2] This Court has liberally allowed intervention from environmental advocacy groups and similarly situated parties in similar cases. *See* Order of Jan. 24, 2024, *United States Sugar Corp. v. EPA*, No. 22-1271 (D.C. Cir.) (granting Sierra Club intervention); Order of Apr. 20, 2022, *Texas v. EPA*, No. 22-1031 (D.C. Cir.) (granting Sierra Club, Environmental Defense Fund, Public Citizen, and other environmental advocacy groups intervention); Order of June 16, 2017, *Clean Air Council v. Pruitt*, No. 17-1145 (D.C. Cir.) (granting American Petroleum Institute, Interstate Natural Gas Association of America, Texas Oil & Gas Association, and GPA Midstream Association intervention); Order of Apr. 3, 2013, *Am. Petroleum Inst. v. EPA*, No. 12-1405 (D.C. Cir.) (granting Sierra Club, Group Against Smog and Pollution, Clean Air Council, and similar environmental advocacy groups intervention); Order of Apr. 8, 2011, *Am. Gas Ass'n v. EPA*, No. 11-1020 (D.C. Cir.) (granting Environmental Defense Fund, Natural Resources Defense Council, and Sierra Club intervention); *NRDC v. EPA*, 571 F.3d 1245 (D.C. Cir. 2009) (granting National Petrochemical and Refiners Association and other industry groups intervention); *Am. Farm Bureau Fed'n v. EPA*, 559 F.3d 512 (D.C. Cir. 2009) (granting industry groups intervention); *Sierra Club v. EPA*, 551 F.3d 1019 (D.C. Cir. 2008) (granting chemical industry groups intervention). The CO2 Coalition is similarly situated to these groups that this Court has permitted to intervene in similar cases.

6

### A.    Movant Timely Filed This Motion

Under Rule 15(d), motions to intervene are generally due within thirty days of the filing of a petition for review. The first petition for review in these consolidated cases was filed on February 18, 2026. Because Movant files this motion on March 20, 2026, its motion is timely both from the date of the first petition review and all subsequent petitions.

### B.    Movant Has Significant Interest in the Final Rule that Will be Impaired if the Rule is Vacated

The $CO_2$ Coalition has a clear and direct interest in this litigation that will be impaired should Petitioners prevail. The Coalition's mission is to advance public understanding of the essential role carbon dioxide plays in sustaining plant life, agriculture, and the global ecosystem. Happer Decl. ¶ 8. To that end, the Coalition participates in the public debate about carbon dioxide, advocating for environmental and energy policies rooted in science and truth. *Id.* This participation includes interacting with relevant stakeholders and policymakers, including through the submission of comments to federal agencies, white papers, expert opinions, amicus briefs, and testimony before legislatures. *Id.* ¶ 11.

7

The Coalition's mission and purpose has attracted hundreds of members whose livelihoods directly benefit from the global and localized effects of carbon dioxide, including from vehicle emissions. *Id.* ¶ 12. Those benefits are reflected in the attached member declarations. Some members, including Debbie Bacigalupi and David Galligan, own dairy and beef cows, and they have experienced the harms to farms, particularly small farms, caused by regulations issued pursuant to the Endangerment Finding. Declaration of Debbie Bacigalupi ¶¶ 6–10; Declaration of David Galligan ¶¶ 6–13. Additionally, these farms directly benefit from increased $CO_2$, including from localized concentrations of regulated emissions, because these emissions enhance the vegetation growth on which their animals graze. Bacigalupi Decl. ¶ 7; Galligan Decl. ¶ 7.

Similarly, Perry Long, another Coalition member, owns a farm. Declaration of Perry Long ¶ 4. The Endangerment Finding has negatively affected him because it has driven up his farming costs due to environmental and pollution controls. *Id.* ¶ 6. Further, his livestock consume vegetation enhanced by localized concentrations of regulated emissions. *Id.* ¶ 7.

8

Professor Rolf Reitz, also a Coalition member, is a mechanical engineer and academic whose research and work focuses on using advanced computer models to design fuel-injected engines, including both diesel and spark-ignition engines. Declaration of Rolf Reitz ¶ 6. The Endangerment Finding has harmed him in numerous ways, including by degrading his ability to research and develop gas-powered internal combustion engines. *Id.* ¶ 7–8. The Endangerment Finding led to a substantial decrease in funding for his research into the internal combustion engine and other $CO_2$ producing technology. *Id.* ¶¶ 9–10; *see also* Declaration of Jim Petersen ¶¶ 7–10.

Movant also has a strong organizational interest in upholding the Final Rule. For over a decade, the $CO_2$ Coalition has educated the public about the benefits of carbon dioxide and advocated for environmental and energy policies grounded in science and fact. Happer Decl. ¶ 8. To that end, Professor Happer and the $CO_2$ Coalition have submitted comments to agencies concerning environmental and energy policy, including a comment supporting the Final Rule at issue in this case. *See* Comment of Richard Lidzen and William Happer, Docket ID No. EPA-HQ-OAR-2025-

9

0194 (Sept. 22, 2025); *see also* Comment of Dr. D. Weston Allen, Dr. Jan Breslow, and Dr. Daniel Nebert, Docket ID No. EPA-HQ-OAR-2025-1094 (Sept. 30, 2025).[3]

These interests are sufficient to support intervention. This Court's precedents have found a protectable interest supporting intervention "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefits." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015). For example, in *Military Toxics Project v. EPA*, this Court permitted the Chemical Manufacturers Association to intervene on the side of the EPA. 146 F.3d 948 (D.C. Cir. 1998). The Court reasoned that CMA's members directly benefited from the rule at issue, and an adverse ruling would therefore harm them. *Id.* at 954. This constituted an

---

[3] The Coalition has filed comments in similar cases, including: Reconsideration of the Greenhouse Gas Reporting Program, Docket ID No. EPA-HQ-OAR-2025-0186 (Nov. 3, 2025); A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate, Docket ID No. DOE-HQ-2025-0207-0001 (Feb. 12, 2026); Proposed Fossil Fuel Power Plant Rule, Docket ID No. EPA-HQ-OAR-2023-0072 (July 19, 2023); Energy Conservation Standards For Consumer Conventional Cooking Products, Docket ID No. EERE-2014-BT-STD-0005 (Apr. 17, 2023); National Performance Management Measures, Docket ID No. FHWA-2021-0004 (Oct. 13, 2022).

interest in the litigation sufficient to intervene. So too here, where the $CO_2$ Coalition's members directly benefit from the Final Rule, and a ruling adverse to EPA will directly harm the Coalition's members.

### C. Existing Parties May Not Adequately Represent Movant's Interests

Movant's interests may not be adequately represented by the existing parties. This is a "minimal" requirement to the intervention showing, *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972), where the "applicant need only show that the representation of his interest 'may be' inadequate, not that representation will in fact be inadequate," *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).

Although Movant supports EPA's (and, if permitted to intervene, the Intervenor-States') position here, mere agreement between a private party and a government agency does not preclude the possibility of inadequate representation, particularly when the Respondent is the government. *See Fund for Animals*, 322 F.3d at 736. Further, Movant need not "predict now the specific instances," *Costle*, 561 F.2d at 912, in which conflicts may arise, as a "potential conflict," *Dimond*, 792 F.2d at 193, or a "possibility of disparate interests," *Costle*, 561 F.2d at 912, is

11

sufficient. This Court "look[s] skeptically on government entities serving as adequate advocates for private parties." *Id.* And it has "often concluded that government entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736.

Movant easily clears this low standard. As a government agency, EPA must inherently balance and weigh various interests and perspectives, including primarily the interest of the general public. Movant's interests are narrower and clearer: to defend the lawfulness and reasonableness of the action under review in a manner consistent with the essential role carbon dioxide plays in sustaining plant life, agriculture, and the global ecosystem. Since EPA is focused on a broad "representation of the public interest," and not the "narrower interest" of the Coalition as a regulated entity, *Dimond*, 792 F.2d at 192–93, this Court has liberally granted intervention for private parties seeking to defend EPA rules, *see supra*, n.1. Indeed, this Court has found that because a movant's interests are "more narrowed and focused than EPA's," its participation is "likely to serve as a vigorous and helpful supplement to EPA's defense" of the Rule. *Costle*, 561 F.2d at 912–13.

12

Accordingly, the $CO_2$ Coalition should be permitted to intervene to fully represent its interests in this litigation.[4]

## II.    If Necessary, Movant Has Standing to Intervene

The Supreme Court has held that an intervenor need not demonstrate standing if it is not seeking relief broader than the party invoking the Court's jurisdiction, *see Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020), or it is not invoking the Court's jurisdiction, *see Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019). This Court has recently recognized those holdings, stating that "intervenors that seek the same relief sought by at least one existing party need not" establish standing. *Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (citing *Little Sisters*,

---

[4] The $CO_2$ Coalition also qualifies for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) allows permissive intervention where an intervenor timely demonstrates that its claim or defense has a question of law or a question of fact in common with the main action. *See EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). It does not require a showing of inadequate representation nor a direct interest in the subject matter. To establish a common defense, it is sufficient that "movant[] seek[s] to defend" the agency's decision. *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 14 (D.D.C. 2019). If permitted to intervene, the Coalition will address the issues of law and fact that Petitioners press to invalidate the Final Rule and defend the agency's decision. It therefore satisfies the standard for permissive intervention.

13

591 U.S. at 674 n.6). Because the $CO_2$ Coalition seeks the same relief as Respondent here, it need not establish standing.

If necessary, the $CO_2$ Coalition has Article III standing to intervene in support of EPA because, as discussed above, its members include those who are harmed by the Endangerment Finding and benefit from the Final Rule. Under this Circuit's precedent, an intervenor has standing to defend agency action when it "benefits from [the] agency action, the action is then challenged in court, and an unfavorable decision would remove the [movant's] benefit." *Crossroads*, 788 F.3d at 317; *see also Military Toxics Project*, 146 F.3d at 954. Further, an organization may defend agency action on behalf of its members when "(1) at least one of its members would have standing to [defend] in his or her own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the [defense] asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hearth, Patio & Barbecue Ass'n v. EPA*, 11 F.4th 791, 802 (D.C. Cir. 2021) (cleaned up).

First, Movant's members have standing to defend the Final Rule. As explained above, and as demonstrated in the attached declarations,

14

these members directly benefit from the Final Rule and have been directly harmed by the Endangerment Finding. Therefore, they will continue to be harmed if the Court vacates the Final Rule.

Second, Movant satisfies the remaining associational standing requirements. The interests Movant seeks to protect by defending the Final Rule is plainly germane to the Coalition's purpose of advocating for a science-backed approach to regulation of carbon dioxide emissions. *See, e.g.*, *Chesapeake Climate Action Network v. EPA*, 952 F.3d 310, 318 (D.C. Cir. 2020). Further, Movant's participation does not require individual member participation because Petitioners raise questions of law or fact that will be resolved on the administrative record without consideration of Movant's members' particular circumstances. *See Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015).

## CONCLUSION

The CO2 Coalition respectfully requests that the Court grant its motion to intervene as Respondent.

Respectfully submitted,

*/s/Andrew M. Grossman*
ANDREW M. GROSSMAN
MARK W. DELAQUIL
BENJAMIN D. JANACEK
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Attorneys for Movant-Intervenor*

16

## CERTIFICATE OF COMPLIANCE

I hereby certify on this 20th day of March 2026, that the foregoing Motion complies with the word limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,016 words, excluding parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this document complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) & (6) because this document has been prepared in 14-point Century Schoolbook font, a proportionally spaced typeface, using Microsoft Word.

*/s/ Andrew M. Grossman*
Andrew M. Grossman

## CERTIFICATE OF SERVICE

I hereby certify on this 20th day of March 2026, that the foregoing Motion has been filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit, using the CM/ECF System. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system, save for Mr. Worthington, who will be served by email per his request in ECF No. 2162370.

*/s/ Andrew M. Grossman*
Andrew M. Grossman

**ADDENDUM**

**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. Environmental Protection Agency, <br><br> Respondents. | Case No. 26-1037 |

**CORPORATE DISCLOSURE STATEMENT OF $CO_2$ COALITION**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, the $CO_2$ Coalition respectfully submits this Corporate Disclosure Statement and states as follows:

The $CO_2$ Coalition is a tax exempt 501(c)(3) nonprofit established in 2015 for the purpose of educating thought leaders, policy makers, and the public about the important contributions made by carbon dioxide to our lives and the economy. The $CO_2$ Coalition has no parent corporation, and no publicly held company has 10% or greater ownership in the $CO_2$ Coalition.

Dated: March 20, 2026

Respectfully submitted,

*/s/ Andrew M. Grossman*
Andrew M. Grossman

*Counsel for CO$_2$ Coalition*