<u>ORAL ARGUMENT NOT YET SCHEDULED</u>

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, et al., <br><br>          *Petitioners,* <br><br> v. <br><br> LEE M. ZELDIN, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br>          *Respondents.* | No. 26-1061 (consolidated with Nos. 26-1038, 26-1039, 26-1043, 26-1051, 26-1061) |
| SERVICE EMPLOYEES INTERNATIONAL UNION, <br><br>          *Petitioner,* <br><br> v. <br><br> LEE M. ZELDIN, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br>          *Respondents.* | No. 26-1051 (consolidated with Nos. 26-1038, 26-1039, 26-1043, 26-1061, 26-1061) |

## MOTION OF AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS AND ENERGY MARKETERS OF AMERICA FOR LEAVE TO INTERVENE ON BEHALF OF RESPONDENTS

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and

D.C. Circuit Rules 15(b) and 27, American Fuel & Petrochemical

Manufacturers ("AFPM") and Energy Marketers of America ("EMA")

respectfully move for leave to intervene in support of Respondents, the U.S. Environmental Protection Agency ("EPA" or the "Agency") and Lee M. Zeldin, EPA Administrator, in these Petitions.[1] AFPM and EMA are associations whose members include companies that would be directly harmed if Petitioners prevail in their challenge to the final rule entitled *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7,686 (Feb. 18, 2026) ("Rescission Rule").

Petitioners take no position on this motion. Respondents reserve their position until they have reviewed the motion.

## INTRODUCTION

In the Rescission Rule challenged in these consolidated cases, EPA rescinded its 2009 determination that it has authority under Section 202(a) of the Clean Air Act to regulate greenhouse gas emissions from new motor vehicles and engines based on its finding that the emissions contribute to air pollution that endangers public health and welfare. *Id.* at 7,688. The Rescission Rule also repeals the greenhouse gas emission

---

[1] Pursuant to D.C. Circuit Rule 15(b), this motion will be deemed an intervention motion in all cases that have been filed and that will be filed in this Circuit involving the same rule.

standards for light-duty, medium-duty, and heavy-duty vehicles and engines that EPA issued under Section 202(a). *Id.* As EPA readily admits, those emissions standards were "forcing a transition to the use of electric vehicles (EVs) rather than gasoline-or-diesel-fueled motor vehicles and engines," *id.* at 7,689—decreasing the consumption of gasoline and diesel in the United States by hundreds of billions of gallons.[2] *See Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2135 (2025) (recognizing that regulation of vehicle greenhouse-gas emissions "likely cause[s] fuel producers' monetary injuries because the regulations likely cause a decrease in purchases of gasoline and other liquid fuels for automobiles").

---

[2] *See Revised 2023 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions Standards*, 86 Fed. Reg. 74,434, 74,503 (Dec. 30, 2021) ("Through 2050, our rule will reduce gasoline consumption by more than 360,000 million gallons—reaching a 15 percent reduction in annual U.S. gasoline consumption in 2050"); *Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles*, 89 Fed. Reg. 27,842, 28,092 (Apr. 18, 2024) ("This rule is projected to result in a reduction of U.S. gasoline consumption by 780 billion gallons through 2055"); *Greenhouse Gas Emissions Standards for Heavy-Duty Vehicles—Phase 3*, 89 Fed. Reg. 29,440, 29,735 (Apr. 22, 2024) ("through 2055 these standards will result in a reduction of 135 billion gallons of diesel and gasoline consumption").

3

AFPM and EMA filed petitions for review in this Court challenging the emissions standards that were repealed by the Rescission Rule.[3] AFPM and EMA challenged those emissions standards because they violated Section 202 of the Clean Air Act, were arbitrary and capricious, and harmed AFPM and EMA members that manufacture and sell gasoline, diesel, and other liquid and gaseous fuels consumed by vehicles subject to those standards. Decl. of Susan W. Grissom ¶ 6; Decl. of James H. Lipscomb, III ¶ 5. Those cases have been held in abeyance pending EPA's rulemaking to rescind the emissions standards, and EPA has filed unopposed motions to govern asking the Court to keep the cases in abeyance pending resolution of Petitioners' challenges to the Rescission Rule.[4]

---

[3] *See Nebraska v. EPA*, No. 24-1129 (D.C. Cir.) (challenging standards for heavy-duty vehicles); *Kentucky v. EPA*, No. 24-1087 (D.C. Cir.) (challenging standards for light-duty and medium-duty vehicles for model years 2027 and later); *Texas v. EPA*, No. 22-1031 (D.C. Cir) (challenging revised standards for light-duty vehicle for model year 2023 and later).

[4] *See* Mot. to Govern (Doc. 2164676), *Nebraska v. EPA,* No. 24-1129 (Mar. 20, 2026); Mot. to Govern (Doc. 2164671) *Kentucky v. EPA*, No. 24-1087 (Mar. 20, 2026); Mot. To Govern (Doc. 2164587) *Texas v. EPA*, No. 22-1031 (Mar. 20, 2026).

AFPM is a national trade association representing nearly all American refining and petrochemical companies. Grissom Decl. ¶ 2. Its 24 refining company members own and operate 88% of U.S. domestic petroleum refining capacity. *Id* ¶ 1. These companies manufacture and sell gasoline and diesel fuels, and many produce biofuels as well. *Id*. AFPM's mission includes advocating for laws and regulations, that benefit members, consumers, and the nation. *Id*. AFPM also advances its members' interest in litigation, where necessary. *Id*. AFPM filed comments in the EPA rulemaking supporting EPA's repeal of the greenhouse gas emissions standards emissions for light-duty, medium-duty, and heavy-duty vehicles.[5]

EMA is a federation of 48 State and regional trade associations formed to represent petroleum marketers (including thousands of motor fuels wholesalers and retailers) at the federal level. Lipscomb Decl. ¶ 2. EMA's core mission is to provide motor fuels and other petroleum marketers with a voice in Washington, D.C.  EMA regularly engages in lobbying activities before Congress and the federal agencies, addresses

---

[5] *See* Regulations.gov, EPA-HQ-OAR-2025-0194-3083,_attachments_1 and 2 (Sep. 22, 2025), available on the rulemaking docket at https://www.regulations.gov/comment/EPA-HQ-OAR-2025-0194-3083.

5

proposed legislation and rules affecting petroleum marketers, and engages in litigation on their behalf in the federal courts. *Id.* ¶ 3.

The Rescission Rule benefits AFPM's and EMA's members by repealing the emissions standards that forced automakers to produce more electric vehicles and fewer internal combustion engine vehicles, thereby decreasing demand for, and sales of, gasoline, diesel, and other liquid and gaseous fuels produced by AFPM's members and marketed by EMA's members. Grissom Decl. ¶ 9; Lipscomb Decl. ¶ 7. AFPM's and EMA's members would be harmed if the Rescission Rule were vacated and the emissions standards were reinstated. Grissom Decl. ¶ 13; Lipscomb Decl. ¶ 8.

AFPM and EMA's members have a direct, protectable interest in the outcome of this litigation. For the reasons discussed below, AFPM and EMA meet the requirements for intervention.

## ARGUMENT

Because Petitioners seek to reinstate regulations that harm AFPM's and EMA's members, AFPM and EMA easily satisfy the standard for intervention in this case. Under Federal Rule of Appellate Procedure 15(d), a motion for leave to intervene "must be filed within 30

days after the petition for review is filed and must contain a concise statement of the interest of the moving party and the grounds for intervention." Fed. R. App. P. 15(d). This Court evaluates motions to intervene under Rule 15(d) based on the standard for intervention under Federal Rule of Civil Procedure 24. *Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1553 n.3 (D.C. Cir. 1985) (per curiam); *see Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965). Accordingly, to intervene as of right, an applicant must: (1) file a timely application; (2) claim an interest relating to the subject of the action; (3) show that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect the interest; and (4) demonstrate that existing parties may not adequately represent the applicant's interest. *See, e.g., Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). In addition, under Rule 24(b), the Court "may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). AFPM and EMA satisfy both standards for intervention.

7

I.    **AFPM and EMA Meet the Standard for Intervention as of Right.**

a. **The Motion to Intervene Is Timely.**

The motion is timely because it was filed within 30 days after the petitions for review were filed on March 19, 2026 (in No. 26-1061) and March 12, 2026 (in No. 26-1051). *See* Fed. R. App. P. 15(d); D.C. Circuit Rule 15(b). Allowing the motion to intervene will not disrupt the proceedings because AFPM and EMA are seeking to join the case before the Court has set a merits briefing schedule.

b. **AFPM and EMA Have Interests Relating to the Subject Matter of This Proceeding That May as a Practical Matter Be Impaired by the Outcome of These Petitions.**

AFPM and EMA have direct and substantial interests in the outcome of this case that may be impaired or impeded if Petitioners prevail in their challenge to the Rescission Rule. *See Karsner v. Lothian*, 532 F.3d 876, 885–88 (D.C. Cir. 2008). As explained in the accompanying declarations, AFPM's and EMA's members benefit from the Rescission Rule's repeal of the greenhouse gas emissions standards that were forcing the electrification of the vehicle fleet and artificially depressing demand for gasoline, diesel, and other liquid and gaseous fuels. *See* Grissom Decl. ¶ 12; Lipscomb Decl. ¶ 7. As EPA explains, the Rescission

8

Rule will result in the production of "fewer electric vehicles and more [internal combustion engine] vehicles" and therefore in an "increase in the consumption of petroleum." 91 Fed. Reg. at 7,759. If the Rescission Rule were vacated, that increase in the consumption of petroleum would disappear and AFPM's and EMA's members would suffer a loss of sales and related economic harm. *See* Grissom Decl. ¶ 13; Lipscomb Decl. ¶ 8. Thus, the ruling Petitioners seek would impose an injury-in-fact traceable to their challenge and redressable by a ruling rejecting it. *See Diamond Alt. Energy*, 145 S. Ct. at 2136–38 (holding petitioner motor fuel producers, wholesalers and retailers—including AFPM and EMA— "readily demonstrated" standing in challenge to California rules forcing automakers to produce more vehicles that use "significantly less gasoline and other liquid fuels," as such rules would cause "predictable" injuries fairly redressed by rescinding such rules); *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1018–19 (D.C. Cir. 2003) (explaining that a person who "has suffered a cognizable injury sufficient to establish Article III standing … also has the requisite interest under Rule 24(a)(2)").

In addition, as associations representing companies that are directly and indirectly affected by the Rescission Rule, AFPM and EMA

9

fall within the class of parties that this Court routinely allows to intervene in cases reviewing final agency action. *See, e.g., Fund for Animals*, 322 F.3d at 735; *Mil. Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (permitting association whose members produced military munitions and operated military firing ranges to intervene in a challenge to an EPA munitions rule that was beneficial to its members); *see also Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 41–44 (1st Cir. 1992) (finding commercial fishing groups subject to a regulatory plan to address overfishing had a cognizable interest in litigation over the plan's implementation).

Further, the outcome of this case could impair AFPM and EMA's ability to protect their interests and those of their members. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (holding impairment occurs where the litigation "could establish unfavorable precedent that would make it more difficult for [the intervenor] to succeed" in any future suit to enforce its rights); *NRDC v. Costle*, 561 F.2d 904, 909–11 (D.C. Cir. 1977) (finding industry members' interests practically impaired if not permitted to intervene in proceedings which would determine which rulemakings EPA would initiate over which pollutants). As explained

10

above, AFPM and EMA challenged the emissions standards repealed by the Rescission Rule on the ground that the standards violated Section 202 of the Clean Air Act. *See supra* at 4 & n.3. Should this Court invalidate the Rescission Rule, that ruling could adversely affect AFPM and EMA's challenges to those emissions standards or constrain EPA's ability to issue new or revised standards.

### c. Existing Parties Cannot Adequately Represent AFPM and EMA's Interests.

AFPM and EMA's interests will not be adequately represented by the existing parties. The burden of showing that the existing parties will not adequately support a movant's interest is "minimal," and a movant need only show that representation of its interests "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). This factor is easily satisfied here.

Petitioners cannot adequately represent AFPM and EMA's interests because Petitioners' interests are directly opposed to AFPM and EMA's. EPA likewise cannot adequately represent AFPM and EMA's interests because EPA is a government agency necessarily focused on a broad "representation of the general public interest," not the particular

11

interests that motivate AFPM and EMA. *Diamond*, 792 F.2d at 192–93. AFPM represents refining and petrochemical companies, and EMA represents motor fuels wholesalers and retailers, that have direct and substantial financial interests in this proceeding.

This Court has long recognized the "inadequacy of governmental representation" when the government has no financial stake in the suit, but the private intervenor does. *See, e.g.*, *id.* at 192; *Fund for Animals*, 322 F.3d at 735–37; *Costle*, 561 F.2d at 912 & n.41. Mere agreement between a private party and a government agency is not sufficient to establish adequate representation. *See Fund for Animals*, 322 F.3d at 736–37.

Moreover, there is not complete agreement between movants and EPA in this suit. While EPA presumably intends to fully defend the Rescission Rule, AFPM and EMA seek to engage only on EPA's determination that it lacks authority under Section 202(a) of the Clean Air Act to issue motor vehicle greenhouse gas emission standards to force a transition to electric vehicles. Indeed, AFPM and EMA are currently adverse to EPA in multiple pending suits on the same subject matter. *See supra* at 4 & n.4. Although those cases are currently in abeyance, there

12

is no assurance that they will be dismissed rather than reactivated. Given the distinct possibility that AFPM and EMA will have to continue their challenges to the vehicle emissions standards at issue in those cases in the future, it is critical that AFPM and EMA have a full and fair opportunity to participate in this proceeding, which concerns the same core statutory interpretive issues.

## II.    Alternatively, AFPM and EMA Meet the Standard for Permissive Intervention.

AFPM and EMA also meet the criteria for permissive intervention under Rule 24(b). Under that rule, a court may permit intervention to a party that timely seeks intervention and possesses "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). This Court may permit "anyone" to intervene "if the requirements of the rule are satisfied." *EEOC v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

Here, AFPM and EMA intend to defend EPA's determination in the Rescission Rule that it lacks authority under Section 202(a) of the Clean Air Act to promulgate greenhouse gas emission standards to force a transition to electric vehicles  and its decision to repeal such existing standards. Each defense will rely on the same set of facts and body of

13

laws that are otherwise at issue, and while AFPM and EMA may advance arguments EPA does not, their defenses will share common questions of law with EPA's defenses. Further, the motion for leave to intervene is timely, and because no briefing schedule has been set, allowing intervention will not unduly delay or prejudice any other party. For these reasons, if the Court is not inclined to allow AFPM and EMA to intervene as of right, it should allow them to intervene under Rule 24(b).

## III.    AFPM and EMA Have Standing to Intervene.

AFPM and EMA have standing to intervene in support of EPA in this proceeding for the same reasons they satisfy the grounds for intervention.[6] *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement.").

An association has standing to intervene on behalf of its members when: "(a) its members would otherwise have standing to sue in their

---

[6] Although this Court has previously required intervenor-respondents to demonstrate standing, *see NRDC v. EPA*, 896 F.3d 459, 462–63 (D.C. Cir. 2018), the U.S. Supreme Court has clarified that an intervenor who is not invoking the Court's jurisdiction need not demonstrate standing, *see Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 661–63 (2019). Regardless, AFPM has standing.

14

own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). In this Circuit, "[t]he standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015).

AFPM and EMA  satisfy each of these elements. First, "at least some of the [their] members would have standing to [intervene] in their own right." *Fed'n for Am. Immigr. Reform, Inc. v. Reno*, 93 F.3d 897, 899–900 (D.C. Cir. 1996). As the accompanying declarations demonstrate (and common sense and precedent confirm), the Rescission Rule repeals emissions standards that force the electrification of the vehicle fleet, depressing demand for gasoline and diesel and thereby injuring AFPM and EMA members that would otherwise sell that fuel. *See* Grissom Decl. ¶¶ 9–13; Lipscomb Decl. ¶¶ 6–8; *Diamond Alt. Energy*, 145 S. Ct. at 2135 (regulations that require "the electrification of automakers' fleets" will "likely cause fuel producers' monetary injuries because the regulations

15

likely cause a decrease in purchase of gasoline and other liquid fuels for automobiles. Indeed, that is the whole point of the regulations."). Petitioners' request to vacate the Rescission Rule and reinstate the emissions standards thus threatens an Article III injury-in-fact traceable to their challenge and redressable by a ruling rejecting it. *See Diamond Alt. Energy*, 145 S. Ct. at 2135–39 (fuel producers, wholesalers and retailers—including AFPM and EMA—have standing to challenge California rules forcing automakers to produce more electric vehicles because it is "predictable" that a ruling rescinding the rules "would likely redress the fuel producers' injury").

Second, the interests that AFPM and EMA seek to protect are germane to their organizational purposes of advocating for public policies that benefit their member companies and representing those interests in federal agency rulemaking and litigation. Grissom Decl. ¶ 1; Lipscomb Decl. ¶¶ 2–3.

Finally, the participation of individual member companies is unnecessary. *See Hunt*, 432 U.S. at 342–43. The Rescission Rule is a generally applicable rule, and the determination of its legality depends

16

on the rulemaking record, not the facts and circumstances of any specific entity.

For these reasons, AFPM and EMA have a sufficient stake in this case to support Article III standing.

## CONCLUSION

For the foregoing reasons, AFPM and EMA respectfully request that this Court grant their motion to intervene in support of Respondents in the above-captioned petitions.

Dated:  April 13, 2026

Respectfully submitted,

*/s/ Daniel J. Feith*
Daniel J. Feith
  *Counsel of Record*
Justin A. Savage
Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
dfeith@sidley.com
jsavage@sidley.com
kmueller@sidley.com

17

ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, et al., *Petitioners,* v. LEE M. ZELDIN, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., *Respondents.* | No. 26-1061 (consolidated with Nos. 26-1038, 26-1039, 26-1043, 26-1051, 26-1061) |
| SERVICE EMPLOYEES INTERNATIONAL UNION, *Petitioner,* v. LEE M. ZELDIN, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., *Respondents.* | No. 26-1051 (consolidated with Nos. 26-1038, 26-1039, 26-1043, 26-1061, 26-1061) |

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and D.C. Circuit Rule 26.1, American Fuel & Petrochemical Manufacturers and Energy Marketers of America make the following disclosures.

American Fuel & Petrochemical Manufacturers is a national trade association that represents American refining and petrochemical

companies. It has no parent company, and no publicly held company owns 10 percent or greater ownership interest in AFPM.

Energy Marketers of America is a federation of 47 state and regional trade associations representing energy marketers throughout the United States. It is incorporated under the laws of the Commonwealth of Virginia, has no parent corporation, and no publicly held corporation has a 10 percent or greater ownership in it.

Dated:  April 13, 2026

Respectfully submitted,

*/s/ Daniel J. Feith*
Daniel J. Feith
  *Counsel of Record*
Justin A. Savage
Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
dfeith@sidley.com
jsavage@sidley.com
kmueller@sidley.com

<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, et al., <br><br> *Petitioners,* <br><br> v. <br><br> LEE M. ZELDIN, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br> *Respondents.* | No. 26-1061 (consolidated with Nos. 26-1038, 26-1039, 26-1043, 26-1051, 26-1061) |
| SERVICE EMPLOYEES INTERNATIONAL UNION, <br><br> *Petitioner,* <br><br> v. <br><br> LEE M. ZELDIN, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., <br> *Respondents.* | No. 26-1051 (consolidated with Nos. 26-1038, 26-1039, 26-1043, 26-1061, 26-1061) |

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), American

Fuel & Petrochemical Manufacturers and Energy Marketers of America

hereby state as follows:

## A.    Parties and Amici

Because these consolidated cases involve review of a final agency action, the requirement to furnish a list of parties, intervenors, and amici that appeared below is inapplicable. These consolidated cases involve the following parties:

The petitioners in No. 26-1037 are the American Public Health Association; Alliance of Nurses for Healthy Environments; American Lung Association; Center for Biological Diversity; Center for Community Action and Environmental Justice; Clean Air Counsil; Clean Wisconsin; Conservation Law Foundation; Environmental Defense Fund; Environmental Law & Policy Center; Friends of the Earth; Natural Resources Defense Council, Inc.; Physicians for Social Responsibility; Public Citizen; Rio Grande International Study Center; Sierra Club; Union of Concerned Scientists.

The petitioners in No. 26-1038 are Elena Venner; Ariela Lara; Emma Weibel; Katherine McIntosh; Lienna Lentfer; Maya Williams; Taylin Nishida; C.E., a minor, by and through her guardian B.K.; E.S., a minor, by and through his guardian K.S.; J.K., a minor, by and through his guardian L.K.; J.G., a minor, by and through her guardian T.L.;

2

L.R.F., a minor, by and through her guardian A.F.; L.D. and R.D., minors, by and through their guardian S.D.; M.B., a minor, by and through her guardian G.M.; M.D., a minor, by and through her guardian S.A.; N.N., a minor, by and through his guardian K.S.N.; N.G., a minor, by and through her guardian E.G.

The petitioner in No. 26-1039 is the Business Climate Initiative Action d/b/a Zero Emission Transportation Association.

The petitioners in No. 26-1043 are the Metropolitan Congregations United for St. Louis and Missouri Coalition for the Environment.

The petitioner in No. 26-1051 is the Service Employees International Union.

The petitioners in No. 26-1061 are the Commonwealths of Massachusetts and Virginia; Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania; the States of Arizona, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, Wisconsin; the District of Columbia; the United States Virgin Islands; the Cities of Albuquerque, New Mexico; Boston, Massachusetts; Chicago,

3

Illinois; Cleveland, Ohio; Columbus, Ohio; Los Angeles, California; and New York, New York; the Counties of Harris, Texas; Martin Luther King, Jr., Washington; and Santa Clara, California; and the Cities and Counties of Denver, Colorado, and San Francisco, California (State and Local Government Petitioners).

Respondents in these consolidated cases are the U.S. Environmental Protection Agency ("EPA") and EPA Administrator Lee M. Zeldin.

At the time of this filing, intervenors in these consolidated cases are:

The Movant-Intervenors for the Respondent in No. 26-1037 are John Worthington; State of West Virginia; Commonwealth of Kentucky; State of Alabama; State of Alaska; State of Arkansas; State of Florida; State of Georgia; State of Idaho; State of Indiana; State of Iowa; State of Kansas; State of Louisiana; State of Missouri; State of Mississippi; State of Montana; State of Nebraska; State of North Dakota; State of Ohio; State of Oklahoma; State of South Carolina; State of South Dakota; State of Tennessee; State of Texas; State of Utah; State of Wyoming; Domestic Energy Producers Alliance; Western States Trucking Association, Inc.;

4

Construction Industry Air Quality Coalition, Inc.; Liberty Packing Company, LLC.; Nuckles Oil Company, Inc.; Truck and Engine Manufacturers Association; National Federation of Independent Business; American Free Enterprise Chamber of Commerce; Illinois Corn Growers Association; Iowa Corn Growers Association; Kentucky Corn Growers Association; Missouri Corn Growers Association; North Dakota Corn Growers Associations; Tennessee Corn Growers Association; NACCO Natural Resources Corporation; CO2 Coalition; American Petroleum Institute.

The Amici Curiae for the Respondent in No. 26-1037 are the Government Accountability & Oversight and Government Oversight & Education, d/b/a Protect the Public's Trust.

The Movant-Intervenors for the Respondent in No. 26-1038, No. 26-1039, and No. 26-1043 are John Worthington; Domestic Energy Producers Alliance; Western States Trucking Association, Inc.; Construction Industry Air Quality Coalition, Inc.; Liberty Packing Company, LLC.; Nuckles Oil Company, Inc.

The Movant-Intervenors for the Respondent in No. 26-1051 are Domestic Energy Producers Alliance; Western States Trucking

5

Association, Inc.; Construction Industry Air Quality Coalition, Inc.; Liberty Packing Company, LLC.; Nuckles Oil Company, Inc.

### B.    Rulings Under Review

The final agency action under review is the EPA final rule entitled *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7,686 (Feb. 18, 2026) ("Rescission Rule").

### C.    Related Cases

This case has not previously been before this Court or any other court.

The EPA rule challenged by Petitioners in this case repeals EPA rules setting greenhouse gas emissions standards for vehicles and engines that were challenged by AFPM, EMA, and other petitioners in three cases currently pending in this Court:

- *Nebraska v. EPA*, No. 24-1129 (D.C. Cir.) (challenging *Greenhouse Gas Emissions Standards for Heavy-Duty Vehicles—Phase 3*, 89 Fed. Reg. 29,440 (Apr. 22, 2024));

- *Kentucky v. EPA*, No. 24-1087 (D.C. Cir.) (challenging *Multi-Pollutant Emissions Standards for Model Years 2027 and Later*

6

*Light-Duty and Medium-Duty Vehicles*, 89 Fed. Reg. 27,842 (Apr. 18, 2024));

- *Texas v. EPA*, No. 22-1031 (D.C. Cir) (challenging *Revised 2023 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions Standards*, 86 Fed. Reg. 74,434, 74,503 (Dec. 30, 2021)).

Dated:  April 13, 2026                    Respectfully submitted,

*/s/ Daniel J. Feith*
Daniel J. Feith
   *Counsel of Record*
Justin A. Savage
Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
dfeith@sidley.com
jsavage@sidley.com
kmueller@sidley.com

7

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d)(2) and 32(g), and D.C. Circuit Rules 27(a)(2) and 32(a), the undersigned certifies that the accompanying Motion for Leave to Intervene has been prepared using 14-point, Century Schoolbook typeface and is double-spaced (except for headings and footnotes).

The undersigned further certifies that the document is proportionally spaced and contains 3,157 words exclusive of the accompanying documents excepted from the word count by Rule 27(a)(2)(B), (d)(2).

Respectfully submitted,

*/s/ Daniel J. Feith*
Daniel J. Feith
  *Counsel of Record*
Justin A. Savage
Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
dfeith@sidley.com
jsavage@sidley.com
kmueller@sidley.com

# CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Motion for Leave to Intervene will be served, this 13th day of April, 2026, through the Court's CM/ECF system on all registered counsel.

Respectfully submitted,

*/s/ Daniel J. Feith*
Daniel J. Feith
   *Counsel of Record*
Justin A. Savage
Kathleen Mueller
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
dfeith@sidley.com
jsavage@sidley.com
kmueller@sidley.com