**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT**

_____

|  |  |  |
|---|---|---|
| AMERICAN PUBLIC HEALTH ASSOCIATION, et al., | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Case Nos. 26-1037 and consolidated cases |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) | |
| Respondents. | ) ) ) | |

_____

**MOTION TO DEFER CALL FOR BRIEFING PROPOSALS PENDING
EPA ACTION ON ADMINISTRATIVE PETITIONS, OR, IN THE
ALTERNATIVE, TO SEVER ISSUE**

On February 18, 2026, the Environmental Protection Agency ("EPA")
published a final rule repealing its 2009 finding that greenhouse gas emissions
from vehicles contribute to pollution that endangers public health and welfare.
91 Fed. Reg. 7686 (Feb. 18, 2026) ("Repeal Rule"). That final rule reached the
same ultimate conclusion as the proposed rule issued six months prior. But unlike
the proposal, the final Repeal Rule disavowed all reliance on a draft report that –
before the report was abandoned and its authoring panel declared unlawful – had
been the heart of the proposed rule's scientific and factual assertions.

1

To fill the void, EPA developed and announced in its final rule an entirely new methodology and analysis that it did not present for public notice and comment, in violation of Clean Air Act Section 307(d)(3). 42 U.S.C. § 7607(d)(3). Based on that analysis, EPA asserts that it lacks authority to regulate greenhouse gases from vehicles because regulation would be "futile" – a conclusion EPA adopted as a rationale for repeal and also cited when discussing its two other bases for repeal. Because EPA did not expose that analysis to public comment and therefore lacks a valid record for its futility conclusion, several Petitioners in the above-captioned consolidated cases have filed petitions for administrative reconsideration, as required by the Act, so that EPA may address its error. *See id.* § 7607(d)(7)(B).

Because the new analysis, and Petitioners' objections thereto, are central to the rule and to the challenges pending before this Court, the Petitioners in Case No. 26-1037 (collectively, "American Public Health Association") respectfully request that the Court defer entry of any order calling for merits briefing proposals for 90 days, until July 20, 2026, to allow EPA to complete administrative proceedings on those petitions – either by completing reconsideration of the granted petitions, or announcing the petitions are denied. As discussed further below, this request is consistent, and would run concurrently, with the deferral requested by Petitioners

2

in Case Nos. 26-1039, 26-1051, and 26-1061, which would give EPA until Jun/e 4, 2026, to announce whether it is granting or denying the petitions.

This limited delay will allow EPA to resolve, or reject, Petitioners' concerns with the new futility analysis. That, in turn, will allow all issues, including any remaining disputes about that analysis, to be raised to this Court's attention and resolved in a single judicial proceeding, thereby promoting efficient and orderly judicial review. This request also will not prejudice any party. Additional motions practice can proceed in this Court while the administrative process is concluded, and a limited upfront deferral will prevent greater delay associated with potential piecemeal litigation on the lawfulness of the Repeal Rule. Moreover, none of the Petitioners who filed reconsideration petitions have asked EPA or this Court to stay the effective date of the Repeal Rule, notwithstanding EPA's blatant procedural error.

In the alternative, should this Court decline to grant a deferral, American Public Health Association respectfully requests that the Court sever challenges to EPA's conclusion that regulating greenhouse gases from vehicles is futile (Section V.C of the Repeal Rule preamble), and place them in a new docket for separate consideration after EPA's administrative process is concluded. While deferral is the far preferable alternative for orderly and fair judicial review, in its absence,

severance would avoid at least some of the most burdensome consequences of EPA's belated choice to insert significant new material into the final rule.

Petitioners in Case Nos. 26-1043 and 26-1083 consent to this motion. Petitioner in Case No. 26-1051 consents to the request for deferral and takes no position on the alternate request. Petitioners in Case Nos. 26-1039, 26-1061, and 26-1090 consent to a 45-day deferral, as requested in their motion; consent to a further reasonable deferral to complete administrative reconsideration proceedings in the event that EPA grants one or more pending reconsideration petitions; and oppose the alternative relief requested.[1] Respondents EPA, et al., oppose this motion.

## BACKGROUND

On August 1, 2025, EPA published a notice of proposed rulemaking to rescind its 2009 finding that greenhouse gas emissions from U.S. motor vehicles contribute to greenhouse gas pollution that may reasonably be anticipated to endanger public health and welfare. 90 Fed. Reg. 36,288 (Aug. 1, 2025); *see also* 74 Fed. Reg. 66,496 (Dec. 15, 2009). The Agency also proposed to repeal every greenhouse gas motor vehicle standard it has promulgated since the 2009 endangerment finding. 90 Fed. Reg. at 36,288. In so doing, EPA proposed to

---

[1] Petitioners in Case No. 26-1038 did not respond to a request for position before this motion was filed.

repudiate not only several generations of emissions standards for light-, medium-, and heavy-duty vehicles, but also nearly two decades of Supreme Court and D.C. Circuit precedent – which has repeatedly affirmed both EPA's authority over greenhouse gases under Clean Air Act Section 202 and the 2009 finding itself. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 532 (2007); *Coal. for Responsible Regul., Inc. v. EPA*, 684 F.3d 102, 113, 120-21 (D.C. Cir. 2012) (per curiam), *cert. denied as to finding*, 134 S. Ct. 418 (2013).

EPA's proposed repeals met strenuous objections from the scientific community and the public at large, including objections from industries affected by the Clean Air Act's greenhouse gas authorities. *E.g.*, Comment of National Academies of Sciences, Engineering, and Medicine, EPA-HQ-OAR-2025-0194-0756; Comment of Ford Motor Company, EPA-HQ-OAR-2025-0194-1393 (opposing complete elimination of vehicle greenhouse gas standards); Comment of American Petroleum Institute, EPA-HQ-OAR-2025-0194-0869 (supporting EPA authority to regulate vehicle greenhouse gases). Commenters disputed EPA's "primary" rationale that, notwithstanding the Supreme Court's holding in *Massachusetts* that "EPA has the statutory authority to regulate the emission of [greenhouse] gases from new motor vehicles," 549 U.S. at 532, Section 202 should be read to preclude regulation of such emissions. *See* 90 Fed. Reg. at 36,298-99. Commenters also objected to EPA's "alternative" rationale for repeal, which

proposed to find that the 2009 endangerment finding was unsupportable in light of supposed scientific uncertainties alleged in a draft Department of Energy advisory report. *Id.* at 36,299. EPA proposed to affirm the conclusions of that report despite its conflict with overwhelming scientific consensus and with EPA's own detailed findings that greenhouse gas emissions endanger public health and welfare, including by contributing to climate change.

EPA's reliance on that draft report soon came crumbling down. The report had been prepared by five climate change skeptics selected and convened in secret by the Department of Energy, working without public scrutiny or peer review. *Id.* at 36,307-10, 36,292 n.10, 36,308 n.87. When the existence of the so-called Climate Working Group became public, Petitioners in this case immediately challenged its establishment in the United States District Court for the District of Massachusetts, prompting the Department of Energy to dissolve the group and halt work on the report. The District Court then confirmed that the panel's formation was unlawful and in violation of multiple federal transparency and impartiality requirements. *Env't Def. Fund v. Wright*, No. 1:25-cv-12249-WGY, 2026 WL 251626, at *1 (D. Mass. Jan. 30, 2026).

In the wake of these events, EPA's final rule jettisoned the assertion that the 2009 finding should be repealed on the basis of scientific uncertainties. It also disclaimed all reliance on the Climate Working Group's draft report, not only for

6

its alternative rationale but also, importantly, for its proposed determination that regulation of vehicle greenhouse gas emissions would be "futile." *See* 90 Fed. Reg. at 36,305 (relying on the draft report at proposal for both conclusions). Instead, EPA hastily fashioned a new purported basis for concluding regulation would be futile that relied entirely on new modeling performed by the Agency, using previously undisclosed assumptions and inputs. 91 Fed. Reg. at 7729-32.

That new modeling and other material (referred to throughout this motion as the "futility analysis") appears in Section V.C of the final rule, where EPA relies on that analysis to conclude that regulation of vehicle greenhouse gases would be futile (EPA's "futility conclusion"). 91 Fed. Reg. at 7728-34. Section V.C contends that EPA's futility conclusion is, by itself, a sufficient legal basis to repeal the endangerment finding. *See id.* The final rule also contains two other rationales for repeal, found in Sections V.A-B. The rule cites Section V.C's futility conclusion to "lend further support to" the statutory-interpretation rationale for repeal contained in Section V.A, *id.* at 7711, 7732, and also references Section V.C in Section V.B's discussion of the major-questions doctrine. *Id.* at 7724. But it simultaneously disclaims any interdependence among these arguments, *id.* at 7692 (insisting that judicial invalidation of any basis "will not affect the other bases"). Either way, EPA's futility conclusion is central to the Repeal Rule, and yet EPA

never exposed the underlying futility analysis to public comment, as required by the Clean Air Act.

Because of this procedural error, on April 1, 2026, many of the State and Local Government Petitioners in Case No. 26-1061 petitioned EPA to take notice and comment on its new futility methodology. Ex. A. On April 14, 2026, the Zero Emission Transportation Association, Petitioner in Case No. 26-1039, filed a petition of its own adopting the arguments in the State and Local Government Petitioners' petition. Ex. B. A group of the Petitioners in Case No. 26-1037 filed a complementary administrative petition on April 15, 2026, that echoed the State and Local Government Petitioners' call for reconsideration of the futility analysis and also provided extensive evidence showing that EPA's new analysis was fatally flawed and insufficient to support the Repeal Rule's futility conclusion. Ex. C. Shortly thereafter, on April 16, 2026, the Service Employees International Union, Petitioner in Case No. 26-1051, filed a fourth reconsideration petition adopting the arguments in the three other petitions. Ex. D.

Under the Clean Air Act, EPA must grant reconsideration of the new futility analysis and provide a new comment period if the objections were "impracticable" to raise during the comment period or if the grounds for the objection arose after the comment period but within the period of judicial review, and if they are "of central relevance to the outcome of the rule." *See* 42 U.S.C. § 7607(d)(7)(B). The

8

Agency's decision following administrative reconsideration, or its denial of reconsideration, may then be challenged in this Court. *Id.*

Each of these four groups of Petitioners has now moved this Court to ensure that the schedule for merits briefing in this matter takes appropriate account of the reconsideration proceedings. American Public Health Association, like Petitioners in Case Nos. 26-1039, 26-1051, and 26-1061, request that the Court defer the call for merits briefing proposals while EPA addresses this error. Petitioners in Case Nos. 26-1039, 26-1051, and 26-1061, have asked in the first instance for a deferral extending until June 4, 2026, to allow EPA to decide and announce whether it will convene reconsideration proceedings. American Public Health Association supports this request and agrees that is a more than sufficient period for EPA to decide the simple question of whether it will follow the letter of the Clean Air Act and grant the petitions. Indeed, American Public Health Association believes that, given the accelerated pace at which EPA conducted the underlying rulemaking, a deferral through July 20, 2026 – 90 days total – would permit EPA not only to decide whether to convene reconsideration proceedings but actually to convene and conclude those proceedings.

We therefore respectfully request that the Court grant a deferral to July 20, 2026, so that EPA may, in that time, fully resolve the reconsideration petitions.

## ARGUMENT

This Court has discretion to pause proceedings before it, incident to its general power to control its docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Court exercises that power with an eye toward "weigh[ing] competing interests and maintain[ing] an even balance." *Id.* That power is routinely exercised to temporarily defer judicial review of agency action while the agency is engaged in further administrative proceedings – including in the Clean Air Act context. *See, e.g.*, *Time Warner Ent. Co. v. FCC*, 240 F.3d 1126, 1128 n.1 (D.C. Cir. 2001); *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386-90 (D.C. Cir. 2012).

To be sure, the Clean Air Act does not *require* that judicial review pause because an administrative petition for reconsideration based on new information has been filed, *see* 42 U.S.C. § 7607(b)(1), and in some cases simultaneous judicial and administrative proceedings are appropriate. *See, e.g.*, *Lead Indus. Ass'n v. EPA*, 647 F.2d 1184, 1185-86 (D.C. Cir. 1980). But the inquiry is inherently case-specific. *See id.* at 1187. So long as the new information underlying a reconsideration petition "raises substantial questions about the validity of the Agency's analysis," *id.*, the Court is well within its discretion to defer judicial proceedings as needed to serve the interest of the parties and the Court.

Petitioners' request to defer the call for briefing proposals while EPA considers the petitions for reconsideration is in the interest of the parties and the

10

Court because it will ensure comprehensive, timely litigation of the entire case, including this major issue, avoiding piecemeal litigation that could needlessly prolong uncertainty about the fate of the Repeal Rule. As the Repeal Rule remains in effect and other motions practice can proceed in the meantime, deferring a call for merits briefing proposals by a maximum of 90 days so that EPA can address a major flaw in its analysis is without prejudice to any party and will have minimal effect – if any – on the timely resolution of this case. Indeed, American Public Health Association's request is far more modest than abeyance requests in similar cases that have been granted by this Court. *See infra* at 13.

If the Court does not defer the call for briefing proposals, American Public Health Association requests, in the alternative, that the Court sever for separate adjudication Part V.C of the Repeal Rule, which states EPA's conclusion that regulation would be futile. Deferral is the appropriate and far preferable outcome in this case. But if deferral is not granted, severance is necessary to ensure the Court can assess the merits of EPA's conclusion that vehicle greenhouse gas regulation would be futile in a single proceeding and in the light of a fully and properly developed record on the futility analysis now undergirding that conclusion. Proceeding to merits briefing in the absence of a record on the reconsideration issues would be both inefficient and potentially prejudicial, so severance is necessary in the absence of more suitable relief.

**I.     A short deferral of the request for merits briefing proposals is essential to the timely and fair adjudication of this matter.**

    **A.     Given the futility analysis's centrality to the Repeal Rule, deferring the call for briefing proposals while EPA completes administrative proceedings is both necessary and efficient.**

A limited deferral of the call for merits briefing proposals is essential to the fair and orderly resolution of this litigation. The Clean Air Act is unequivocal that EPA must disclose a summary of its "data" and "methodology" in a proposed rule, 42 U.S.C. § 7607(d)(3)(A)-(B), but EPA never subjected any of its new futility methodology to notice and comment. EPA's eleventh-hour choice to substitute the analysis underlying its futility conclusion – a major element of the rule – is thus a "serious procedural error." *Conn. Light & Power Co. v. Nuclear Regul. Comm'n*, 673 F.2d 525, 530-31 (D.C. Cir. 1982); *see* State Mot., ECF 2169080 at 13-15.

Deferring the call for briefing proposals will give EPA an opportunity to address that error before merits briefing begins – including by revoking its futility conclusion entirely – which could serve to narrow the issues to be decided in these challenges, *see* State Mot., ECF 2169080 at 15-18. Even if EPA were to deny the petitions or reconfirm its futility conclusion after reconsideration, deferral would allow any petition for review challenging that conclusion to be joined with this action. *See* 42 U.S.C. § 7607(b). Consolidation of existing challenges and any challenges arising from the reconsideration would ensure this Court can consider the totality of Petitioners' objections to EPA's futility conclusion in a single,

comprehensive judicial challenge: both objections to EPA's invocation of futility

that were exhausted during the comment period and objections to the new futility

analysis now specifically undergirding that conclusion. The requested deferral is

thus essential to avoid the risk of an illogical and inefficient result whereby judicial

review of EPA's conclusion that vehicle greenhouse gas regulation would be futile

is unnaturally divided across protracted, piecemeal litigation.

Unsurprisingly, this Court in similar cases has entered abeyances or

otherwise deferred briefing on Clean Air Act challenges while EPA completes or

considers reconsideration proceedings. *See, e.g.*, State Mot., ECF 2169080 at 12

(collecting cases). The relief requested here presents a similar but more tailored

path, forgoing a request for a lengthy abeyance in favor of a time-limited

reconsideration period that EPA has shown it can meet (and during which litigation

on other pre-merits questions may move concurrently).

In particular, American Public Health Association submits that a 90-day

deferral will be adequate here because EPA should not need long to decide whether

it will comply with its statutory duty to provide notice and comment on its

significant new analysis. EPA cannot be unaware of its procedural failure and, in

any event, has had specific notice of Petitioners' concerns since the first

reconsideration petition was filed on April 1. Even if EPA took an additional 30

days to announce a public comment period and open a public hearing, EPA could

13

readily take 30 days of public comment and complete its decision in another 30 days. Of course, EPA could divide that time up differently if it so chose. Plus, the reconsideration petition submitted by American Public Health Association, *see* Ex. C, already provides a substantial description of issues warranting EPA's review, which should significantly advance the Agency's reconsideration even while a new comment period on the futility analysis is underway.

These timeframes are realistic. EPA took only 201 days after proposal to finalize the entire Repeal Rule – including finalizing three rationales for repeal and concluding that it should not move forward on numerous others. *See* 90 Fed. Reg. at 36,288 (proposed rule published Aug. 1, 2025) & 91 Fed. Reg. at 7686 (final rule published Feb. 18, 2026). By comparison, a period of 90 days to reconsider part of that rule is an adequate, if not extended, timeframe.[2] A 90-day period is also consistent with other EPA actions where litigation was pending. *See, e.g.*, 89 Fed. Reg. 99,105 (Dec. 10, 2024) (completing and publishing a decision on record remand in 89 days).

A total of 90 days from the filing of this motion is therefore sufficient to allow EPA to complete administrative proceedings, and is a logical, workable, and

---

[2] Of course, if the Agency were to conclude administrative proceedings more quickly, the Court could terminate the deferral before the full 90-day period runs.

appropriately tailored path forward to ensure objections to the new futility analysis can be efficiently addressed in this litigation.

### B.    The requested relief is without prejudice to any party.

The 90-day deferral sought by American Public Health Association will not prejudice any party. As an initial matter, none of the moving Petitioners are requesting that either the Agency or the Court delay the Repeal Rule's effective date, notwithstanding the lack of proper procedure identified in the administrative petitions. *Cf.* 42 U.S.C. § 7607(b)(1) (stating that petitions for reconsideration do not delay a rule's effective date), (d)(7)(B) (allowing, but not requiring, limited delay of an effective date upon grant of reconsideration). Because no regulated party is "required to engage in, or to refrain from, any conduct" during the deferral period, there is no prejudice to regulated parties from the delay. *Devia v. NRC*, 492 F.3d 421, 427 (D.C. Cir. 2007).

Nor can EPA or regulated parties claim prejudice based on additional regulatory "uncertainty" if merits briefing does not proceed immediately. First, it is speculative whether this request will work any delay at all. Petitioners propose that other motions practice should continue while EPA acts on the reconsideration petitions, so any potential delay to the case as a whole will be significantly minimized. *See* State Mot., ECF 2169080 at 18-19; Reply in Support of Mot. to

15

Extend, ECF 2166208 at 5 (noting likelihood of motions concerning the administrative record in this case).

Second, the requested deferral will hasten regulatory clarity by ensuring that the entire controversy is addressed in one judicial proceeding. If EPA does not timely address the reconsideration petitions, a potential second wave of litigation on the Agency's treatment of the reconsideration issues may be necessary. Ensuring the full scope of challenges is ready to begin briefing in the near future, rather than on the unknowable timeline of a second round of litigation, is thus plainly in the interests of parties concerned about potential regulatory uncertainty while judicial review is ongoing.

Third, even if granting this request briefly delayed final judicial resolution here, the effect of the requested relief on the timing of merits resolution is too uncertain to cause significant hardship. Plus, the problem here is of EPA's making: the Agency chose not to expose its new futility analysis to public comment in full awareness that this procedural failure would trigger the need for additional administrative and judicial process. Going forward, EPA retains control over its timeline for disposition of the reconsideration petitions, so it is fully empowered to minimize any delay resulting from its choices.

In any case, any potential prejudice to EPA or the regulated industry is outweighed by the benefits. Here, all Petitioners have moved for or support

16

deferring the call for briefing proposals for some period, notwithstanding their own forceful interests in demonstrating that the Repeal Rule is unlawful. *See* State Mot., ECF 2169080 at 18 (noting that courts usually focus on hardship to petitioners, not respondents, citing *Devia*, 492 F.3d at 427). And as shown above, this request will best advance the overall resolution of the merits in this matter. Because the request for deferral will further the Court's and the parties' interest in a comprehensive and near-term resolution of *all* challenges to the Rule, it should be granted.

## II.    If this Court denies the requested deferral, it should sever challenges to EPA's futility conclusion.

The appropriate and most efficient path forward here is the relief requested above in Section I: deferring merits briefing proposals so that EPA can complete administrative proceedings on the futility petitions. If the Court declines to grant a deferral, however, American Public Health Association asks in the alternative that the Court sever for separate adjudication Part V.C of the Repeal Rule, which proffers EPA's conclusion that regulation would be futile and the brand-new futility analysis supporting it. The Court should further make clear that EPA may not rely in any way on the severed analysis contained in Part V.C in litigation over the other two rationales for repeal, which are contained in Parts V.A-B.

Severance – while not the best solution to the inefficiencies EPA has introduced – would at least partially mitigate the worst of the complications. It is undisputed that EPA violates the Clean Air Act when it fails to seek notice and

17

comment on issues of central relevance to a final rulemaking. *See* 42 U.S.C. § 7607(d)(3), (d)(4)(B)(i). But without this Court's intervention, EPA's legal violation could work to its own benefit: allowing it to stymie judicial review of anything the Agency wishes to withhold from public scrutiny simply by planting it in a final rule and forcing parties to seek reconsideration.[3] That would be particularly disruptive here. If litigation were to proceed before EPA resolves the reconsideration petitions, this Court would likely be required to weigh EPA's conclusion that the futility of regulating vehicle greenhouse gases justifies repeal as a legal matter (which the parties addressed during the comment period), while remaining unable to adjudicate, or even hear, objections to the new factual analysis on which that conclusion actually rests.

Severing Part V.C from these challenges so that both the legal and factual components of EPA's futility rationale are litigated only after EPA resolves the pending petitions for reconsideration would avoid piecemeal adjudication of that rationale. Granted, it would do so by separating challenges to Section V.C. from other challenges to the Repeal Rule. But unless this Court grants a deferral pending EPA's resolution of the pending reconsideration petitions – which would ensure all merits briefing can go forward together – bifurcation of some kind is unavoidable.

---

[3] Although unreasonable delay of action on a reconsideration petition can be raised to the Court, such challenges cannot be filed for at least six months, *see* 42 U.S.C. § 7604(a), and so, as a practical matter, can take years to resolve.

Better, in that disfavored scenario, to avoid the extreme inefficiency of spreading challenges to a *single* agency conclusion across multiple cases.

American Public Health Association notes that this request follows from EPA's own representations about the Repeal Rule. The rule "conclude[s]" that its futility conclusion and the new analysis on which it depends "lend further support to the basis for rescission in Section V.A of this preamble" concerning the "best reading" of Section 202. 91 Fed. Reg. at 7711, 7732. EPA also cites V.C when discussing its view that the major-questions doctrine supports repeal. *Id.* at 7724. But EPA nevertheless maintains that the rationales for the rule are independent, stating that "[e]ach basis for this final action … is severable and each basis alone provides sufficient justification to rescind the Endangerment Finding and repeal the GHG emission standards." *Id.* at 7692. The Agency further asserts that judicial "invalidation" of any basis "will not affect the other bases." *Id.* If the Court takes EPA at its word that the bases are, truly, severable, then despite the Repeal Rule's effort to position its futility conclusion as "reinforc[ing]" other parts of the rule, *id.* at 7711-12, the validity of Sections V.A-B can be decided by this Court without reference to the analysis in V.C.

If, instead, EPA avers that its rationales at Sections V.A-B depend on the futility conclusion and cannot be adjudicated without it, then American Public Health Association acknowledges that severance would not be appropriate. But in

that case, EPA cannot reasonably contend that the deferral requested in Section I is unwarranted, given the declared relationship of the futility analysis to the Repeal Rule as a whole.

Accordingly, American Public Health Association respectfully requests that the Court grant the primary relief described in Part I of this motion: to defer a call for briefing proposals for 90 days pending the completion of administrative proceedings so that *all* issues may be presented to the Court on a complete record and for the Court's full adjudication. But, at a minimum, the futility rationale must be adjudicated in its entirety. American Public Health Association thereby respectfully requests in the alternative that, if deferral is not granted pending the completion of administrative proceedings, the Court sever Section V.C of the Repeal Rule for adjudication in a separate proceeding consistent with its practice in other cases. *See, e.g.*, *Sierra Club v. EPA*, 884 F.3d 1185, 1188 (D.C. Cir. 2018) (describing severance of two issues "because EPA granted petitions for reconsideration").

## CONCLUSION

For the foregoing reasons, American Public Health Association respectfully requests that the Court defer the call for the parties' proposed merits briefing schedule and format for 90 days, until July 20, 2026, to permit EPA to complete administrative proceedings on the pending petitions for reconsideration. As the full

20

90-day deferral period may not be necessary if EPA completes those proceedings in advance of the July 20 deadline, American Public Health Association further requests that the Court direct EPA to notify this Court when it has completed its proceedings, and that the Court establish such other status reports as it deems appropriate. Should the Court decline to defer its call for briefing proposals, American Public Health Association respectfully requests, in the alternative, that the Court sever Section V.C of the Repeal Rule for adjudication in a separate proceeding.

DATED: April 20, 2026

Respectfully submitted,

/s/ *Rachel Heron*

Chloe H. Kolman
Megan M. Herzog
Sean H. Donahue
Keri R. Davidson
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 372-5270 (Kolman)
chloe@donahuegoldberg.com
megan@donahuegoldberg.com
sean@donahuegoldberg.com
keri@donahuegoldberg.com

Vickie L. Patton
Peter Zalzal
Alice Henderson
Stephanie Jones
Ryland Shengzhi Li
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, Colorado 80302

Rachel Heron
Abirami Vijayan
David Doniger
Julia Forgie
Meredith Hankins
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, D.C. 20005
(202) 836-9329 (Heron)
rheron@nrdc.org
avijayan@nrdc.org
ddoniger@nrdc.org
jforgie@nrdc.org
mhankins@nrdc.org

*Counsel for Petitioner Natural Resources Defense Council*

21

(303) 447-7214
vpatton@edf.org
pzalzal@edf.org
ahenderson@edf.org
sjones@edf.org
ryli@edf.org

*Counsel for Petitioner Environmental
Defense Fund*

Jason Rylander
David Pettit
Lauren Parker
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, D.C. 20005
(510) 844-7100 (Pettit)
dpettit@biologicaldiversity.org

*Counsel for Petitioner Center
for Biological Diversity*

Veronica Saltzman (D.C. Cir. Bar 64096)
Francis W. Sturges, Jr. (D.C. Cir. Bar 64964)
Shaun A. Goho (D.C. Cir. Bar 54655)
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(617) 624-0234
vsaltzman@catf.us

*Counsel for Petitioners American Public
Health Association, Alliance of Nurses for
Healthy Environments, American Lung
Association, and Clean Wisconsin*

James Crowley
Conservation Law Foundation
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
(401) 228-1905
jcrowley@clf.org

*Counsel for Petitioner
Conservation Law Foundation*

Hana V. Vizcarra
Marvin C. Brown IV
Earthjustice
1250 I Street NW, 4th Floor
Washington, D.C. 20005
(202) 667-4500
hvizcarra@earthjustice.org
mcbrown@earthjustice.org

*Counsel for Petitioners Center for
Community Action and Environmental
Justice, Clean Air Council, Friends of the
Earth, Physicians for Social Responsibility,*

22

*Rio Grande International Study Center, and Union of Concerned Scientists*

Brian H. Lynk
Callie M. Sharp
(D.C. Bar No. 459525)
Environmental Law & Policy Center
740 15th Street NW, Suite 700
Washington, D.C. 20005
(240) 461-4241
blynk@elpc.org
csharp@elpc.org

*Counsel for Petitioner Environmental Law & Policy Center*

Adina H. Rosenbaum
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-1000
arosenbaum@citizen.org

*Counsel for Petitioner Public Citizen*

Andres Restrepo
Joshua Berman
Sierra Club
50 F Street NW, Eighth Floor
Washington, D.C. 20001
(856) 240-0964 (Restrepo)
andres.restrepo@sierraclub.org
josh.berman@sierraclub.org

Vera Pardee
726 Euclid Avenue
Berkeley, CA  94708
(858) 717-1448
pardeelaw@gmail.com

*Counsel for Petitioner Sierra Club*

23

## CERTIFICATE OF COMPLIANCE

I hereby certify on this 20th day of April, 2026, that the foregoing Motion complies with the word limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,665 words, excluding parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (6) because this document has been prepared in 14-point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

*/s/ Rachel Heron*
Rachel Heron

## CERTIFICATE OF SERVICE

I hereby certify on this 20th day of April, 2026, that the foregoing Motion has been filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit, using the CM/ECF System. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system, save for Mr. Worthington, who will be served by email per his request in ECF No. 2162370.

*/s/ Rachel Heron*
Rachel Heron

24