# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN PUBLIC HEALTH ASSOCIATION, *et al*.,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. Environmental Protection Agency,

Respondents.

No. 26-1037 (and consolidated cases)

## MOTION TO COMPLETE THE ADMINISTRATIVE RECORD

**INTRODUCTION**

In February 2026, the U.S. Environmental Protection Agency ("EPA") rescinded its 2009 finding that U.S. motor vehicle emissions contribute to greenhouse gas ("GHG") pollution that endangers public health and welfare and repealed federal GHG emission standards for all vehicle classes. 91 Fed. Reg. 7686 (Feb. 18, 2026) ("Rescission"); *see* 74 Fed. Reg. 66,496 (Dec. 15, 2009) ("2009 Endangerment Finding"). In these consolidated challenges to the Rescission, EPA filed a certified index to the administrative record, ECF No. 2163128, that is deficient in at least two respects.

First, EPA included a version of EPA's Response-to-Comments document that was created some 10 hours *after* Administrator Zeldin announced that the Rescission was "signed, sealed, delivered." When asked if the document was supplemented or modified after the Administrator signed the final rule, the agency refused to say—suggesting the document reflects post-decisional additions of or edits to EPA's responses. EPA therefore must, before merits briefing, disclose the response-to-comments document that existed at the time of EPA's decision.

Second, EPA improperly excluded from the administrative record two of undersigned Petitioners' supplemental comments on the proposed rule. Those comments highlighted how EPA's proposal unlawfully relied on a draft report assembled by an illegally convened committee and on a draft regulatory impact

analysis apparently authored in major part by a private citizen. EPA reviewed those supplemental comments and cannot now exclude them from the record, given their relevance to the rulemaking. As to the supplemental comment on the illegally convened committee, the federal government conceded relevance when it avoided preliminary relief in another court on the promise that this Court could review documents included in those comments. And the relevance of the supplemental comment on the draft regulatory impact analysis is evident from the fact that EPA decided—without explanation—to abandon in the Rescission the improperly sourced portion of the draft regulatory impact analysis.

Petitioners raised each of these deficiencies with EPA in March, but EPA refused to correct them. To ensure orderly review of the Rescission, the Court should order EPA to correct the record.

Petitioners in Case Nos. 26-1038, 26-1043, and 26-1083 consent to this motion. Intervenor-Respondent Domestic Energy Producers Alliance and State Intervenor-Respondents take no position on this motion. Respondent EPA and Intervenor-Respondents CO2 Coalition, National Federation of Independent Business, American Free Enterprise Chamber of Commerce, Corn Growers Associations, Western States Trucking Association, Construction Industry Air Quality Coalition, Liberty Packing Company, Nuckles Oil Company, NACCO Natural Resources Corporation, Truck and Engine Manufacturers Association, and

the American Petroleum Institute, and Movant-Intervenor-Respondents American Fuel and Petrochemical Manufacturers and Energy Marketers of America oppose this motion.

## BACKGROUND

### A. EPA's Proposal to Rescind the 2009 Endangerment Finding

In early 2025, EPA's Administrator announced he was "driving a dagger through the heart of climate change religion" and "overhauling" the 2009 Endangerment Finding.[1] That summer, EPA proposed to conclude that the Clean Air Act "does not authorize the EPA to prescribe standards for GHG emissions based on global climate change concerns" and to repeal all vehicles GHG standards. 90 Fed. Reg. at 36,298 (Aug. 1, 2025). As alternative bases, EPA claimed that the 2009 Endangerment Finding had "papered over substantial uncertainties in the scientific record," *id.* at 36,299, and that "GHG emission standards may harm, rather than advance, public welfare" by imposing compliance costs, *id.* at 36,311-13. Two of the flawed, results-oriented analyses on which EPA relied for those claims are relevant to this motion: (a) a draft report by the so-called Climate Working Group and (b) Appendix B of the draft Regulatory Impact Analysis ("Draft RIA").

---

[1] Lee Zeldin, *Lee Zeldin: EPA Ends the 'Green New Deal*,' WALL STREET JOURNAL (Mar. 12, 2025), https://www.wsj.com/opinion/lee-zeldin-epa-ends-the-green-new-deal-aa81de06.

### a. The Climate Working Group Draft Report

Throughout the proposed rule, EPA extensively cited a draft report by the Climate Working Group ("Group")—a committee of five climate skeptics hand-picked by the Secretary of Energy. The Group's mandate was "to correct course" from the purportedly "exaggerated" consensus climate science. *See* Climate Working Group, Impacts of Carbon Dioxide Emissions on the U.S. Climate, at vii (May 27, 2025), EPA-HQ-OAR-2025-0194-0060. Or, as one Group member understood it: "to call into question the original reasoning for the EPA Administrator's decision that CO2 [carbon dioxide] presents a threat to human health and welfare." Env't Def. Fund, Supp. Comment, at 8, EPA-HQ-OAR-2025-0194-31028. The proposed rule relied on the draft report to support several arguments for repeal, including its assertions that climate science does not support the 2009 Endangerment Finding, *see* 90 Fed. Reg. at 36,307-11, and that regulating vehicle GHG emissions was "futile," *see id.* at 36,305, 36,311-12. Despite playing a significant role in shaping the proposal, the Group was convened and carried out its work in secret. Its existence was not even announced until a version of the report became public alongside EPA's proposed Rescission rule.

Two Petitioners in this case promptly filed suit in the U.S. District Court for the District of Massachusetts, claiming that the clandestine establishment and use of the Group violated the Federal Advisory Committee Act. Compl. at *29-37

*Env't Def. Fund v. Wright* ("*EDF v. Wright*"), No. 1:25-cv-12249-WGY (D. Mass. Aug. 12, 2025). On the eve of its deadline to respond to the suit, the Department of Energy declared that the Group was dissolved and all work on the Group's report had ceased. *See* Defs.' Mem. in Opp. at *1, 11-13, *EDF v. Wright* (Sep. 4, 2025).

With the comment deadline on the proposed rule looming, the plaintiffs in *EDF v. Wright* sought a preliminary injunction ordering disclosure of Group records under the Federal Advisory Committee Act. The federal defendants opposed, arguing the plaintiffs would suffer no irreparable harm because "the denial-of-documents harm can be remedied if [plaintiffs] prevail on the merits at final judgment by the provision of those documents. The fact that the comment deadline will have passed by then doesn't harm them at all, because they can challenge the final [Rescission] rule in using those documents." Tr. at *17-18, *EDF v. Wright* (Sep. 11, 2025); *see also* Defs.' Mem. in Opp. at *15, *EDF v. Wright* (Sep. 4, 2025) (claiming records produced after final judgment could "be used to challenge any final action taken by the Government in reliance on the [Group] Report through an [Administrative Procedure Act] or Clean Air Act suit, if such reliance actually occurs").

The district court rejected the defendants' claimed defense under the Federal Advisory Committee Act, but nevertheless denied preliminary relief on the ground

that the plaintiffs' "inability to make informed comments ... is not irreparable."

Order at *14, *EDF v. Wright* (Sep. 17, 2025). The court explained:

> If the Plaintiffs proceed with their litigation and succeed, there is no indication that they will not receive [the Group's] documents in time to challenge a possible future rescission of the Endangerment Finding in court. ... The Plaintiffs may challenge any final agency action that relies on the [Group] Report in the future, once this challenge has been more thoroughly litigated.

*Id.* at *4-5.

With no injunction in place, EPA's comment deadline passed with the Group's materials still shielded from public view.[2] In December 2025, the district court ordered the federal defendants to disclose Group records to the plaintiffs. *See* Defs.' Not. at *1, *EDF v. Wright* (Jan. 28, 2026). On January 22, 2026, one of the plaintiffs in that case—Environmental Defense Fund—sent EPA a supplemental comment opposing rescission of the 2009 Endangerment Finding, which synthesized thousands of pages of now-disgorged Group materials and appended a subset of those records. *See* EPA-HQ-OAR-2025-0194-31028 at 1.

---

[2] EPA declined a request from several States to extend the comment deadline given the *EDF v. Wright* court's conclusion that the Climate Working Group was not subject to the claimed exemption from the Federal Advisory Committee Act. *See* EPA-HQ-OAR-2025-0194-6950 (Sep. 19, 2025).

### b. Appendix B of the Draft Regulatory Impact Analysis

As required for economically significant regulatory actions, EPA prepared a draft regulatory impact analysis purporting to evaluate the costs of its proposal. 90 Fed. Reg. at 36,326; *see* 42 U.S.C. § 7617. But nearly half of the Draft RIA—30 of its 63 pages—was not authored by EPA at all. Rather, the record reflects that Appendix B of the Draft RIA was drafted by the Office of Management & Budget ("OMB") and copied and pasted into EPA's document.[3] Subsequent reporting indicated that a private citizen, Casey Mulligan—who was neither a federal employee nor a government consultant—was the principal author of Appendix B. *See* Attorney General of Massachusetts, et al., Supp. Comment, at 3-6, EPA-HQ-OAR-2025-0194-28396 (citing Jean Chemnick, *White House wrote half of EPA's cost-benefit analysis for climate rule rollback*, E&E NEWS: CLIMATEWIRE (Nov. 4, 2025)).

Mulligan's reported authorship raised grave questions about bias and conflict of interest; indeed, Appendix B uncritically relies on his own research, which was rife with exaggeration and not peer reviewed. Many State and Local Government Petitioners therefore submitted to EPA a supplemental comment

---

[3] *See* EPA-HQ-OAR-2025-0194-0090 (July 21, 2025, EPA email sending working draft to OMB with Appendix B completely blank, with the comment "EPA Comment: awaiting updated analysis from OMB to be inserted into this section").

explaining Mulligan's illegal and inappropriate involvement in preparing the Draft RIA. *Id.* at 3-5.

**B. EPA's Final Rule**

On February 12, 2026, EPA finalized the Rescission. 91 Fed. Reg. at 7686. In the Rescission, EPA disclaimed reliance on the Group Draft Report—the key support for EPA's proposed "futility" rationale, among others—alluding generally to "concerns raised by some commenters." *Id.* at 7691 n.8. Even though EPA maintained some of the proposed rule's rationales, the agency conspicuously omitted prior citations to the Group Draft Report—such as in its summary of the Administrator's review of the scientific record, its repeated assertions without support or citation of "significant uncertainties" in climate science and modeling, *id.* at 7692, 7694, and EPA's agreement with unnamed commenters' arguments criticizing "mainstream climate research," which mirror arguments from the Group Draft Report, *id.* at 7735. And to fill gaps created by EPA's omission of the Group Draft Report, EPA introduced new climate modeling after the close of the public comment period—modeling that was plagued by missing sources, back-of-the-napkin estimation, and misrepresentation of basic statistical concepts.[4] As for the Draft RIA's Appendix B, EPA entirely dropped it from the final RIA, without

---

[4] *See* ECF No. 2169080 at 9–10; ECF No. 2169572 at 6–8; *see also, e.g.*, ECF No. 2169572-3 at 32, 34–37, 39.

explanation. In its Response-to-Comment document, EPA-HQ-OAR-2025-0194-31089, the agency declined to address commenters' criticisms of either the Group Draft Report or Appendix B, disclaiming any reliance on these analyses in the Rescission and asserting that any comments relating to them were outside the scope of the rulemaking.[5]

Shortly after 1 PM on February 12, President Trump held a press event with EPA Administrator Zeldin.[6] At that event, President Trump stated the 2009 Endangerment Finding was "all dead, gone, over," while the Administrator confirmed, "the 2009 Obama EPA endangerment finding is now eliminated."[7] The Rescission, the Administrator declared, was "over, done, finished" and "signed, sealed, delivered."[8]

Later on February 12, EPA posted online a pre-publication version of the Rescission. But EPA did not post the Response-to-Comments document, EPA-HQ-OAR-2025-0194-31089, until the following morning. That document's metadata

---

[5] EPA-HQ-OAR-2025-0194-31089 at 220, 249.

[6] C-SPAN, *C-SPAN TV Schedule, Thursday, February 12, 2026*, https://perma.cc/K6PV-HWJ9 (last accessed May 18, 2026).

[7] *WATCH LIVE: Trump, Zeldin to announce end of scientific basis for U.S. action on climate change*, PBS NEWSHOUR, at 16:50-29:50 (Feb. 12, 2026), https://tinyurl.com/3kh2k86v; *see also* GovInfo, *Remarks on the Environmental Protection Agency's Rescission of the "Endangerment Finding" With Respect to Greenhouse Gas Emissions and an Exchange With Reporters* (Feb. 12, 2026), https://perma.cc/E2PR-VRV3 (official government transcript; modified for publication).

[8] *Id*.

show it was created after 11 PM on February 12—well after the Administrator "ha[d] finalized" the Rescission.[9]

### C. Conferrals Over the Administrative Record

EPA certified the index to the administrative record in these cases nearly a month before the deadline. ECF No. 2163128 (index); *see* ECF No. 2159568 (scheduling order). EPA's certification proved premature. On March 30, 2026, the undersigned Petitioners sent EPA a conferral letter questioning several entries in, and omissions from, the certified record. Hoshijima Decl. ¶7. EPA represented that it would recertify the record with an improperly omitted document. As to other issues identified in the letter, based on EPA's representations in the conferral process, Petitioners are not moving for relief at this time. *Id.* ¶6. Petitioners reserve the right to seek additional relief, concerning the record or otherwise, should those representations prove false or misleading.[10]

---

[9] *Id.*; *see also* Petitioners in Case Nos. 26-1061 et al., Letter Re: Certified Index in D.C. Circuit Case Number 26-1037 (and consolidated cases) (Mar. 30, 2026) [hereinafter Initial Conferral Letter], at 2.

[10] For example, Petitioners are relying on EPA's representation that artificial intelligence was used during rulemaking only in a limited fashion unrelated to the substance of the rule, and so are not presently pursuing claims that EPA failed to docket its AI methodology consistent with Clean Air Act section 307(d)(3)(B). Hoshijima Decl. ¶¶33-36. Petitioners are also relying on EPA's representations regarding a public comment marked on the rulemaking docket as having been received by EPA before the proposed rule was made public and quoting text from the proposed rule. *Id.* ¶¶19-23. EPA represented that the comment was misdated and that "EPA is not aware of any member of the public having access to a pre-publication version of the NPRM." *Id.* Petitioners have asked EPA to confirm that

Through the conferral process, the parties have been unable to resolve two issues.

First, Petitioners asked EPA to confirm that the docketed Response-to-Comments document reflected word-for-word EPA's responses to comments contemporaneous with the Administrator's decision. EPA declined to confirm, and it rejected Petitioners' request to docket the version of the Response-to-Comments document current as of the time of decision. *Id.* ¶¶15-18.

Second, Petitioners asked that EPA include two supplemental comments filed after the comment period's close from the Environmental Defense Fund attaching documents from the *EDF v. Wright* productions and from many State and Local Government Petitioners. EPA declined to do so. *Id.* ¶¶25-28.

## ARGUMENT

This Court has authority to direct EPA to "supply any omission from" or "correct a misstatement" in EPA's administrative record for judicial review. Fed. R. App. P. 16(b); *see Walter O. Boswell Memorial Hosp. v. Heckler* ("*Boswell*"), 749 F.2d 788, 792 (D.C. Cir. 1984) ("To review less than the full administrative

---

no federal officials, whether at EPA or elsewhere in the government, sought early outside input on a pre-release version of the proposal and that the government has complied with its Federal Records Act obligations in relation to this rulemaking. *Id.* Ex. D at 2. Petitioners will seek appropriate recourse if EPA's responses to those questions undermine EPA's earlier representations.

record might allow a party to withhold evidence unfavorable to its case ... [and t]o review more than the information before the Secretary at the time she made her decision risks ... allowing them to take advantage of post hoc rationalizations."). Where a party shows that the agency has "deliberately or negligently exclude[d] from its record documents that may have been adverse to its decision," but were nevertheless before the agency at the time of decision, those documents should be added to the record for judicial review. *Estate of Insinga by Gilmore v. Comm'r of Internal Revenue*, 149 F.4th 709, 722 (D.C. Cir. 2025) (cleaned up). Here, Section 307(d) of the Clean Air Act defines the contents of EPA's administrative record on judicial review. 42 U.S.C. § 7607(d)(7)(A).

EPA must complete the record in two respects. First, EPA must include in the record the Response-to-Comments document current at the time of the Administrator's decision, not the post-decisional document that EPA certified, or confirm that the version in the record is identical to the version that existed at the time of the Administrator's decision. Second, EPA must include supplemental comments of certain undersigned Petitioners. Specifically, EPA must include the Environmental Defense Fund's Supplemental Comment attaching documents produced in *EDF v. Wright* and the State and Local Governments' Supplemental Comment criticizing Appendix B of the Draft RIA and the Group Draft Report. Finally, given the multiple irregularities with the preparation of the record here,

EPA should further confirm compliance with the Federal Records Act in addition to recertifying the record as EPA has represented it will. *See supra* Section C.

I. **The Administrative Record Should Be Recertified with the Version of EPA's Response-to-Comments Document that Was Before the Administrator at the Time of His Decision.**

EPA must recertify the administrative record with the version of the Response-to-Comments that was before Administrator Zeldin at the time of his decision. A final EPA rule under Section 307(d) of the Clean Air Act must "be accompanied by a response to each of the significant comments, criticisms, and new data submitted … during the comment period." 42 U.S.C. § 7607(d)(6)(B). These responses are a mandatory part of "[t]he record for judicial review." *Id.* § 7607(d)(7)(A). Section 307(d) further provides that the administrative record can only include "information or data ... placed in the docket as of the date of [rule] promulgation." *Id.* § 7607(d)(6)(C). No provision of Section 307(d) departs from the standard administrative-law principle restricting the record to material "that was before the [agency head] at the time he made his decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).

It is crucial to judicial review that the Response-to-Comments include only those responses to comments that were "before the agency at the time its decision was made," *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997), and "exclud[e] *ex post* supplementation of the record," *Boswell*, 749 F.2d at 793. As

EPA's guidance for administrative records explains, "[d]ocuments generated or altered after signature [by the decisionmaker] are not part of the administrative record for that decision." EPA, *Administrative Records Guidance* 10 (Sep. 2011), https://perma.cc/X38Z-QF8L.[11] Consistent with that guidance, the agency's usual practice is to omit any materials it receives from others on the day, but after the hour, of its decision. *E.g.*, *In re Dominion Energy Brayton Point, LLC*, 12 E.A.D. 490, at *19 (2006). There is no grace period for post-decisional materials EPA itself creates.

A post-decisional Response-to-Comments runs afoul of those principles. The Response-to-Comments currently in EPA's certified index was created hours after Administrator Zeldin announced at the early-afternoon February 12 White House press event that "the Trump EPA has finalized" this rulemaking. Hoshijima Dec. ¶14; see *id.* ¶16 (EPA confirmation of 11 PM timestamp); *see also Remarks: Donald Trump Repeals Government Climate Change Finding*, *supra* note 7

---

[11] *See also* EPA, *EPA's Action Development Process; Creating and Managing Dockets: Frequently Asked Questions for EPA Action Developers* 20-21 (Oct. 2011), https://perma.cc/5RH9-4UM6 ("For all rules, it is important that all documents that the agency considers or relies on in developing the rule, including the response to comments document, be completed prior to signature, even if they are placed in the docket at a later time. This is because we can only include in the administrative record for the rule documents that were in existence at the time of signature. Documents that are completed after signature cannot be included in the administrative record and, therefore, will not be considered by the court if the rule is challenged.").

(Administrator stating at press conference that Rescission was "signed, sealed, delivered."). When Petitioners asked EPA's counsel whether the Response-to-Comments was post-decisional—i.e., whether its contents had changed after Administrator Zeldin's announcement on the decision date, *id.* ¶15—EPA answered evasively. It claimed that there was "no factual or legal basis" for Petitioners' "suggestions regarding the Response-to-Comments," without confirming whether any substantive difference exists between the docketed version and the version before the Administrator at the time of his decision. EPA May 5 Response at 1.

EPA's unwillingness to provide those basic assurances supports an inference that the certified version of the Response-to-Comments does, in fact, include materials generated by the agency *after* the Administrator reached a decision (and omit materials contemporaneous with his decision). *Cf. Huthnance v. Dist. of Columbia*, 722 F.3d 371, 378 (D.C. Cir. 2013) ("The missing evidence rule provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." (quotation omitted)). To fairly and fully review the Rescission, this Court "should have before it neither more nor less information than did the agency when it made its decision." *Boswell*, 749 F.2d at 792. Otherwise, the Agency could rush to judgment and fix its views afterward. Enforcing compliance with the Act's

procedures ensures that agency rulemaking reflects deliberate consideration of the public's views, not political decision-making that is explained or smoothed over post hoc. This Court therefore must have the version of the Response-to-Comments that was before Administrator Zeldin at the time of his decision.

Fairness to the parties and judicial efficiency favor resolution of this record issue in advance of merits briefing. If the motions panel defers a ruling and the merits panel agrees that the record must include an as-yet-undisclosed version of the Response-to-Comments, the parties may have to re-brief (and the panel may have to re-hear) the case after EPA is compelled to produce the correct Response-to-Comments version. This possibility is not remote. As the repository of EPA's "complete responses" to comments, 91 Fed. Reg. at 7692, the Response-to-Comments is critical to this litigation. Accordingly, EPA should substitute the proper version of the Response-to-Comments now.

## II.  EPA Must Include in the Record Two Supplemental Comments Submitted by Petitioners After the Close of the Comment Period.

Comments submitted after the close of the comment period are properly in the administrative record where "the Administrator determines [they] are of central relevance to the rulemaking." 42 U.S.C. § 7607(d)(4)(B)(i); *see also American Petroleum Inst. v. Costle*, 665 F.2d 1176, 1190 (D.C. Cir. 1981).[12] Under hornbook

---

[12] Notably, Section 307's standard for inclusion in the record ("central relevance to the rule*making*") is different than its standard to determine when the agency must

administrative law, in making such record determinations, the agency may not "'deliberately or negligently exclude[ ]' from its record 'documents that may have been adverse to its decision.'" *Estate of Insinga*, 149 F.4th at 722 (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010)). Nor may it "exclude information on the grounds that it did not 'rely' on the excluded information in its final decision." *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (cleaned up). Thus, "a plaintiff can make out a prima facie case for completing the record by showing that 'the documents at issue (1) were known to the agency at the time it made its decision, (2) are directly related to the decision, and (3) are adverse to the agency's decision.'" *Bazzi v. Gacki*, 2020 WL 5653599, at *5 (D.D.C. Sep. 23, 2020) (quoting *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 198 (D.D.C. 2005)); *accord Estate of Insinga*, 149 F.4th at 723; *cf. NRDC v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975) (EPA's presumption of regularity in assembling record can be overcome). These traditional record-review principles are not limited to APA litigation. *Cf. Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991).

---

convene reconsideration proceedings ("central relevance to the *outcome of the rule*"). 42 U.S.C. § 7607(d)(7)(A), (d)(7)(B) (both emphases added).

Applying those principles here, EPA must include the Environmental Defense Fund's Supplemental Comment and the State and Local Governments' Supplemental Comment in the administrative record.

### A. EPA Must Include Environmental Defense Fund's Supplemental Comment and Appended *EDF v. Wright* Productions in the Record

EPA's failure to include Environmental Defense Fund's January 21, 2026, Supplemental Comment and appended Group materials must be corrected. Those materials were submitted to the rulemaking docket roughly one month before the Rescission was signed and thus were plainly before the agency at the time of decision. The materials were also centrally relevant to this rulemaking. The government argued in *Wright* that assertions that EPA erred in relying on the Group report can *only* be litigated in a Clean Air Act challenge to a final repeal rule, meaning that comments addressing that issue are fairly within the scope of that rulemaking. Defs.' Mem., *EDF v. Wright* (Sep. 4, 2025). And EPA ultimately acknowledged in the Rescission that "concerns" over the Group—like those substantiated by the supplemental comment—motivated its decision to excise references to that report from the Rescission. 91 Fed. Reg. at 7691 n.8. Given these facts, the Administrator plainly concluded that materials identifying errors in the Group process—like EDF's supplemental comment and attachments—are "of central relevance" to this "rule*making*," regardless of whether the agency

continued to rely on that group's report in the Rescission. 42 U.S.C. § 7607(d)(4)(B)(i) (emphasis added); *see also Estate of Insinga*, 149 F.4th at 723; *cf. Kent Cnty., Del. Levy Ct. v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992) (where materials "relate to the position of the agency's own experts on the question central to this case[, t]o deny their relevance would be inconsistent with rational decision-making"). Thus, under both Section 307(d) and general principles of administrative law, the supplemental comment is part of the record in this case.

Equitable considerations compel the same result. This Court has recognized that, when the government secures a win in one proceeding by arguing that relief will be available to an opposing party in another proceeding, the government "will be bound" by that representation in the later proceeding. *In re Smith*, 285 F.3d 6, 9 (D.C. Cir. 2002). Here, two Petitioners sought a preliminary injunction in *Wright* specifically to ensure that Group materials would be disgorged in time to be submitted as comments on the proposed repeal. The government said preliminary relief was unnecessary because "the fact that the comment deadline will have passed" by the time plaintiffs could obtain a favorable judgment requiring disgorgement "doesn't harm them at all, *because they can challenge the final rule in using those documents*." Tr. at *17-18, *EDF v. Wright* (Sep. 11, 2025) (emphasis added); *see also* Defs.' Mem. at *4, *EDF v. Wright* (Sep. 4, 2025). That representation, made in a lawsuit with a "meaningful connection" to this one,

*Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 799 (D.C. Cir. 2010), is "clearly inconsistent" with any argument that the materials should be excluded from this case because they were not submitted until after the comment period closed, *Temple Univ. Hosp. v. NLRB*, 929 F.3d 729, 733 (D.C. Cir. 2019). And, indeed, the government successfully persuaded the *Wright* court to deny a preliminary injunction on that basis. Order at *3-4, *EDF v. Wright* (Sep. 17, 2025). Allowing the government to change positions midstream would produce both an "unfair advantage" to the government and an "unfair detriment" to Petitioners. *Temple Univ. Hosp.*, 929 F.3d at 733. This Court therefore should apply judicial estoppel to bar any argument by the government to exclude the supplemental comment from this case. *See generally New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

That the government's briefing in *Wright* referenced the plaintiffs' ability to challenge "any final action taken . . . in reliance on" the Group report does not counsel otherwise. Defs.' Mem. *15, *EDF v. Wright* (Sep. 4, 2025). First, the government's statement at the hearing in *Wright* did not include the same caveat. Second, the Group Draft Report—and, in some cases, the absence thereof—still shaped the Rescission. The final Rescission carries over several points that the proposed rule sourced to the report, while conspicuously omitting prior citations to the report itself. As one example, the Group Report asserted at length that models linking projected effects on temperature and sea level to meaningful impacts on

20

health and welfare are unreliable. EPA-HQ-OAR-2025-0194-0060 at 116-25, 130. The Rescission refuses to use those models in its futility analysis and, without citing any source, parrots the Group's view that such models are unreliable. *See* 91 Fed. Reg. at 7729, 7735, 7736; EPA-HQ-OAR-2025-0194-31089 at 203, 209-10, 215. At minimum, whether the Rescission implicitly relies on the Group's work is the subject of a potential dispute—and one to which the materials in question are centrally relevant.

**B. EPA Must Include the State and Local Governments' Supplemental Comment in the Record**

EPA also must place in the record the Supplemental Comment submitted by many of the State and Local Government Petitioners. EPA-HQ-OAR-2025-0194-28396. That comment alerted EPA that Appendix B of the Draft RIA reportedly had been unlawfully outsourced to a private citizen, Casey Mulligan. *See id.* at 3-6. It also alerted EPA that Appendix B was tainted by the bias of its author: Appendix B relied extensively on two working papers that Mulligan co-authored, "creat[ing] a conflict of interest because Mulligan [wa]s unable to critically review his own research." *Id.* at 5. Similarly, the comment identified data that further undermined the purported scientific basis of the proposed rule, including new data and research not available during the comment period detailing significant impacts of climate change. *Id.* at 2-3.

The State and Local Governments' Supplemental Comment meets the standard for inclusion in the record. EPA reviewed that comment well before publishing the Rescission in mid-February 2026. EPA-HQ-OAR-2025-0194-31089 at ii (noting that the late comments "raised … a few new and novel issues"). EPA then silently abandoned Appendix B and the rule's science rationale in the Rescission, without ever responding to the State and Local Governments' Supplemental Comment. *Id*. On the record before the Court, EPA has offered no explanation for those substantial changes between the proposed rule and final Rescission. But the sequence speaks for itself: the State and Local Governments' Supplemental Comment brought to EPA's attention the improper, illegal, and unscientific flaws infecting Appendix B, and raised further information adverse to the scientific underpinning of the proposal; EPA then responded by removing them altogether. That sequence makes out a prima facie case that EPA considered and shaped the Rescission at least partly in response to those comments, *see Bazzi*, 2020 WL 5653599, at *5, and thus that it determined them to be of central relevance to the rulemaking, *see* 42 U.S.C. § 7607(d)(4)(B)(i). Had EPA admitted as much, the comments indisputably would belong in the record. The agency's choice to remain silent and give no reason at all should not dictate the contents of the record.

## CONCLUSION

For the foregoing reasons, the undersigned Petitioners request that this Court order EPA to complete the administrative record no later than seven days before proposed briefing schedule and format orders are due.

Dated: May 20, 2026

Respectfully Submitted,

**COMMONWEALTH OF MASSACHUSETTS**
ANDREA JOY CAMPBELL
ATTORNEY GENERAL

**STATE OF CALIFORNIA**
ROB BONTA
ATTORNEY GENERAL

*/s/ Luca Greco*
TURNER H. SMITH
Deputy Bureau Chief
JULIA JONAS-DAY
MEGHAN DAVOREN
NATHANIEL HAVILAND-
  MARKOWITZ
Assistant Attorneys General
LUCA GRECO
HANNAH PERLS
Special Assistant Attorney General
Energy and Environment Bureau
Office of the Massachusetts Attorney
  General
One Ashburton Place, 18th Fl.
Boston, MA 02108
(617) 963-2782
Turner.Smith@mass.gov
Julia.Jonas-Day@mass.gov
Meghan.Davoren@mass.gov
Nathaniel.Haviland-
Markowitz@mass.gov
Luca.Greco@mass.gov
Hannah.Perls@mass.gov

*/s/ Theodore McCombs*
NATALIE COLLINS
MICAELA HARMS
MADISON LANE
THEODORE MCCOMBS
CAITLAN MCLOON
Deputy Attorneys General
600 W. Broadway, Ste. 1800
San Diego, CA 92101
Telephone: (619) 738-9000
Natalie.Collins@doj.ca.gov
Micaela.Harms@doj.ca.gov
Madison.Lane@doj.ca.gov
Theodore.McCombs@doj.ca.gov
Caitlan.McLoon@doj.ca.gov

**STATE OF NEW YORK**
LETITIA JAMES
ATTORNEY GENERAL

*/s/ Morgan A. Costello*
MORGAN A. COSTELLO
Deputy Bureau Chief
MICHAEL J. MYERS
Senior Counsel for Air Pollution and
  Climate Change Litigation
YUEH-RU CHU
Chief, Affirmative Litigation Section
RACHEL MAMAN KISH
ASHLEY M. GREGOR
NATHAN B. SHULOCK
Assistant Attorneys General
Environmental Protection Bureau
ANTHONY R. RADUAZO
Assistant Solicitor General
NYS Office of the Attorney General
The Capitol
Albany, NY 12224
(518) 776-2392
Morgan.Costello@ag.ny.gov
Michael.Myers@ag.ny.gov
Yueh-ru.Chu@ag.ny.gov
Rachel.Kish@ag.ny.gov
Ashley.Gregor@ag.ny.gov
Nathan.Shulock@ag.ny.gov
Anthony.Raduazo@ag.ny.gov

**STATE OF CONNECTICUT**
WILLIAM TONG
ATTORNEY GENERAL

*/s/ Matthew I. Levine*
MATTHEW I. LEVINE
Deputy Associate Attorney General
SCOTT N. KOSCHWITZ
WILLIAM E. DORNBOS
Assistant Attorneys General
JESSICA GIBREE
Special Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Matthew.Levine@ct.gov
Scott.Koschwitz@ct.gov
William.Dornbos@ct.gov
Jessica.Gibree@ct.gov

*Additional counsel for State and Local Government Petitioners are listed below*

/s/ *Chloe H. Kolman*
CHLOE H. KOLMAN
MEGAN M. HERZOG
SEAN H. DONAHUE
KERI R. DAVIDSON
Donahue, Goldberg, Herzog & Davidson
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 372-5270 (Kolman)
chloe@donahuegoldberg.com
megan@donahuegoldberg.com
sean@donahuegoldberg.com
keri@donahuegoldberg.com

VICKIE L. PATTON
PETER ZALZAL
ALICE HENDERSON
STEPHANIE JONES
RYLAND SHENGZHI LI
Environmental Defense Fund
2060 Broadway St., Ste. 300
Boulder, Colorado 80302
(303) 447-7214
vpatton@edf.org
pzalzal@edf.org
ahenderson@edf.org
sjones@edf.org
ryli@edf.org

*Counsel for Petitioner Environmental Defense Fund*

/s/ *Rachel Heron*
RACHEL HERON
JOSEPH BRAU
DAVID DONIGER
JULIA FORGIE
MEREDITH HANKINS
ATID KIMELMAN
GAVIN MCCABE
GLENDA VALDEZ
ABIRAMI VIJAYAN
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, D.C. 20005
(202) 836-9329 (Heron)
rheron@nrdc.org
jbrau@nrdc.org
ddoniger@nrdc.org
jforgie@nrdc.org
mhankins@nrdc.org
akimelman@nrdc.org
gmccabe@nrdc.org
gvaldez@nrdc.org
avijayan@nrdc.org

*Counsel for Petitioner Natural Resources Defense Council*

*Additional counsel for Petitioners in Case No. 26-1037 are listed below*

26

/s/ Tsuki Hoshijima
TSUKI HOSHIJIMA
ELENA S. GOLDSTEIN
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
thoshijima@democracyforward.org

*Counsel for Petitioner Service
  Employees International Union*

/s/ Meghan E. Greenfield
MEGHAN E. GREENFIELD
ELIZABETH B. DEUTSCH
ELIZABETH H. STARR
MAURA E. SMYLES
Jenner & Block LLP
1099 New York Ave., NW, Suite 900
Washington, DC 20001
(202) 639-6000
mgreenfield@jenner.com
edeutsch@jenner.com
estarr@jenner.com
msmyles@jenner.com

*Counsel for Petitioner Zero Emission
Transportation Association*

**STATE OF ARIZONA**
KRISTIN K. MAYES
ATTORNEY GENERAL

*/s/ Kirsten Engel*
KIRSTEN ENGEL
Special Attorney General
MARY M. CURTIN
Senior Litigation Counsel
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, AZ 85004
(602) 542-3333
Kirsten.Engel@azag.gov
Mary.Curtin@azag.gov

**STATE OF COLORADO**
PHILIP J. WEISER
ATTORNEY GENERAL

*/s/ Carrie Noteboom*
CARRIE NOTEBOOM
Assistant Deputy Attorney General
Colorado Department of Law
1300 Broadway, 10th Fl.
Denver, CO 80203
(720) 508-6285
Carrie.Noteboom@coag.gov

**STATE OF DELAWARE**
KATHLEEN JENNINGS
ATTORNEY GENERAL

*/s/ Vanessa L. Kassab*
IAN LISTON
Director of Impact Litigation
RALPH K. DURSTEIN III
VANESSA L. KASSAB
Deputy Attorneys General
Department of Justice
State Office Building
820 North French Street
Wilmington, DE 19801
(302) 683-8899
Vanessa.Kassab@delaware.gov

**STATE OF HAWAIʻI**
ANNE E. LOPEZ
ATTORNEY GENERAL

*/s/ Lyle T. Leonard*
LYLE T. LEONARD
Deputy Attorney General
Department of the Attorney General
465 S. King Street, #200
Honolulu, HI 96813
(808) 587-3052
Lyle.T.Leonard@hawaii.gov

**STATE OF ILLINOIS**
KWAME RAOUL
ATTORNEY GENERAL


*/s/ Jason E. James*
JASON E. JAMES
Assistant Attorney General
MATTHEW J. DUNN
Chief
Environmental Enforcement/
  Asbestos Litigation Division
JOANNA BRINKMAN
Complex Litigation Counsel
Illinois Attorney General's Office
201 W. Pointe Drive, Ste. 7
Belleville, IL 62226
(217) 843-0322
Jason.James@ilag.gov
Matthew.Dunn@ilag.gov
Joanna.Brinkman@ilag.gov


**STATE OF MARYLAND**
ANTHONY G. BROWN
ATTORNEY GENERAL


*/s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN
Assistant Attorney General
Office of the Attorney General of
  Maryland
200 Saint Paul Place, 20th Fl.
Baltimore, MD 21202
(410) 576-6414
SGoldstein@oag.state.md.us


**STATE OF MAINE**
AARON M. FREY
ATTORNEY GENERAL


*/s/ Emma Akrawi*
EMMA AKRAWI
Assistant Attorney General
Natural Resources Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
Emma.Akrawi@maine.gov


**STATE OF MICHIGAN**
DANA NESSEL
ATTORNEY GENERAL


*/s/ Hadley E. Tuthill*
HADLEY E. TUTHILL
NEIL GIOVANATTI
Assistant Attorneys General
Michigan Department of Attorney
  General
525 W. Ottawa Street
Lansing, MI 48909
(517) 335-7664
TuthillH@michigan.gov
GiovanattiN@michigan.gov

**STATE OF MINNESOTA**
KEITH ELLISON
ATTORNEY GENERAL

*/s/ Peter N. Surdo*
PETER N. SURDO
CATHERINE RIOS-KEATING
Special Assistant Attorneys General
Minnesota Attorney General's Office
445 Minnesota Street
Town Square Tower Ste. 600
Saint Paul, MN 55101
(651) 757-1061
Peter.Surdo@ag.state.mn.us
Catherine.Rios-
  Keating@ag.state.mn.us

**STATE OF NEVADA**
AARON D. FORD
ATTORNEY GENERAL

*/s/ K. Brunetti Ireland*
K. BRUNETTI IRELAND
Chief of Special Litigation
Office of the Nevada Attorney
  General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
KIreland@ag.nv.gov

**STATE OF NEW JERSEY**
JENNIFER DAVENPORT
ATTORNEY GENERAL

*/s/ Lisa J. Morelli*
LISA J. MORELLI
Deputy Attorney General
Division of Law
New Jersey Attorney General's Office
25 Market Street
Trenton, NJ 08625
(609) 900-0782
Lisa.Morelli@law.njoag.gov

**STATE OF NEW MEXICO**
RAÚL TORREZ
ATTORNEY GENERAL

*/s/ Esther Jamison*
ESTHER JAMISON
WILLIAM GRANTHAM
SPENSER LOTZ
Assistant Attorneys General
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
(505) 627-3474
EJamison@nmdoj.gov
WGrantham@nmdoj.gov
SLotz@nmdoj.gov

**STATE OF NORTH CAROLINA**
JEFF JACKSON
ATTORNEY GENERAL

*/s/ Asher P. Spiller*
ASHER P. SPILLER
Senior Deputy Attorney General
RACHEL POSEY
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
(919) 716-6600
ASpiller@ncdoj.gov
RPosey@ncdoj.gov

**GOVERNOR OF THE**
  **COMMONWEALTH OF**
  **PENNSYLVANIA**
JOSH SHAPIRO

JENNIFER SELBER
GENERAL COUNSEL

*/s/ Robert A. Reiley*
ROBERT A. REILEY
Deputy Chief Counsel
The Pennsylvania Governor's Office of
  General Counsel
Office of Chief Counsel, Department of
  Environmental Protection
RCSOB, 400 Market Street, 9th Fl.
Harrisburg, PA 17105-8464
(717) 787-0478
RReiley@pa.gov

**STATE OF OREGON**
DAN RAYFIELD
ATTORNEY GENERAL

*/s/ Paul Garrahan*
PAUL GARRAHAN
Attorney-in-Charge, Natural Resources
  Section
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

**STATE OF RHODE ISLAND**
PETER F. NERONHA
ATTORNEY GENERAL

/s/ *Nicholas M. Vaz*
NICHOLAS M. VAZ
Assistant Attorney General
Environment and Energy Unit Chief
Rhode Island Office of the Attorney
General
150 South Main Street
Providence, RI 02903
(401) 274-4400
nvaz@riag.ri.gov

**STATE OF VERMONT**
CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Hannah Yindra*
HANNAH YINDRA
SAM STRATTON
Assistant Attorneys General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186
Hannah.Yindra@vermont.gov
Sam.Stratton@vermont.gov

**STATE OF WASHINGTON**
NICHOLAS W. BROWN
ATTORNEY GENERAL

*/s/ Christopher H. Reitz*
CHRISTOPHER H. REITZ
ALEXANDRIA K. DOOLITTLE
SARAH M. REYNEVELD
Assistant Attorneys General
Office of the Washington Attorney
  General
P.O. Box 40117
Olympia, WA 98504-0117
(360) 586-6769
Chris.Reitz@atg.wa.gov
Alex.Doolittle@atg.wa.gov
Sarah.Reyneveld@atg.wa.gov

**COMMONWEALTH OF
  VIRGINIA**
JAY JONES
ATTORNEY GENERAL

*/s/ Tillman J. Breckenridge*
TILLMAN J. BRECKENRIDGE
Solicitor General
202 N. 9th Street
Office of the Attorney General of
  Virginia
Richmond, VA 23219
(804) 786-2071
SolicitorGeneral@oag.state.va.us

**STATE OF WISCONSIN**
JOSHUA L. KAUL
ATTORNEY GENERAL

*/s/ Gabe Johnson-Karp*
GABE JOHNSON-KARP
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-8904
Gabe.Johnson-Karp@wisdoj.gov

**DISTRICT OF COLUMBIA**
BRIAN L. SCHWALB
ATTORNEY GENERAL

*/s/ Caroline Van Zile*
CAROLINE VAN ZILE
Solicitor General
Office of the Attorney General for the
  District of Columbia
400 6th Street, NW, Ste. 8100
Washington, D.C. 20001
(202) 727-3400
Caroline.Vanzile@dc.gov

**CITY OF ALBUQUERQUE, NEW
  MEXICO**
LAUREN KEEFE
CITY ATTORNEY

*/s/ Devon P. King*
DEVON P. KING
Deputy City Attorney
One Civic Plaza NW
PO Box 2248
Albuquerque, NM 87103
(720) 933-6720
LKeefe@cabq.gov
DKing@cabq.gov

**UNITED STATES VIRGIN
  ISLANDS**
GORDON C. RHEA
ATTORNEY GENERAL

*/s/ Gordon C. Rhea*
Virgin Islands Department of Justice
Office of the Attorney General
3438 Kronprindsens Gade
GERS Complex, 2nd Fl.
St. Thomas, VI 00802-5749
(340) 774-5666

**BAY AREA AIR QUALITY
  MANAGEMENT DISTRICT**
ALEXANDER G. CROCKETT
GENERAL COUNCEL

*/s/ Jamie Jefferson*
CARRIE SCHILLING
Senior Assistant Counsel
JAMIE JEFFERSON
Assistant Counsel
375 Beale Street, Suite 600
San Francisco, CA 94105
JJefferson@baaqmd.gov
ACrockett@baaqmd.gov
CSchilling@baaqmd.gov

*Counsel for Petitioner Bay Area Air
  Quality Management District*
Jamie Jefferson (D.C. Cir. Bar No.
67062)

**CITY OF BOSTON,
  MASSACHUSETTS**
MICHAEL FIRESTONE
CORPORATION COUNSEL

*/s/ Megan Corrigan*
MEGAN CORRIGAN
Assistant Corporation Counsel
City of Boston Law Department
SAMUEL B. DINNING
Senior Assistant Corporation Counsel
One City Hall Plaza, Room 615
Boston, MA 02201
(617) 635-4034
Megan.Corrigan@boston.gov
Samuel.Dinning@boston.gov

**CITY OF CHICAGO, ILLINOIS**
MARY B. RICHARDSON-LOWRY
CORPORATION COUNSEL

*/s/ Myriam Zreczny Kasper*
MYRIAM ZRECZNY KASPER
Deputy Corporation Counsel
GABRIELLE SIGEL
Assistant Corporation Counsel
  Supervisor
BRADLEY R. RYBA
Assistant Corporation Counsel
City of Chicago Department of Law
2 North LaSalle Street, Ste. 580
Chicago, IL 60602
(312) 744-3564
Myriam.Kasper@cityofchicago.org
Gabrielle.Sigel@cityofchicago.org
Bradley.Ryba@cityofchicago.org

**CITY OF CLEVELAND, OHIO**
MARK GRIFFIN
DIRECTOR OF LAW

*/s/ Shirley A. Tomasello*
SHIRLEY A. TOMASELLO
Assistant Director of Law
City of Cleveland Department of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114-1077
(216) 664-3776
MGriffin@clevelandohio.gov
STomasello@clevelandohio.gov

**CITY OF COLUMBUS, OHIO**
ZACH KLEIN
CITY ATTORNEY

*/s/ Richard N. Coglianese*
RICHARD N. COGLIANESE
Assistant City Attorney
City of Columbus Department of Law
77 N. Front Street, 4th Fl.
Columbus, OH 43215
(614) 645-0818
RNCoglianese@columbus.gov

**CITY AND COUNTY OF
 DENVER, COLORADO**
MIKO ANDO BROWN
CITY ATTORNEY

*/s/ Kristin Brainerd*
KRISTIN BRAINERD
Assistant City Attorney
Denver City Attorney's Office
201 W. Colfax Avenue, Dept. 1207
Denver, CO 80202
(720) 913-8050
Kristin.Brainerd@denvergov.org

**HARRIS COUNTY, TEXAS**
JONATHAN G.C. FOMBONNE
COUNTY ATTORNEY

*/s/ Sarah Utley*
JONATHAN G.C. FOMBONNE
County Attorney
SARAH JANE UTLEY
Managing Counsel
Affirmative and Environmental
 Divisions
Harris County Attorney's Office
1010 Lamar, 11th Fl.
Houston, TX 77002
(832) 596-9786
Sarah.Utley@harriscountytx.gov

**CITY OF LOS ANGELES,
 CALIFORNIA**
HYDEE FELDSTEIN SOTO
CITY ATTORNEY

*/s/ Jessica B. Brown*
JESSICA B. BROWN
Assistant City Attorney
201 N. Figueroa St., 13th Floor
Los Angeles, CA 90012
(213) 978-1864
Jessica.Brown@lacity.org

**MARTIN LUTHER KING, JR.,
 COUNTY, WASHINGTON**
LEESA MANION
PROSECUTING ATTORNEY

*/s/ Christopher Sanders*
CHRISTOPHER SANDERS
General Counsel & Chief Legal
 Advisor to King County Executive
 Girmay Zahilay
ERIN KING-CLANCY
Senior Deputy Prosecuting Attorney
Office of King County Prosecuting
 Attorney Leesa Manion
401 5th Avenue, Ste. 800
Seattle, WA 98104
(206) 477-9483
ChrSanders@kingcounty.gov
EClancy@kingcounty.gov

35

**CITY OF NEW YORK, NEW YORK**
STEVEN BANKS
CORPORATION COUNSEL

*/s/ Alice Baker*
ALICE BAKER
Senior Counsel
LEIA SEEREERAM
Assistant Corporation Counsel
TESS DERNBACH
Senior Counsel
New York City Law Department
100 Church Street
New York, NY 10007
CKing@law.nyc.gov
LSeereer@law.nyc.gov
TDernbac@law.nyc.gov
AlBaker@law.nyc.gov

**SANTA CLARA COUNTY, CALIFORNIA**
TONY LOPRESTI
COUNTY COUNSEL

/s/ *Cristina Stella*
CRISTINA STELLA
Deputy County Counsel
KAVITA NARAYAN
Chief Assistant County Counsel
MEREDITH A. JOHNSON
Lead Deputy County Counsel
Office of the County Counsel
County of Santa Clara
70 West Hedding Street, East Wing, 9th
  Fl.
San José, CA 95110
(408) 299-5900
Cristina.Stella@cco.sccgov.org

**CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA**
DAVID CHIU
CITY ATTORNEY

*/s/ Robb Kapla*
ROBB KAPLA
SOPHIA L. CAI
Deputy City Attorneys
City Hall, Room 234
1 Dr. Conrad B. Goodlett Place
San Francisco, CA 94102
(415) 554-4647
Robb.Kapla@sfcityatty.org
Sophia.Cai@sfcityatty.org

JASON RYLANDER
DAVID PETTIT
LAUREN PARKER
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, D.C.  20005
(510) 844-7100 (Pettit)
dpettit@biologicaldiversity.org

*Counsel for Petitioner Center
for Biological Diversity*

VERONICA SALTZMAN (D.C. Cir.
Bar 64096)
FRANCIS W. STURGES, JR. (D.C.
Cir. Bar 64964)
SHAUN A. GOHO (D.C. Cir. Bar
54655)
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA  02109
(617) 624-0234
vsaltzman@catf.us

*Counsel for Petitioners American
Public Health Association, Alliance of
Nurses for Healthy Environments,
American Lung Association, and Clean
Wisconsin*

JAMES CROWLEY
Conservation Law Foundation
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI  02908
(401) 228-1905
jcrowley@clf.org

*Counsel for Petitioner
Conservation Law Foundation*

HANA V. VIZCARRA
MARVIN C. BROWN IV
Earthjustice
1250 I Street NW, 4th Floor
Washington, D.C.  20005
(202) 667-4500
hvizcarra@earthjustice.org
mcbrown@earthjustice.org

*Counsel for Petitioners Center for
Community Action and Environmental
Justice, Clean Air Council, Friends of
the Earth, Physicians for Social
Responsibility, Rio Grande
International Study Center, and Union
of Concerned Scientists*

37

BRIAN H. LYNK
(D.C. Bar No. 459525)
Environmental Law & Policy
Center
740 15th Street NW, Suite 700
Washington, D.C.  20005
(240) 461-4241
blynk@elpc.org

*Counsel for Petitioner*
*Environmental Law & Policy Center*


ANDRES RESTREPO
JOSHUA BERMAN
Sierra Club
50 F Street NW, Eighth Floor
Washington, D.C.  20001
(856) 240-0964 (Restrepo)
andres.restrepo@sierraclub.org
josh.berman@sierraclub.org

VERA PARDEE
726 Euclid Avenue
Berkeley, CA  94708
(858) 717-1448
pardeelaw@gmail.com

*Counsel for Petitioner Sierra Club*

ADINA H. ROSENBAUM
ALLISON M. ZIEVE
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C.  20009
(202) 588-1000
arosenbaum@citizen.org

*Counsel for Petitioner Public Citizen*

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 27(d) and D.C. Circuit Rule 27(a)(2), I hereby certify that the foregoing complies with all applicable format and length requirements, and contains 5,109 words as calculated by Microsoft Word, exclusive of the caption, signature block, and certificates of counsel.

*/s/ Luca Greco*
LUCA GRECO

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to Federal Rule of Appellate Procedure 25(c), I hereby certify that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which automatically sends a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system. John Worthington will be served by email as requested.

*/s/ Luca Greco*
Luca Greco
