NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 26-1037 and consolidated cases

---

U.S. COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

American Public Health Association, et al.,
Petitioners,

v.

U.S. Environmental Protection Agency and Lee M. Zeldin, Administrator,
Respondents.

———————————

Petitions for Review of a Final Rule of the U.S. Environmental Protection Agency

———————————

**EPA's Opposition to Stay Motion**

———————————

Adam R.F. Gustafson
*Principal Deputy Assistant Attorney General*

Robert N. Stander
*Deputy Assistant Attorney General*

Riley J. Walters
*Counsel*

| | |
|---|---|
| *Of counsel* | Sue Chen |
| Gautam Srinivasan | Daniel J. Martin |
| U.S. Environmental Protection Agency | U.S. Department of Justice |
| Office of General Counsel | Environment & Natural Resources Div. |
| Washington, D.C. | 950 Pennsylvania Avenue NW |
| | Washington, D.C. 20530 |

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................... iv

Glossary.................................................................................................... viii

Introduction ...............................................................................................1

Background ................................................................................................2

Standard of Review....................................................................................3

Argument....................................................................................................4

    I.     Petitioners lack standing....................................................................4

         A.     Petitioners forfeited their standing arguments. ..........................4

         B.     Petitioners lack standing from greenhouse-gas emissions..........5

              1.     Petitioners show no imminent injury................................5

              2.     Any injury is neither traceable to the rule nor redressable. ...................................................................6

         C.     Petitioners lack standing from criteria-pollutant emissions. ...................................................................................11

    II.    Petitioners fail to justify a stay.........................................................12

         A.     Petitioners are unlikely to succeed on the merits......................12

               1.     EPA did not violate RFRA. ............................................12

              2.     EPA did not violate substantive due-process rights. .......16

               3.     EPA did not violate procedural requirements. ...............19

         B.     Petitioners face no irreparable harm. ........................................21

         C.     A stay would harm public interest. ...........................................22

Conclusion ...................................................................................................24

Certificates of Compliance and Service...............................................25

## TABLE OF AUTHORITIES

**Cases**

*AFPM v. EPA*,
   937 F.3d 559 (D.C. Cir. 2019)...................................................................13

*Archdiocese of Wash. v. WMATA*,
   897 F.3d 314 (D.C. Cir. 2018)...................................................................13

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) .......................................................................... 13, 14

*Callahan v. N.C. Dep't of Pub. Safety*,
   18 F.4th 142 (4th Cir. 2021).....................................................................18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...............................................................................5, 6

*Clean Air Council v. United States*,
   362 F. Supp. 3d 237, 252 (E.D. Pa. 2019)...............................................17

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
   563 F.3d 466 (D.C. Cir. 2009)....................................................... 6, 7, 10

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
   144 F.4th 296 (D.C. Cir. 2025) ..................................................................8

*Del. Riverkeeper Network v. FERC*,
   895 F.3d 102 (D.C. Cir. 2018)...................................................................16

*Dep't of State v. Munoz,*
   602 U.S. 899 (2024) ...................................................................................16

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989) ........................................................................... 10, 17

*Doe v. Rosa*,
   795 F.3d 429 (4th Cir. 2015).....................................................................18

*Entergy Ark., LLC v. FERC*,
   134 F.4th 576 (D.C. Cir. 2025) ................................................................. 4, 5, 6

*Est. of Phillips v. District of Columbia*,
   455 F.3d 397 (D.C. Cir. 2006)................................................................... 18

*Fontem US, LLC v. FDA*,
   2022 WL 2761393 (D.C. Cir. July 12, 2022)........................................... 22

*Fund for Animals v. Frizzell*,
   530 F.2d 982 (D.C. Cir. 1975)................................................................... 22

*Guertin v. Michigan*,
   912 F.3d 907 (6th Cir. 2019)..................................................................... 18

*Jones v. Kirchner*,
   835 F.3d 74 (D.C. Cir. 2016)...................................................................4, 5

*Kalshiex LLC v. CFTC*,
   119 F.4th 58 (D.C. Cir. 2024) .....................................................................3

*Lead Indus. Ass'n, Inc. v. EPA*,
   647 F.2d 1130 (D.C. Cir. 1980)..................................................................20

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ...................................................................................15

*Lujan v. Defs. of Wildlife*,
   504 U.S.  (1992) ...........................................................................................4

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988) ...................................................................................14

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ........................................................................... 6, 7, 10

*Nat'l Sea Clammers Ass'n v. City of New York*,
   616 F.2d 1222, 1238 (3d. Cir. 1980).........................................................17

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................3

*NRDC v. Wheeler*,
  955 F.3d 68 (D.C. Cir. 2020)...............................................................7

*Olim v. Wakinekona*,
  461 U.S. 238 (1983) ..........................................................................19

*Priests for Life v. HHS*,
  772 F.3d 229 (D.C. Cir. 2014)............................................... 10, 14, 15

*Real Alts., Inc. v. Sec'y of HHS*,
  867 F.3d 338 (3d Cir. 2017) .................................................... 10, 13

*Rochin v. California*,
  342 U.S. 165 (1952) ..........................................................................18

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ..........................................................................11

*Swarthout v. Cooke*,
  562 U.S. 216 (2011) ..........................................................................19

*Tanzin v. Tanvir*,
  592 U.S. 43 (2020) ............................................................................15

*Toledo Area AFL-CIO Council v. Pizza*,
  154 F.3d 307 (6th Cir. 1998) .............................................................14

*Trump* v. *CASA, Inc.*,
  606 U.S. 831 (2025) ..........................................................................23

*United States v. Windsor*,
  570 U.S. 744 (2013) ..........................................................................19

*U.S. Navy SEALs 1-26 v. Biden*,
  27 F.4th 336 (5th Cir. 2022)..............................................................15

vi

*Viasat, Inc. v. FCC*,
  47 F.4th 769 (D.C. Cir. 2022) ...................................................................6

*Village of Bensenville v. FAA*,
  457 F.3d 52 (D.C. Cir. 2006)...................................................................15

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985)................................................................21

**Statutes**

42 U.S.C. § 2000bb-1(a) ...........................................................................13

42 U.S.C. § 2000bb-1(c) ...........................................................................15

42 U.S.C. § 7521(a)(1)..........................................................................2, 21

42 U.S.C. § 7607(d)(7)(B) ........................................................................13

42 U.S.C. § 7607(d)(8)...............................................................................21

**Federal Registers**

74 Fed. Reg. 66496 (Dec. 15, 2009) ..........................................................2

91 Fed. Reg. 7686 (Feb. 18, 2026) ............................................ 2, 3, 7, 8, 9, 11, 18

## GLOSSARY

| | |
|---|---|
| EPA | U.S. Environmental Protection Agency |
| Mot. | Petitioners' Mot. to Stay the Repeal Rule Pending Review |
| Resp. to Comments | Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act: Response to Comments, attached as Exhibit 14 to EPA's Opp. To Complete the Admin. Rec. (June 12, 2026) |
| RFRA | Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-1 *et seq.* |

## INTRODUCTION

This dispute arises from a deregulatory action under the Clean Air Act. After concluding that it lacks statutory authority to regulate vehicle greenhouse-gas emissions based on global climate-change concerns, EPA repealed its standards for those emissions. Petitioners do not contest that conclusion.

Instead, they press exceedingly far-fetched claims under the Religious Freedom Restoration Act and the Fifth Amendment: Petitioners insist that if EPA does not further restrict the types of vehicles automakers may sell, then the vehicle-driving public will emit more greenhouse gases, which may someday burden Petitioners' religious activity by making it "too hot…to walk safely to synagogue," and may deprive them of a substantive due-process right "to enjoy 'terrestrial existence' in health." Petitioners also assert the more prosaic claim that EPA failed to respond to comments.

This Court can quickly deny the stay motion. To begin, Petitioners lack standing, for their alleged future harms are too attenuated to be caused by the rule and are not redressable.

At any rate, Petitioners are unlikely to succeed on the merits. EPA's rule does not even regulate them, let alone substantially burden their religious exercise or deprive them of a nonexistent right to compel the government to give them a "'terrestrial existence' in health." The downstream ripple effects of an agency's

1

deregulation of third parties are not the kinds of impacts that can support RFRA or substantive due-process claims. And neither RFRA nor substantive due process can be used to force the government to regulate others here. Finally, EPA reasonably responded to Petitioners' comments.

Petitioners also fail to show irreparable harm. Their alleged harms are neither certain nor great. And by waiting months before moving for a stay, Petitioners discredited their professed need for immediate relief. Meanwhile, a stay would harm the government by preventing it from implementing a major policy and carrying out its statutory responsibilities. It would also unleash regulatory chaos in the auto industry and beyond.

## BACKGROUND

The Clean Air Act authorizes EPA to regulate emissions from new motor vehicles "which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). EPA lacks authority to regulate emissions failing this requirement.

In 2009, the agency made an endangerment finding for greenhouse-gas emissions from new motor vehicles. 74 Fed. Reg. 66496 (Dec. 15, 2009). It later issued various greenhouse-gas emission standards for these vehicles. 91 Fed. Reg. 7686, 7696/1 n.35 (Feb. 18, 2026). Earlier this year, EPA finalized a rule—under

review here—that (1) rescinded the endangerment finding and (2) repealed the associated greenhouse-gas standards. *Id.* at 7686/1.

EPA rescinded the finding because Section 7521(a) does not authorize regulation of vehicle greenhouse-gas emissions in response to global climate-change concerns. *Id.* at 7688/2, 7710/3-11/2. EPA also showed, through modeling, that elimination of greenhouse-gas emissions from all U.S. motor vehicles would have negligible effect on global temperatures and sea levels. *See id.* at 7730/1-3.

Petitioners challenged the rule on February 18, 2026. They lodged their stay motion on May 20, though it was not filed until June 17.

## STANDARD OF REVIEW

"A stay pending appeal is an 'extraordinary' remedy." *Kalshiex LLC v. CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024). Petitioners must (1) make a "strong showing" that they are "likely to succeed on the merits"; (2) show that without a stay they will be "irreparably injured" before the litigation concludes; (3) show that a stay will not "substantially injure" other interested parties; and (4) show that the "public interest" favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The last two factors merge because the government is a party. *Id.* at 435.

# ARGUMENT

## I.    Petitioners lack standing.

To establish Article III standing, Petitioners must show that they suffer a concrete and particularized injury that is "actual or imminent," fairly traceable to the challenged rule, and redressable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Because Petitioners are not the object of regulation, standing is "substantially more difficult" to show. *Id.* at 562.

Petitioners forfeited their standing arguments by barely addressing the issue. Regardless, their apparent theory of standing—that the challenged rule increases both greenhouse-gas and non-greenhouse-gas emissions, which will burden their religious practices and harm their health—fails: Any injury from greenhouse-gas emissions is not imminent. And rather than trace any injury to the rule, Petitioners gesture toward climate change writ large. They also fail to show that their alleged injury is redressable. Similarly, any injury from non-greenhouse-gas emissions is neither traceable to the rule nor redressable.

### A.    Petitioners forfeited their standing arguments.

Petitioners must make "arguments and cite evidence" that establish standing. D.C. Cir. R. 28(a)(7). Failure to do so constitutes forfeiture. *Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016); *Entergy Ark., LLC v. FERC*, 134 F.4th 576, 581 (D.C. Cir. 2025).

Petitioners forfeited their standing arguments: They make no argument for procedural standing and make only a "skeletal" standing argument for their RFRA and substantive due-process claims. *Entergy*, 134 F.4th at 580. The Court does not "repackage merits arguments as support for a petitioner's standing." *Id.* at 581-82; *see* Mot. 6-7 (cross-referencing merits arguments). Nor can Petitioners dump voluminous declarations on respondents and the Court, and make them nose around, like "pigs[] hunting for truffles," to unearth any relevant facts. *Jones*, 835 F.3d at 83; *see* Mot. 7 (citing Sperling, Wilson, Jacobsen, Running, and Pinsky declarations in almost their entirety).

### B.    Petitioners lack standing from greenhouse-gas emissions.

### 1.    Petitioners show no imminent injury.

For an injury to satisfy Article III, it must be actual or imminent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Petitioners do not contend that their alleged injuries—harm to religious exercise and health—are actual. Mot. 6. That leaves imminence, which requires threatened injuries to be "*certainly impending.*" *Clapper*, 568 U.S. at 409.

Petitioners face no imminent injury. Though they say harm is "certain," their declarants avoid going that far. Mot. 17, 26-27. At most, they opine that more greenhouse gases will someday "increase the risk" of harm. Wilson Decl. ¶21; *see* Pinsky Decl. ¶20 (more pollution will "increase the chance" of asthma).

5

Increased risk of harm, however, refers to high*er* probability of harm compared to the status quo. It is not the very high probability required of "*certainly impending*" harm (or even "substantial risk" of harm). *Clapper*, 568 U.S. at 409, 414 n.5; *see Viasat, Inc. v. FCC*, 47 F.4th 769, 779 (D.C. Cir. 2022) (probability too low to be certainly impending). Instead, Petitioners must show "both that the risk is substantial and that the challenged action substantially increases it." *Entergy*, 134 F.4th at 583. Increased probability of harm at some point in the future is not imminent.

*Massachusetts v. EPA* cannot save Petitioners. For one thing, Petitioners are not states, so the "special solicitude" rationale is inapposite here. 549 U.S. 497, 520 (2007); *see Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 476-77 (D.C. Cir. 2009) (*CBD*). For another, the state's injury was procedural in nature, linked to a specific loss of its coastal property. *Massachusetts*, 549 U.S. at 517-20, 522-23. Whether increasing sea levels were certainly impending in *Massachusetts* says nothing about whether Petitioners have shown that their alleged religious and health harms are certainly impending.

**2.    Any injury is neither traceable to the rule nor redressable.**

Petitioners cannot show traceability or redressability. Their theory is that, after EPA's deregulation, automakers will change their designs, the public will buy more higher-emitting vehicles, and more greenhouse-gas emissions will lead to

more heat waves and other climate events that will make it "too hot…to walk safely to synagogue" and deprive them of a "'terrestrial existence' in health." Mot. 7, 9-10, 13-21.

To prevail, they need to tie their alleged injuries not just to greenhouse-gas emissions, which requires overcoming the insurmountable problem that they "cannot establish" climate-change standing "on traditional terms." *Massachusetts*, 549 U.S. at 540 (Roberts, C.J., dissenting). They would need to specifically tie those injuries to emissions *attributable to EPA's rule*. And because Petitioners are private parties, they are held to ordinary traceability and redressability standards. *CBD*, 563 F.3d at 476-77.[1]

**a.** The causal chain is missing several crucial links. Petitioners speculate about increased greenhouse-gas emissions. Mot. 7. The rule does not require automakers to alter their preexisting designs. *See* 91 Fed. Reg. at 7706/3. Rather, any additional emissions will turn on third-party decisions—not only what kind of vehicles automakers will sell, but more importantly, how much vehicle owners (the actual greenhouse-gas emitters) will drive. Petitioners' causation theory thus impermissibly relies on "speculation" that third parties "might act in a certain way in the future." *CBD*, 563 F.3d at 479.

---

[1] *Cf. NRDC v. Wheeler*, 955 F.3d 68 (D.C. Cir. 2020) (finding standing for private party based on ownership of coastal property rather than more attenuated harms).

Petitioners also fail to tie any increased emissions to higher temperatures and other climate events. Climate change is a complex phenomenon involving many factors and their interactions. 91 Fed. Reg. 7714/1. Global climate-change concerns involve causal relations that are "too uncertain, conjectural, remote, and convoluted by intervening and confounding factors." *Id.* at 7715/2. Petitioners do not trace the threads in this tangled web to connect atmospheric greenhouse gases with higher temperatures or more frequent heat waves. *See* Mot. 7 (simply citing lengthy declarations and stating that increased emissions will "worsen Petitioners' injuries from air pollution and climate change"); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 144 F.4th 296, 314 (D.C. Cir. 2025) (no causation when plaintiffs "speak generally of the harm to climate-imperiled species and habitats without addressing how those harms flow from the greenhouse gas emissions associated with the wells they challenge").

Even if Petitioners could trace climate effects to greenhouse-gas emissions generally, they would still fall short. Any injury must be caused by greenhouse-gas emissions attributable to the rule. What does not count are all other greenhouse-gas emissions, such as future emissions from sources other than new motor vehicles and emissions predating the rule. *See* Wilson Decl. ¶6 ("[t]he Repeal Rule certainly did not cause petitioners' past heat or climate harm exposure").

8

Yet Petitioners conflate the effects of those other emissions with effects from the rule. They highlight how climate events "have disrupted"—past tense—their religious exercise and harmed their health. Mot. 11; *e.g.*, Running Decl. ¶¶30, 32, 45; S.A. Decl. ¶11; M.D. Decl. ¶9l; A.F. Decl. ¶12. But those events predate the rule and could not have been caused by it. And given that greenhouse gases persist in the atmosphere, Mot. 26, Petitioners need to—but do not—show that any future disruption or harm is caused by the rule, rather than by past greenhouse gases that hung around (not to mention future missions from non-vehicle sources). Nor do Petitioners show that it is emissions attributable to the rule that turn a legally permissible hot day into one that is unconstitutionally hot. Besides, EPA concluded, and Petitioners do not dispute, that greenhouse-gas emissions attributable to the rule have only negligible impact on global temperatures and sea levels, meaning they do not cause ultra-hot *local weather* that makes it too hot for Petitioners to walk to synagogue where they live. 91 Fed. Reg. at 7729/1-3.[2] So they cannot blame any future harm on the rule.

**b.** Any alleged injuries are not redressable. First, the remedy Petitioners seek—an order requiring EPA to regulate third-party automakers—is not available

---

[2] Petitioners cannot contend that a small temperature increase has a disproportionate effect on climate change: "[E]ach additional unit" of greenhouse gases emitted has "about the same effect on warming" and thus harms the public by "about the same amount." Wilson Decl. ¶12; *see* Running Decl. ¶50.

for RFRA and substantive due-process violations. *See Priests for Life v. HHS*, 772 F.3d 229, 246 (D.C. Cir. 2014) ("an adherent may not use a religious objection to dictate the conduct of the government or of third parties."), *vacated and remanded on other grounds*, 578 U.S. 403 (2016) (per curiam); *Real Alts., Inc. v. Sec'y of HHS*, 867 F.3d 338, 364 (3d Cir. 2017) ("individuals cannot use RFRA to compel the Government to structure its relations with a third party in a certain way."); *cf. DeShaney v. Winnebago Cnty Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("nothing in…the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors").

Second, EPA's conclusion, which Petitioners do not dispute, is that by 2050, only a negligible temperature increase is attributable to U.S. vehicle greenhouse-gas emissions. Restoring the standards is unlikely to redress Petitioners' complaint that the rule makes it too hot to do anything or denies them substantive due-process rights: Petitioners have not shown how a negligible temperature decrease by 2050 could meaningfully affect their ability to walk to synagogue. Such "a small incremental step" is not enough for redressability. *Massachusetts*, 549 U.S. at 526; *see CBD*, 563 F.3d at 477-78.

Finally, Petitioners' own declarant demolishes redressability: "Eliminating additional GHG pollution is the only way to limit the amount of harm" that Petitioners will face. Running Decl. ¶¶7, 27. Because the repealed standards did

not regulate other sources of domestic greenhouse gases (like power plants) or any international emissions, restoring those standards would not *eliminate* additional emissions, the *only* way to limit harm to Petitioners.

Petitioners, in short, cannot show causation or redressability on their RFRA and substantive due-process claims.[3]

### C.    Petitioners lack standing from criteria-pollutant emissions.

Petitioners also try to tether their substantive due-process claim to non-greenhouse-gas emissions, contending that their health is harmed by exposure to criteria pollutants like particulate matter. Mot. 13-21; E.S. Decl. ¶¶3-6. But they again fail on causation and redressability.

Under the repealed greenhouse-gas standards, which did not regulate criteria pollutants, automakers used various controls to reduce greenhouse-gas emissions. One side benefit of some controls (and thus of the standards) was that they reduced certain criteria-pollutant emissions. But when repealing the greenhouse-gas standards, EPA concluded, and Petitioners do not dispute, that the rule's impact on criteria pollutants was "small in absolute terms." 91 Fed. Reg. at 7708/3. Meanwhile, EPA has standards, still in force, that regulate vehicle criteria-pollutant emissions. *E.g.*, *id.* at 7745/3.

---

[3] Because Petitioners lack a cognizable injury, they also lack standing for their procedural claims. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

Petitioners' argument for criteria-pollutant standing fails on traceability. *See* Mot. 15, 17. They do not tie their alleged criteria-pollutant injuries to the modest mass of criteria-pollutant emissions attributable to the rule, as opposed to emissions attributable to the criteria-pollutant standards.

Petitioners also fail on redressability. They say that the rule prevents higher-emitting gas vehicles from being replaced with cleaner electric vehicles. E.S. Decl. ¶8; Mot. 19-21. But the repealed standards did not require that electric vehicles be evenly distributed across the country. So it is anyone's guess whether restoring those standards would mean that the gas vehicles in Petitioners' neighborhoods—and owned by third parties—would be replaced by electric vehicles. Petitioners have not shown that they would.

## II.    Petitioners fail to justify a stay.

### A.    Petitioners are unlikely to succeed on the merits.

#### 1.    EPA did not violate RFRA.

Petitioners are unlikely to succeed on their claim that EPA substantially burdened their religious practices under RFRA. They urge that EPA's deregulation will allow the public to drive higher-emitting vehicles, which will increase global temperatures, which will eventually make the world too hot for them to walk to synagogue or otherwise practice their religions. Mot. 8-12. This grievance, however, is not the kind of problem that RFRA protects against. That statute

12

protects against government regulation of a person that burdens that person's religious exercise; it imposes no obligation on the government to regulate third parties. Here, there is no substantial burden and no available remedy because EPA did not affirmatively act on Petitioners; it simply stopped regulating someone else.

As a threshold matter, Petitioners' RFRA claim fails for lack of exhaustion. The Clean Air Act's mandatory exhaustion rule, 42 U.S.C. § 7607(d)(7)(B), limits judicial review to issues raised with reasonable specificity during the rulemaking. This rule applies even when Petitioners challenge a Clean Air Act action under a different statute. *See AFPM v. EPA*, 937 F.3d 559, 596 (D.C. Cir. 2019) (per curiam) (Endangered Species Act). Because Petitioners failed to exhaust their RFRA claim, *infra* Arg. § II.A.3, this Court cannot review it.

Even without that obstacle, Petitioners still would be unable to show likelihood of success. Under RFRA, the federal government cannot "substantially burden a person's exercise of religion," even if the burden results from laws of general applicability. 42 U.S.C. § 2000bb-1(a). Substantial burden requires government coercion or substantial pressure on Petitioners to modify their behavior and violate their beliefs. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014); *Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 333 (D.C. Cir. 2018). In addition, religion must be "directly implicated by federal action." *Real Alts.*, 867 F.3d at 360 (collecting cases). For example, under RFRA, the

government cannot require anyone to cover insurance for contraceptives that conflict with their religious beliefs. *See Hobby Lobby*, 573 U.S. at 735. RFRA thus works by shielding individuals from *affirmative* government actions that substantially burden their religious practices.

Declining to regulate third parties as Petitioners prefer does not substantially burden Petitioners. That move, like the government's management of its own internal affairs, does not implicate free-exercise concerns. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452 (1988) ("government simply could not operate if it were required to satisfy every citizen's religious needs and desires."); *Priests for Life*, 772 F.3d at 248 (quoting *Lyng*'s view that free-exercise right does not capture "incidental effects" of government programs that "may make it more difficult to practice certain religions" but do not coerce individuals to act contrary to their beliefs); *cf. Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 319 (6th Cir. 1998) (First Amendment protects only right "to be free from government action and does not create 'positive' rights-requirements that the government act").

Here, EPA took no affirmative action against Petitioners. The challenged rule—which deregulates automakers—does not directly implicate religion. It does

not even regulate Petitioners or otherwise apply to them—a distinction they ignore. Mot. 8-10. Deregulation here thus does not substantially burden Petitioners.[4]

Relatedly, the remedy Petitioners seek is not available under RFRA. Because RFRA is violated only if the government regulates them, the remedy under RFRA is to remove that burden, often through a religious exemption from the challenged law. *See, e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) (vaccine mandate); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) (contraceptive mandate).

That is decidedly not the relief Petitioners seek. They want an order requiring EPA to regulate automakers and limit the public's choice of vehicles— nationwide. Petitioners offer no support for that breathtaking expansion of RFRA remedies. Nor is such an expansion "appropriate relief" in any sense of the term. 42 U.S.C. § 2000bb-1(c). "Appropriate" is "inherently context dependent." *Tanzin v. Tanvir,* 592 U.S. 43, 49 (2020). As this Court has cautioned, RFRA is not a mechanism for adherents to use religious objections to dictate government or third-party conduct. *Priests for Life*, 772 F.3d at 246. Indeed, if Petitioners were right, RFRA could be used to commandeer all kinds of government regulation. No doubt

---

[4] It is vehicle owners who act affirmatively by emitting greenhouse gases. But their conduct cannot possibly be imputed to EPA. *See Village of Bensenville v. FAA*, 457 F.3d 52, 62 (D.C. Cir. 2006). By deregulating, EPA does not mandate or give "significant encouragement" for automakers to sell higher-emitting vehicles or for consumers to buy them. *Id.* at 64. Nor is mere "acquiescence" enough. *Id.* at 67-68.

15

reducing speed limits nationwide would on average make it safer to drive to church, as would prompt plowing of all roads after blizzards. But RFRA does not allow adherents to force the government to change speed limits or buy more snowplows. The Court should reject Petitioners' attempt to commandeer RFRA to further their climate-change agenda.

### 2.    EPA did not violate substantive due-process rights.

**a.** Petitioners assert a substantive due-process "right to enjoy 'terrestrial existence' in health." Mot. 13. They imagine this includes the right to "an atmosphere that supports life," to be "free from danger," and to be "free from hurt." *Id.* at 14-16. EPA's deregulation supposedly violates these rights, depriving them of life and liberty. This claim is unlikely to succeed.

To start, Petitioners lack any substantive due-process right—"deeply rooted in this Nation's history and tradition"—to force the government to give them a "terrestrial existence in health" or a particular kind of atmosphere. *Dep't of State v. Munoz*, 602 U.S. 899, 911 (2024). They identify no legal tradition recognizing a right to be free from climate change or to the environment they prefer. Indeed, courts—including this one—have rejected claims to fundamental rights in a "healthy environment," a "life-sustaining climate system," or a "pollution-free environment." *Del. Riverkeeper Network v. FERC*, 895 F.3d 102, 108 (D.C. Cir. 2018), *overruled on other grounds*, 964 F.3d 1 (D.C. Cir. 2020); *Clean Air Council*

16

*v. United States*, 362 F. Supp. 3d 237, 252 (E.D. Pa. 2019); *Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222, 1238 (3d. Cir. 1980), *vacated on other grounds*, 453 U.S. 1 (1981).

More broadly, the due-process clause does not require the government to affirmatively protect anyone. *See DeShaney*, 489 U.S. at 195 (due-process clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security"). That is true even when government aid "may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196. EPA thus has no constitutional duty to give Petitioners "certain minimal levels of safety." *Id.* at 195; *see* Mot. 13-16.

None of the narrow exceptions to this no-duty rule applies here. First, under the Fifth and Eighth Amendments, the government has some duty for the safety of prison inmates and others in its custody. *DeShaney*, 489 U.S. at 200; *see* Mot. 13, 16 (citing cases). To state the obvious, Petitioners are not prison inmates, so they cannot invoke this exception. And though they urge that EPA's "exclusive federal control over air pollution" amounts to custody, Mot. 17, that view would mean that every person in this country is in EPA's custody and thus the government would owe everyone some duty of safety. That outcome would flout the due-process clause and *DeShaney*.

17

Second, the government could violate substantive due process if it affirmatively creates danger, *Doe v. Rosa*, 795 F.3d 429, 436 (4th Cir. 2015), or acts or fails to act in a way that "shock[s] the contemporary conscience," *Est. of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006); *see Rochin v. California*, 342 U.S. 165, 172-73 (1952); *Guertin v. Michigan*, 912 F.3d 907, 933 (6th Cir. 2019) ("taking affirmative steps to systematically contaminate a community through its public water supply with deliberate indifference"); Mot. 16.

But EPA took no affirmative action against Petitioners. It simply stopped regulating automakers. *See Callahan v. N.C. Dep't of Pub. Safety*, 18 F.4th 142, 147 (4th Cir. 2021) ("the bar for what constitutes an 'affirmative act' is high"). Anyway, EPA created no danger: Petitioners fail to contest EPA's conclusion that the repealed standards had any meaningful impact on public health and welfare. 91 Fed. Reg. at 7728/3. Nor did EPA remotely shock the conscience: EPA concluded that it lacked statutory authority to regulate vehicle greenhouse-gas emissions in response to global climate-change concerns and repealed the greenhouse-gas standards—which simply returned EPA to its position before 2009. Petitioners may prefer to keep the standards, but that is not a due-process violation.

**b.** Petitioners also claim that EPA's deregulation makes it harder for Hawaii to meet emission targets it had agreed to in settlement, thereby depriving Hawaii-based Petitioners of a "state-law-derived" liberty interest. Mot. 18-21.

18

This claim is unlikely to succeed because to the extent Petitioners have any interest in the settlement, it is untouched by the rule. This is not like *United States v. Windsor*, where federal law, by displacing state-conferred protection, directly "injure[s] those whom the State…sought to protect[.]" 570 U.S. 744, 775 (2013). EPA's rule repeals federal standards. It does not disturb any state interest that Hawaii seeks to protect. Nor does it invalidate Hawaii's obligation to meet specific emission targets—the state still must do what it agreed to do.

### 3.    EPA did not violate procedural requirements.

Petitioners are unlikely to succeed on their claim that EPA failed to respond to comments about RFRA and substantive due process. Mot. 21-24. They cannot establish the prerequisite for their procedural claim. And EPA responded to Petitioners' substantive-due process comments, but was not required to address RFRA because nobody raised that issue.

First, no procedural due-process violation exists because the necessary precondition, a violation of substantive due-process rights, has not been met. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *supra* Arg. § II.A.2 And a violation of a statutory or regulatory procedure alone does not abridge due process. *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983); *contra* Mot. 22. So EPA's alleged procedural error under the Clean Air Act cannot amount to a procedural due-process violation.

Second, Petitioners are unlikely to succeed on their statutory procedural claim because EPA responded to their comments. *Contra* Mot. 22-24. Those comments objected to the rule for violating substantive due process. *E.g.*, *id.* Ex. 6. EPA reasonably responded to that concern, explaining that the rule "would have no material impact on public health or welfare." Resp. to Comments 200-01; *see id.* at 210. As for Petitioners' contention now that EPA "ignore[d]…its constitutional burden," Mot. 24, the agency noted that their comments offered no analysis for why the rule is unconstitutional and that their constitutional claims in another climate lawsuit had been dismissed with prejudice. Resp. to Comments 310-11; *contra* Mot. 21, 23-24. Mere disagreement with Petitioners' views is not a procedural violation.

Further, Petitioners did not specifically comment on freedom of religion, the First Amendment, or RFRA. *Contra* Mot. 22. Neither did the other 572,000 or so comments. Petitioners mentioned religion in their comments only when (1) noting that they are part of a religious organization, *id.* Exs. 11-B, 11-C, and (2) stating that EPA must "not deprive children of their fundamental constitutional rights, including…the practice and transmission of cultural and religious traditions," *id.* Ex. 6 at 1-2. EPA was not required to ferret out the basis of these comments and respond. *See Lead Indus. Ass'n, Inc. v. EPA*, 647 F.2d 1130, 1167 (D.C. Cir. 1980).

Anyway, any procedural error is harmless. Under the Clean Air Act, a rule can be invalidated only if a procedural error is so "serious" and centrally relevant that there is "substantial likelihood" that the rule would have been "significantly changed" without the error. 42 U.S.C. § 7607(d)(8). Not so here: EPA concluded—and Petitioners do not dispute—that it lacks authority under the Act to regulate vehicle greenhouse gases. Without that authority, EPA could not have kept its standards. *Id.* § 7521(a)(1); *contra* Mot. 24.

**B.    Petitioners face no irreparable harm.**

Petitioners must show irreparable harm to justify a stay, and they have not done so. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). An irreparable harm "must be both certain and great." *Id.* It must have such "*imminence*" that there is a "clear and present" need for equitable relief. *Id*. Contrary to their claim, Petitioners' alleged harm is neither certain nor great. Mot. 25-28. And their delay in seeking relief belies any urgency.

To begin, Petitioners face no certainly impending harm or even a substantial risk of harm. *Supra* Arg. § I.B.1. The best they can manage is a vague sense that they may face a higher probability of harm—which is neither certain nor great. That alone defeats Petitioners' irreparable-harm claim.

And Petitioners waited months before seeking relief: They sued on February 19, yet did not seek a stay until May 20. And because their request for an overlong

21

motion was still pending, Petitioners could only lodge their stay motion, which was not filed until June 17—four months after they entered the case. D.C. Cir. R. 27(h); Mot. to Exceed Word Limits (May 14, 2026); Per Curiam Order (June 17, 2026); *compare with West Virginia v. EPA*, Case No. 24-1120 (D.C. Cir.) (first stay motion filed four days after initial petition and ruling on all stay motions came two months later).

This Court has found far shorter delays "inexcusable." *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (per curiam) (44 days). Months-long delays, moreover, undercut a stay applicant's irreparable-harm claim. *See Fontem US, LLC v. FDA*, 2022 WL 2761393, at *1 (D.C. Cir. July 12, 2022) (two-month delay "weakened…claim of irreparable harm"). Had Petitioners really thought that "what happens in the coming *weeks* will irretrievably lock in" future emissions, Sperling Decl. ¶17 (emphasis added); Mot. 26, surely they would not have waited *months* before seeking relief.

### C.   A stay would harm public interest.

The balance of equities favors denying the stay motion. *Contra* Mot. 28-30. Petitioners have not shown any great harm that will befall them during merits litigation.

But a stay would prevent the government from implementing a major policy, one that affects the auto sector and industries up and down the supply chain.

Whenever the government is enjoined from advancing its policies and carrying out its responsibilities under "statutes enacted by representatives of [the] people, it suffers a form of irreparable injury." *Trump* v. *CASA, Inc.*, 606 U.S. 831, 861 (2025) (Roberts, C.J., in chambers). All the more so when the relief Petitioners seek—staying the entire rule—is disproportionate to its negligible effects on them during litigation.

A stay would also wreak havoc on others. To comply with the resurrected standards, automakers would have to change their plans for all the model-year fleets that they are now producing or planning. That regulatory whiplash would incur enormous costs and sow disruption, which would flow down to consumers and other sectors of the nation's economy. *See generally* Private Resp-Intervenors' Opp. to Stay Motion (June 29, 2026), Ex. D ¶12; *id.* Ex. E ¶¶10-12; Brief of the Alliance for Automotive Innovation as *Amicus Curiae* (lodged June 29, 2026).

What automakers and the public need is regulatory certainty. Rather than staying the rule, the Court should order the parties to promptly propose briefing schedules and format. *See* Order, *West Virginia*, Case No. 24-1120 (July 19, 2024) (denying stay motion and ordering proposed briefing schedules in 14 days); Order, *North Dakota v. EPA*, Case No. 24-1119 (D.C. Cir. Aug. 6, 2024) (same). Merits briefing should begin without further delay.

## CONCLUSION

The Court should deny the motion.

Submitted on June 29, 2026.

*Of counsel*
Gautam Srinivasan
U.S. Environmental Protection Agency
Office of General Counsel
Washington, D.C.

Adam R.F. Gustafson
*Principal Deputy Assistant Attorney General*

*/s/ Robert N. Stander*
Robert N. Stander
*Deputy Assistant Attorney General*

Riley J. Walters
*Counsel*

Sue Chen
Daniel J. Martin
U.S. Department of Justice
Environment & Natural Resources Div.
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(202) 717-7067 (Stander)
(202) 718-3109 (Walters)
(202) 598-5334 (Chen)
(202) 598-1869 (Martin)
robert.stander@usdoj.gov
riley.walters@usdoj.gov
sue.chen@usdoj.gov
daniel.martin3@usdoj.gov

## CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that this document complies with Fed. R. App. P. 32(a)(5) and (6) because it uses 14-point Times New Roman, a proportionally spaced font.

I also certify that this document complies with D.C. Cir. R. 27(c) because according to Microsoft Word's count, it has 5180 words, excluding the parts of exempted under Fed. R. App. P. 32(f).

Finally, I certify that on June 29, 2026, I electronically filed this document with the Court's CM/ECF system, which will serve each party.

*/s/  Sue Chen*
Sue Chen