CASE NOT YET SCHEDULED FOR ORAL ARGUMENT

**No. 26-1037 (and consolidated cases)**

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN PUBLIC HEALTH ASSOCIATION, ET AL.,

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents.*

**INTERVENOR-RESPONDENT STATES' OPPOSITION TO PETITIONERS' MOTION FOR ABEYANCE PENDING RECONSIDERATION PETITIONS**

RUSSELL COLEMAN
ATTORNEY GENERAL

Matthew F. Kuhn
  *Solicitor General*
Office of the Kentucky
Attorney General
700 Capital Avenue
Suite 118
Frankfort, KY 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for Intervenor*
*Commonwealth of Kentucky*

JOHN B. MCCUSKEY
ATTORNEY GENERAL

Michael R. Williams
  *Solicitor General*
West Virginia Attorney
General's Office
1900 Kanawha Blvd. E
Bldg. 1 Rm. 26E
Charleston, WV 25305
(304) 558-2021
mwilliams@wvago.gov

*Counsel for Intervenor*
*State of West Virginia*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

GLOSSARY.................................................................................................v

INTRODUCTION ........................................................................................1

BACKGROUND...........................................................................................2

STANDARD OF REVIEW ...........................................................................4

SUMMARY OF THE ARGUMENT..............................................................5

I.    Petitioners' motion is untimely ...................................................7

II.   An abeyance would undermine Congress's intent that courts
      conduct speedy review under the CAA........................................9

III.  Petitioners have not shown a clear case of hardship.............13

IV.   Abeyance harms the States.......................................................15

V.    Abeyance would not serve interests of judicial economy .......18

CONCLUSION............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Power Co. v. Costle*,
   636 F.2d 323 (D.C. Cir. 1979)...............................................................11

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
   458 U.S. 592 (1982).................................................................................17

*Am. Lung Ass'n of N.J. v. Kean*,
   871 F.2d 319 (3d Cir. 1989) ...................................................................11

*Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012)..........................................................12, 20

*Ass'n of Battery Recyclers, Inc. v. EPA*,
   No. 12-1028, 2012 WL 2373298 (D.C. Cir. June 25, 2012)...........13

*Atl. Richfield Co. v. U.S. Dep't of Energy*,
   769 F.2d 771 (D.C. Cir. 1984)................................................................20

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,
   630 F.3d 217 (D.C. Cir. 2011).................................................................7

*Clinton v. Jones*,
   520 U.S. 681 (1997)...................................................................................2

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)..................................................................................5

*Dist. Hosp. Partners, L.P. v. Burwell*,
   No. CV 16-528, 2016 WL 3746466 (D.D.C. July 8, 2016)..............20

*EME Homer City Generation, L.P. v. EPA*,
   795 F.3d 118 (D.C. Cir. 2015)................................................................12

*Georgia v. Tenn. Copper Co.*,
   206 U.S. 230 (1907).................................................................................17

*Harrison v. PPG Indus., Inc.*,
   446 U.S. 578 (1980)...................................................................................9

*Hearth, Patio & Barbecue Ass'n v. EPA*,
   11 F.4th 791 (D.C. Cir. 2021)..................................................................3

*Kentucky v. EPA*,
123 F.4th 447 (6th Cir. 2024) ...................................................................14

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936).............................................................4, 5, 6, 15, 18

*Lead Indus. Ass'n, Inc. v. EPA*,
647 F.2d 1184 (D.C. Cir. 1980)..........................................................11, 20

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005).................................................................15

*MCI Telecomms. Corp. v. FCC*,
143 F.3d 606 (D.C. Cir. 1998)....................................................................1

*Mexichem Specialty Resins, Inc. v. EPA*,
787 F.3d 544 (D.C. Cir. 2015)..................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)......................................................................................13

*Nat. Res. Def. Council v. Abraham*,
355 F.3d 179 (2d Cir. 2004) .....................................................................10

*Nat. Res. Def. Council v. Nuclear Regul. Comm'n*,
666 F.2d 595 (D.C. Cir. 1981)...................................................................10

*Nat'l Ass'n of Clean Water Agencies v. EPA*,
734 F.3d 1115 (D.C. Cir. 2013)................................................................14

*Nelson v. James*,
722 F.2d 207 (5th Cir. 1984)......................................................................8

*Nwaneri v. Quinn Emanuel Urquhart & Sullivan LLP*,
No. 21-7005, 2021 WL 6620149 (D.C. Cir. Oct. 6, 2021) .........................8

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983)..................................................................................15

*Utah v. EPA*,
No. 23-1157, 2025 WL 1354371 (D.C. Cir. May 2, 2025)....................4, 5, 19

*Util. Air Regul. Grp. v. EPA*,
744 F.3d 741 (D.C. Cir. 2014)............................................................10, 12

*Virginia v. United States*,
74 F.3d 517 (4th Cir. 1996).......................................................................11

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ......................................................................................17


**Statutes**

42 U.S.C. § 7521 .............................................................................................2

42 U.S.C. § 7607 .........................................................................9, 10, 13, 14


**Rules**

FED. R. APP. P. 26(b) ..................................................................................7, 8

FED. R. CIV. P. 16(b) .......................................................................................7

D.C. CIR. L.R. 27(d)(2) ...................................................................................9


**Other Authorities**

74 Fed. Reg. 66,496 (Dec. 15, 2009) ...........................................................2

91 Fed. Reg. 7686 (Feb. 18, 2026) ...............................................................3

Amanda Shafer Berman,
  *Regime Change and Regulatory Resilience*,
  28 GEO. ENVTL. L. REV. ONLINE 1 (2017).................................................12

Attys. Gen. of the States of W. Va., *et al.*,
  Comment Letter on the Reconsideration of 2009
  Endangerment Finding and Greenhouse Gas Vehicle
  Standards (Sept. 22, 2025) ....................................................................16, 17

Kevin O. Leske,
  *Cleaning Up Jurisdiction: Divining Congressional Intent of
  Clean Air Act Section 307(b)*,
  42 ECOLOGY L.Q. 37 (2015) ......................................................................11

Order,
  *West Virginia v. EPA*, Case No. 24-1120
  (D.C. Cir. July 19, 2024), Doc. No. 2065493.............................................22

S. REP. NO. 101-228 (1989),
  *as reprinted in* 1990 U.S.C.C.A.N. 3385....................................................11

# GLOSSARY

| | |
|---|---|
| CAA | Clean Air Act |
| EPA | Environmental Protection Agency |
| GHG | greenhouse gas |

**INTRODUCTION**

In their untimely motion for abeyance, Petitioners don't show why the Court should halt their own litigation before it starts. While they say they'll be harmed if this case moves forward as usual, they base their claimed hardships on a series of guesses about what EPA *might* do and how the Court *might* respond. Meanwhile, they don't address the actual harms a suspension will impose on the States and the public. Among other things, regulatory uncertainty from the effectively indefinite stay will hamper the affected industries—which will pass the costs of uncertainty on to consumers—and undermine the States' sovereign prerogatives.

Congress designed the Clean Air Act's judicial review process to move fast. Pausing this case would undermine that design, particularly where multiple independent bases—separate and apart from the "futility" issue that Petitioners focus on—support EPA's decision. Even more when EPA "has given no indication that it intends to reconsider its … approach." *MCI Telecomms. Corp. v. FCC*, 143 F.3d 606, 608 (D.C. Cir. 1998). And still more when Petitioners were the ones who launched this litigation to begin with. That all explains why Petitioners can't cite any example of an abeyance in these same circumstances.

Altogether, Petitioners "bear[] the burden of establishing [the stay's] need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), and they haven't carried it. The Court should thus deny the motion.

## BACKGROUND

This case concerns EPA's failed experiment with greenhouse gas vehicle emissions regulation. The Clean Air Act authorizes EPA to regulate emissions from new motor vehicles and engines "which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). Nearly 20 years ago, EPA determined that GHG emissions from motor vehicles contributed to global climate change, which in turn caused surface temperatures to rise, which in turn caused climate conditions that could in turn endanger public health or welfare. Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496 (Dec. 15, 2009). Based on this attenuated causal chain, EPA issued a series of motor-vehicle tailpipe emission standards under Section 7521.

In February 2026, however, based on multiple independent grounds, EPA rescinded this 2009 Endangerment Finding and repealed all greenhouse-

gas mobile emission standards for model years 2012 and beyond. Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act, 91 Fed. Reg. 7686 (Feb. 18, 2026). Among other things, EPA found that new tailpipe standards would be futile because even the complete elimination of all GHG emissions from every vehicle in the United States would have only a de minimis impact on surface temperature. *Id.* at 7691. As to this and its other grounds for rescission, EPA reviewed and responded to hundreds of thousands of comments (including comments from Petitioners here), grappled with relevant and evolving science, and applied an appropriately complete understanding of its statutory obligations under the Clean Air Act.

Many Petitioners filed petitions for reconsideration with EPA, faulting the agency for relying in the final rule on "new modeling" of expected emissions and climate effects. Mot.6-7; *but see, e.g.*, *Hearth, Patio & Barbecue Ass'n v. EPA*, 11 F.4th 791, 807-08 (D.C. Cir. 2021) (explaining that EPA "acted responsibly by taking account of the more recent analysis of the older data used … and by considering the newer data used"). While those petitions have now been pending since April, EPA has not yet convened any reconsideration proceeding. Not even Petitioners earnestly argue that the

3

agency is likely to do so.  Quite the opposite: Petitioners say EPA has "already determined that the petitions' critiques of the futility analysis lack merit," even if that decision hasn't yet been memorialized.  Mot.2; *see also id.* at 3 (noting "EPA's apparent rejection of the reconsideration petitions' objections"); *id.* at 12 (noting that EPA "appears poised to" "disagree[] with Petitioners and den[y] reconsideration").

Still, relying on their doomed petitions for reconsideration, Petitioners now ask this Court to hold their petitions for review in abeyance for at least thirty days.  Once that period runs, Petitioners ask to delay filing motions to govern until after some "reasonable interval."  Mot.16.  Only after those motions are eventually decided would Petitioners be ready to begin engaging with the merits of their own petitions for review.

## STANDARD OF REVIEW

"Whether to hold a case in abeyance is … a matter of discretion and judgment." *Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *1 (D.C. Cir. May 2, 2025) (per curiam).  In exercising that judgment, courts must "be on [their] guard against depriving the processes of justice of their suppleness of adaptation to varying conditions." *Landis v. N. Am. Co.,* 299 U.S. 248, 256

4

(1936).  That's especially so "in cases of extraordinary public moment," like this one.  *Id.*

Petitioners face a heavy burden.  To succeed, they "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [they] pray[] will work damage to some one else."  *Landis,* 299 U.S. at 255.  Courts must also "take into account the optimal use of judicial resources as well as the 'competing interests' of the parties."  *Utah*, 2025 WL 1354371, at *1 (quoting *Landis,* 299 U.S. at 254–55).  And federal courts must always keep top of mind their "virtually unflagging obligation … to exercise the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

## SUMMARY OF THE ARGUMENT

Petitioners' motion is untimely.  Their motion is a procedural motion, and the procedural motions deadline has come and gone.  Thus, the Court can and should summarily deny it.

Even if the Court does reach the merits of Petitioners' motion, it should deny it.

*For one*, the motion conflicts with the CAA's approach to judicial review. Congress wanted fast review for cases under the CAA, likely recognizing that regulations under the Act are simply too important to let linger. The statute also expressly anticipates that petitions for review and administrative petitions for reconsideration will move forward simultaneously.

*For another*, Petitioners have not shown that they will be harmed by allowing this case to proceed in the ordinary course—certainly not a "clear case of hardship." *Landis*, 299 U.S. at 255. At most, they speculate about what *might* happen during the reconsideration proceedings and then what *might* be argued by EPA and then what the Court *might* do in response to those arguments. That's not enough. By Petitioners' own admission, the petitions for reconsideration are unlikely to narrow the issues, and the Court can deal with any record-based complaints when the parties brief the merits.

*Still more*, abeyance will harm the Intervenor States. Continued regulatory uncertainty harms States and their consumers. Higher consumer costs will result as the affected industry prices in that ongoing regulatory uncertainty. Beyond that, States have a sovereign interest in being free from continued EPA overreach. Those harms are ongoing and substantial.

6

*Lastly*, Petitioners haven't even shown that staying this case will serve the interests of judicial economy. The petitions for reconsideration are unlikely to narrow the issues. And the other independent bases for the rescission mean that the Court may never need to reach the futility issues, anyway.

## I.   Petitioners' motion is untimely.

Petitioners' motion is an untimely "procedural motion[]." *See* D.C. Cir. Handbook of Prac. and Internal Proc. at 29. The Court originally said that procedural motions were due March 20. *See* Doc. No. 2159568. The Court later extended that deadline to May 20. *See* Doc. No. 2169939. Yet Petitioners filed this motion on July 29—more than two months after the extended deadline. *See* Doc. No. 2185720.

The Court "may permit an act to be done after" a deadline in "its order" for "good cause." FED. R. APP. P. 26(b). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite its diligence." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011) (cleaned up) (addressing related standard under Federal Rule of Civil Procedure 16(b)).

Petitioners don't even acknowledge that their filing is untimely, let alone show good cause. Nor could they. The motion is based on facts and circumstances that were known to everyone back in April 2026, back when the administrative petitions for reconsideration were filed. Perhaps they wish to emphasize some specific facts that they now feel they overlooked back then. But "inattendance" does not establish good cause under Rule 26(b). *Nelson v. James*, 722 F.2d 207, 208 (5th Cir. 1984) (cleaned up). So "[e]ven giving [them] the benefit of [their] [*un*]proffered justifications," *Nwaneri v. Quinn Emanuel Urquhart & Sullivan LLP*, No. 21-7005, 2021 WL 6620149, at *1 (D.C. Cir. Oct. 6, 2021), this motion is too late.

Really, this motion is merely an attempt to relitigate motions they already lost. Back in April, Petitioners asked to defer "entry of any order calling for merits briefing proposals for 90 days." Doc. No. 2169572, at 2; *see also* Doc. No. 2169080 (moving for similar requests). They based those requests on the same premise here—that EPA needed to resolve the pending petitions for reconsideration before the parties could move on to the merits. The Court rejected that broad request, granting only an alternative request that it hold off on any order directing briefing proposals until after procedural motions were done. *See* Doc. No. 2169939. In contrast to its handling of a

8

motion to sever addressed in the same order, *id.* at 2, the Court did *not* say that its rejection of Petitioners' longer, preferred extension request was "without prejudice." And if Petitioners wanted the Court to reconsider, then the Local Rules suggest that they should have moved for the relief much sooner than two months after the decision. *Cf.* D.C. CIR. L.R. 27(d)(2) (providing that any motion for reconsideration from a clerk's order on a procedural motion should be filed within 10 days).

The Court should not reach the merits of Petitioners' motion. It should instead summarily deny it as untimely.

## II. An abeyance would undermine Congress's intent that courts conduct speedy review under the CAA.

Repeatedly, Congress has signaled that it doesn't want to delay review of rules under the CAA. Directing challengers to file petitions for review of nationally applicable regulations in this Court is the first sign, as "[t]he most obvious advantage of direct review by a court of appeals is the time saved compared to review by a district court, followed by a second review on appeal." *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 593 (1980). Challengers then have only 60 days from rule promulgation to file, much shorter than the usual six years from the date of accrual that's afforded under the Administrative Procedure Act. *See* 42 U.S.C. § 7607(b)(1). "This time limit, like other similar

limitations, serves the important purpose of imparting finality into the administrative process, thereby conserving administrative resources and protecting the reliance interests of regulatees who conform their conduct to the regulations." *Nat. Res. Def. Council v. Nuclear Regul. Comm'n*, 666 F.2d 595, 602 (D.C. Cir. 1981) (discussing similar 60-day limitation under the Hobbs Act). And once the petition for review is filed, review is limited to a tightly defined record, further greasing the wheels of resolution. *See* 42 U.S.C. § 7607(d)(7)(A). Relatedly, any stay of a rule's effectiveness may not "exceed three months." *Id.* § 7607(d)(7)(B).

Consistent with these provisions, petitions for reconsideration under the CAA are *not* supposed to slow judicial review down, either. Section 7607(b)(1) "provide[s] for the attendant *procedure* for that reconsideration, including its interplay with the right to judicial review." *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 203 n.11 (2d Cir. 2004). And that subsection stresses that a request for reconsideration "shall not affect the finality" of an otherwise final rule or "extend the time within which a petition for judicial review of such rule … may be filed." Congress intended to "overrule" the rule that otherwise applies in this court—that petitions for reconsideration deprive the Court of jurisdiction by rendering the subject rule non-final. *Util. Air Regul. Grp. v.*

10

*EPA*, 744 F.3d 741, 746 (D.C. Cir. 2014).  More broadly, it wanted "to assure that the pendency of a petition for reconsideration does not delay [judicial] review."  S. REP. NO. 101-228, at 372 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 3385, 3755; *see also, e.g.*, Kevin O. Leske, *Cleaning Up Jurisdiction: Divining Congressional Intent of Clean Air Act Section 307(b)*, 42 ECOLOGY L.Q. 37, 63 (2015) ("Congress wanted all challenges to occur immediately so as not to delay the finality of the EPA regulation or final action.").

In short, Congress sent a clear message:  "The judicial review provisions as well as other features of the Clean Air Act Amendments set a tone for expedition."  *Ala. Power Co. v. Costle*, 636 F.2d 323, 344 (D.C. Cir. 1979); *see also Lead Indus. Ass'n, Inc. v. EPA*, 647 F.2d 1184, 1186 (D.C. Cir. 1980) ("[T]here is evidence in the statute of a strong congressional desire that the procedure for establishing air quality standards be completed expeditiously and with considerable finality."); *accord Virginia v. United States*, 74 F.3d 517, 525 (4th Cir. 1996) ("Congress wanted speedy review of EPA rules and final actions in a single court."); *Am. Lung Ass'n of N.J. v. Kean*, 871 F.2d 319, 328 (3d Cir. 1989) ("[T]he Clean Air Act mandates speedy action."). Unsurprisingly, then, this Court has often allowed CAA challenges to proceed even while administrative petitions for reconsideration are pending.  *See, e.g.*,

11

*EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 123 (D.C. Cir. 2015) (considering merits of Clean Air Act rule while administrative reconsideration petition was pending); *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 549 (D.C. Cir. 2015); *Util. Air Regul. Grp.*, 744 F.3d at 744.

Petitioners' requested relief would directly contravene Congress's intent. It would accomplish in practical effect what Congress has said should *not* be done: delay consideration of the merits of a rule while a motion for reconsideration wends its way through. *Cf. Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012) (stressing how proposals to reevaluate a rule should not be used to "stave off judicial review"). That's especially problematic here, where "[t]he Clean Air Act does not specify limits on the permissible duration of a reconsideration proceeding, and its provisions generally grant the agency broad discretion." *Mexichem*, 787 F.3d at 555. In those circumstances, there's no telling how long the parties might have to wait. And the Court should be especially wary in the unique circumstances of this case, where the challengers are motivated to drag their feet in litigating in the hopes that an administration change will produce a change in position a few years from now. Cf. Amanda Shafer Berman, *Regime Change and Regulatory Resilience*, 28 GEO. ENVTL. L. REV. ONLINE 1, 4 & n.27 (2017) (saying the

Section 7607(b)(1)'s provision on reconsideration is meant to "meaningfully limit[]" the ability to send a CAA rule to "regulatory purgatory," perhaps tied to administration change).

"[A]s a judicial review provision," Section 7607(b)(1)'s language urging review despite a pending petition for reconsideration "is jurisdictional in nature and must be construed with strict fidelity to its terms." *Ass'n of Battery Recyclers, Inc. v. EPA*, No. 12-1028, 2012 WL 2373298, at *1 (D.C. Cir. June 25, 2012) (cleaned up). Yet Petitioners' motion shows no fidelity to the statute's language, as "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). The Court should thus refuse it.

## III.    Petitioners have not shown a clear case of hardship.

Petitioners make a brief run at showing hardship, but they don't succeed. In particular, they fret that the Court will be unable to "reach[] issues raised in the[ir reconsideration] petitions" unless there's delay.* Mot.15. It's true that the Court may not be able to reach those issues insofar as Petitioners

---

* One set of Petitioners (those filing this motion) argue that the judicial review should be delayed *while the rescission remains in place*, while another set of Petitioners argues that the rescission is so harmful that it must be immediately stayed. *See* Doc. No. 2174285. The contradiction undermines the Youth Petitioners' suggestion that a stay of the rescission itself is necessary.

unjustifiably failed to present arguments on the data that they now try to shoehorn into the record through their present petitions for reconsideration. But that's not hardship in any meaningful sense of the word; that's merely the consequence of failing to abide by the statutory exhaustion requirement. *See Nat'l Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115, 1158 (D.C. Cir. 2013).

If Petitioners were right that their present objections are "central[ly] relevan[t]" and "impracticable to raise" during the rule's comment period, then it's hard to see how they'd be denied judicial review merely by having their petitions for review move forward now. 42 U.S.C. § 7607(d)(7)(B); *but see* Mot.3.n.1 (contradictorily arguing that at least one set of Petitioners "anticipat[ed] objections to new evidence replacing the Climate Working Group's draft report"). Petitioners say that EPA has already decided to deny the petition for reconsideration. *See* Mot.2, 3, 12. If and when that happens, Petitioners will have a statutory right to "seek review of such refusal" before this Court. 42 U.S.C. § 7607(d)(7)(B). Meanwhile, it's not unprecedented for parties to argue that EPA improperly relied on new data to justify a final CAA rule even without filing a separate motion for reconsideration on that basis. *See, e.g.*, *Kentucky v. EPA*, 123 F.4th 447, 469 (6th Cir. 2024). Petitioners

14

could try that route, too.  Either way, there'd be no "serious due process concerns," as the issue would eventually be heard.  *Contra* Mot.15.

"[B]eing required to [prosecute] a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).  But really, that's all Petitioners bring to the Court.  They might prefer to package everything neatly into one action, or they might hope to backdoor more evidence in their favor through the reconsideration proceeding.  But the many other affected parties shouldn't have to wait around while that strategy plays out.

## IV.    Abeyance harms the States.

In contrast to Petitioners' lack of hardship, abeyance would inflict immediate harm on the regulated industry and, in turn, the States.

*First*, abeyance would prolong uncertainty that inflicts "palpable and considerable hardship" on the automakers, and "may ultimately work harm on the citizens of" the Intervenor-Respondent States.  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201-02 (1983).  Under the old regime, "multiple vehicle companies ha[d] announced that they [we]re experiencing significant financial hardships from making investments that were, at least in part, due to the regulations" EPA has now repealed.  Doc.

15

No. 2174285, EPA Denial Letter at 2.  Abeyance only furthers that harm, as automakers may still need to undertake at least some steps towards compliance so long as the rescission remains in limbo.  Generally, of course, businesses with long-term planning horizons—like automakers with years-long platform development timelines—must plan for the most restrictive possible contingency.  So long as these petitions for review remain pending, that outcome remains the repealed standards.  It also creates costly questions about how any vehicles produced post-rescission would be affected if, years later, the Court were to void the rescission itself.

Predictably, automakers pass those costs onto consumers, including the States themselves.  "The average incremental regulatory cost embedded in new vehicles is estimated at $6,000-$7,000—amounting to as much as 20% of the purchase price."  Attys. Gen. of the States of W. Va., *et al.*, Comment Letter on the Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards (Sept. 22, 2025), at 79 (citing Kylie Conrad et al., *The Benefits and Costs of Automotive Regulations for Low-Income Americans*, 12 J. BENEFIT-COST ANALYSIS 518 (2021)), *available at* https://tinyurl.com/8vf487zc.  As a result, "consumers shift to the used-vehicle market or retain aging vehicles longer."  *Id.* (citing Howard K. Gruenspecht,

16

*Differentiated Regulation: The Case of Auto Emissions Standards*, 72 AM. ECON. R. 328, 328-31 (May 1982)). And flooded used-car demand raises used-car prices. *Id.* at 80 (citations omitted). Increased vehicle costs "correlate[] with employment, wages, educational opportunities, health outcomes, and neighborhood safety." *Id.* So anything increasing these costs—like leaving the specter of the old standards in place—will have statewide effects.

*Second*, the States have a sovereign interest in not being "discriminatorily denied [their] rightful status within the federal system." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982); *see also, e.g.*, *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237 (1907) (finding that a state has an interest "in all the earth and air within its domain"). It follows, then, that the States have a sovereign interest in knowing, with reasonable finality, the actual boundary of EPA's asserted authority to regulate motor-vehicle greenhouse gas emissions. Certainty is particularly important in this domain, which touches core state prerogatives over energy policy, transportation infrastructure, and economic development. *See West Virginia v. EPA*, 597 U.S. 697, 724-25 (2022) (holding that agencies may not claim "unheralded power" over questions of vast economic and political significance without clear congressional authorization (cleaned up)). Yet as

17

long as this case sits in abeyance, the state-federal boundary remains unsettled. And more practically, the fuzzy line directly affects the day-to-day work of state-level pollution control. State regulators must factor federal tailpipe and fuel standards into their local air quality plans, such as those that control ground-level ozone and particulate matter. So they need to know the state of play as to mobile emissions when deciding how to regulate stationary sources, too.

In sum, abeyance inflicts immediate harm on the States' economic and sovereign interests. Indeed, these harms give the "public generally" an "unusual interest in [the] prompt disposition" of this case. D.C. Cir. Handbook of Prac. and Internal Proc. at 34. So Petitioners' motion doesn't present the "rare circumstance[]" in which the States should be "compelled to stand aside while" Petitioners "settle[] the rule of law that will define the [States'] rights." *Landis*, 299 U.S. at 255.

## V.    Abeyance would not serve interests of judicial economy.

Even though EPA has never hinted that it wants to reconsider its rescission, Petitioners insist that holding these cases in abeyance and waiting for the petitions for reconsideration will smooth the way toward ultimate judicial review. For many reasons, they're wrong.

18

*First*, remember that the futility analysis on which Petitioners focus is but one of many independent bases for the rescission. *See* Doc. No. 2169572, at 17-20 (Petitioners recognizing that futility is severable and independent from the other bases for the rescission). Each legal basis "is separate and independent from the others," so "EPA would rescind the Endangerment Finding and repeal the GHG emission standards on any of th[o]se bases standing alone." 91 Fed. Reg. at 7711. In one separate basis, for instance, EPA reviewed key Supreme Court cases "and principles of statutory interpretation" and concluded that the CAA "does not authorize the EPA to assert jurisdiction over GHG emissions based on global climate change concerns in a standalone endangerment finding." *Id.* Separately, EPA also relied on the major questions doctrine in finding that the agency lacks "clear congressional authorization" to "decide the Nation's response to global climate change concerns." *Id.* at 7723 (cleaned up). Neither of these grounds would be affected by any decision on the futility angle, so there's no possibility of "complete reversal of course" that would obviate the need for judicial review. *Utah*, 2025 WL 1354371, at *3 (cleaned up).

In other cases, the Court has refused to hold a case in abeyance when relief would not always follow from a win on the petition for reconsideration.

19

*Lead Indus.*, 647 F.2d at 1187; *but cf. Am. Petroleum Inst.*, 683 F.3d at 388-89 (holding a case in abeyance because ongoing agency action "*would* likely moot the analysis we could undertake if deciding the case now" (emphasis added)). And if anything, addressing the rescission's separate bases now could allow the Court to avoid ever engaging with the futility argument at all—a tantalizing prospect given how fact-bound and technical Petitioners suggest their futility argument really is. The separate bases offer the kind of "essentially legal" questions about "statutory authority" that are best teed up for courts—and that are "impossibl[e]" to "finally" resolve "administratively." *Atl. Richfield Co. v. U.S. Dep't of Energy*, 769 F.2d 771, 783-84 (D.C. Cir. 1984).

*Second*, though Petitioners promise that an abeyance would help avoid "piecemeal" litigation, it's hard to see how that would be so. At most, they speculate about how it might be harder for them to make certain arguments during the merits briefing in this petition for review, without any real evidence that that'll happen. Maybe EPA and its supportive intervenors will make arguments about exhaustion; maybe not. In any event, speculation about judicial efficiencies is no basis for a stay. *See, e.g., Dist. Hosp. Partners, L.P. v. Burwell*, No. CV 16-528, 2016 WL 3746466, at *1 (D.D.C. July 8, 2016) ("Such a lengthy stay is simply unwarranted in light of the mere possibility that

20

judicial resources might be conserved."). And if anyone is promising piecemeal litigation, it's Petitioners; they're threatening to launch satellite litigation in district court because they're not happy with how EPA is handling their requests for reconsideration. *See* Mot.8.n.3.

*Third*, the petitions for reconsideration are unlikely to narrow the issues, particularly considering Petitioners' self-defeating concession that there's no real prospect that the petitions will succeed before EPA. *See* Mot.2, 3, 12. In reality, Petitioners are trying to pile *more* collateral issues into this proceeding through after-the-fact record supplementation. Regrettably, that's par for the course for this litigation. *See, e.g.*, Doc. No. 2174286 (complaining that EPA prepared its response-to-comments document the same day—but not the same moment—that the rescission was finalized).

\* \* \*

Petitioners seem to be seeking both an indefinite stay and a premature order of mandamus directing EPA to rule on their reconsideration petitions—all while shifting the burden back onto EPA. *See* Mot.13 ("EPA … should inform the Court of the time it requires"). But the statute imposes no deadline on handling reconsideration, and neither the parties nor the Court will benefit from waiting around to see what might develop as Petitioners try one

21

procedural tactic after another.  *See* Doc. 2174286, at 11 (Petitioners gesturing toward more untimely procedural motions).   Remember just how long Petitioners want this Court to wait: the abeyance doesn't even begin until all procedural motions are resolved; then 30 days; then a "reasonable interval"; then motions to govern; then briefing on those; and only then a briefing order. Yet procedural motions are fully briefed, the record has been certified, *see* Doc. No. 2163128, and the time for action is now.  The States know from experience that the Court can get things moving fast.  *See* Order, *West Virginia v. EPA*, Case No. 24-1120 (D.C. Cir. July 19, 2024), Doc. No. 2065493 (ordering parties to submit briefing proposal just 14 days after denial of stay). It should do so here.

## CONCLUSION

The Court should deny Petitioners' motion.

22

Respectfully submitted,

RUSSELL COLEMAN
ATTORNEY GENERAL

 /s/ Matthew F. Kuhn
Matthew F. Kuhn
   *Solicitor General*
Office of the Kentucky
Attorney General
700 Capital Avenue
Suite 118
Frankfort, KY 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for Commonwealth of
Kentucky*

JOHN B. MCCUSKEY
ATTORNEY GENERAL

 /s/ Michael R. Williams
Michael R. Williams
   *Solicitor General*
Caleb B. David
   *Deputy Solicitor General*
Mattie F. Shuler
   *Assistant Solicitor General*
West Virginia Attorney
General's Office
1900 Kanawha Blvd. E
Bldg. 1 Rm. 26E
Charleston, WV 25305
(304) 558-2021
Michael.R.Williams@wvago.gov
Caleb.B.David@wvago.gov
Mattie.F.Shuler@wvago.gov

*Counsel for State of West Virginia*

23

STEVE MARSHALL
ATTORNEY GENERAL OF ALABAMA

/s/ A. Barrett Bowdre
A. Barrett Bowdre
  *Solicitor General*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Barrett.Bowdre@AlabamaAG.gov

*Counsel for State of Alabama*

TIM GRIFFIN
ATTORNEY GENERAL OF ARKANSAS

/s/ Noah P. Watson
Noah P. Watson
  *Deputy Solicitor General*

Office of the Arkansas Attorney
General
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2700
noah.watson@arkansasag.gov

*Counsel for State of Arkansas*

CORI MILLS
ACTING ATTORNEY GENERAL
OF ALASKA

/s/ Jenna M. Lorence
Jenna M. Lorence
  *Solicitor General*

State of Alaska
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
(907) 269-5100
jenna.lorence@alaska.gov

*Counsel for State of Alaska*

JAMES UTHMEIER
ATTORNEY GENERAL OF FLORIDA

/s/ David Dewhirst
David Dewhirst
  *Solicitor General*

State of Florida
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com

*Counsel for State of Florida*

24

CHRISTOPHER M. CARR
ATTORNEY GENERAL OF GEORGIA

/s/ John Henry Thompson
John Henry Thompson
  *Solicitor General*

Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

*Counsel for State of Georgia*

RAÚL R. LABRADOR
ATTORNEY GENERAL OF IDAHO

/s/ Michael A. Zarian
Michael A. Zarian
  *Solicitor General*

Office of the Idaho Attorney
General
700 W. Jefferson St., Suite 210,
Boise, Idaho 83720
(208) 334-2400
michael.zarian@ag.idaho.gov

*Counsel for State of Idaho*

THEODORE E. ROKITA
ATTORNEY GENERAL OF INDIANA

/s/ James A. Barta
James A. Barta
  *Solicitor General*

Office of the Indiana Attorney
General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for State of Indiana*

BRENNA BIRD
ATTORNEY GENERAL OF IOWA

/s/ Eric H. Wessan
Eric H. Wessan
  *Solicitor General*

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*

25

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

/s/ Dwight R. Carswell
Dwight R. Carswell
  *Deputy Solicitor General*

Office of the Kansas
Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612
(785) 268-8410
dwight.carswell@ag.ks.gov

*Counsel for State of Kansas*

LIZ MURRILL
ATTORNEY GENERAL OF LOUISIANA

/s/ J. Benjamin Aguiñaga
J. Benjamin Aguiñaga
  *Solicitor General*

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov

*Counsel for State of Louisiana*

CATHERINE HANAWAY
ATTORNEY GENERAL OF MISSOURI

/s/ Louis J. Capozzi III
Louis J. Capozzi III, #77756 (MO)
  *Solicitor General*
William James Seidleck, #77794
(MO)
  *Principal Deputy Solicitor
  General*

Office of the Attorney General
Old Post Office Building
815 Olive Street, Suite 200
St. Louis, MO 63101
(573) 645-9662
Louis.Capozzi@ago.mo.gov
William.Seidleck@ago.mo.gov

*Counsel for State of Missouri*

LYNN FITCH
ATTORNEY GENERAL OF MISSISSIPPI

/s/ Justin L. Matheny
Justin L. Matheny
  *Deputy Solicitor General*

Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

26

AUSTIN KNUDSEN
ATTORNEY GENERAL OF MONTANA

/s/ Christian B. Corrigan
Christian B. Corrigan
  *Solicitor General*

Montana Department
Of Justice
215 N Sanders
Helena, MT 59602
(406) 444-2026
christian.corrigan@mt.gov

*Counsel for State of Montana*

MICHAEL T. HILGERS
ATTORNEY GENERAL OF NEBRASKA

/s/ Zachary B. Pohlman
Zachary B. Pohlman
  *Deputy Solicitor General*

Nebraska Department of Justice
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2683
(402) 471-3297 (fax)
zachary.pohlman@nebraska.gov

*Counsel for State of Nebraska*

DREW H. WRIGLEY
ATTORNEY GENERAL OF
NORTH DAKOTA

/s/ Philip Axt
Philip Axt
  *Solicitor General*

North Dakota Attorney General's
Office
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for State of North Dakota*

D. ANDREW WILSON
ATTORNEY GENERAL OF OHIO

/s/ Mathura J. Sridharan
Mathura J. Sridharan
  *Solicitor General*
John F. Kerkhoff
  *Deputy Solicitor General*

30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for State of Ohio*

27

GENTNER F. DRUMMOND
ATTORNEY GENERAL OF
OKLAHOMA

/s/ Garry M. Gaskins II
Garry M. Gaskins II
  *Solicitor General*

Oklahoma Office of the Attorney
General
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov

*Counsel for State of Oklahoma*

MARTY J. JACKLEY
ATTORNEY GENERAL OF SOUTH
DAKOTA

/s/ Emily Greco
Emily Greco
  *Assistant Attorney General*

South Dakota Office of the
Attorney
General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
(605) 773-3215
emily.greco@state.sd.us

*Counsel for State of South Dakota*

ALAN WILSON
ATTORNEY GENERAL OF SOUTH
CAROLINA

/s/ J. Emory Smith, Jr.
J. Emory Smith, Jr.
  *General Counsel*

Office of the Attorney General
PO Box 11549
Columbia, South Carolina 29211
(803) 734-3642
(803) 734-3677 (fax)
esmith@scag.gov

*Counsel for State of South Carolina*

JONATHAN SKRMETTI
ATTORNEY GENERAL AND REPORTER
OF TENNESSEE

/s/ Madeline Clark
Madeline Clark
  *Solicitor General*

Office of the Tennessee Attorney
General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 532-6026
madeline.clark@ag.tn.gov

*Counsel for State of Tennessee*

28

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

Brent Webster
  *First Assistant Attorney General*
Ralph Molina
  *Deputy First Assistant Attorney*
  *General*
Austin Kinghorn
  *Deputy Attorney General for*
Civil
  *Litigation*
Kellie Billings-Ray
  *Chief, Environmental Protection*
  *Division*

/s/ Wesley S. Williams
Wesley S. Williams
  *Assistant Attorney General*
Texas Bar No. 24108009

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548 (MC-066)
Austin, Texas 78711-2548
(512) 463-2012
(512) 320-0911 (fax)
Wesley.Williams@oag.texas.gov

*Counsel for State of Texas*

DEREK BROWN
ATTORNEY GENERAL OF UTAH

/s/ Stanford Purser
Stanford Purser
  *Solicitor General*

Office of the Utah Attorney
General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
801-366-0533
spurser@agutah.gov

*Counsel for State of Utah*

KEITH G. KAUTZ
ATTORNEY GENERAL OF WYOMING

/s/ D. David DeWald
D. David DeWald
  *Deputy Attorney General*

Office of the Attorney General of
Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov

*Counsel for State of Wyoming*


Dated: August 10, 2026

## CERTIFICATE OF COMPLIANCE

1.      This motion response complies with Fed. R. App. P. 27 because it contains 4,571 words.

2.      This motion response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. P. 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Michael R. Williams
Michael R. Williams