NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 26-1037 and consolidated cases

---

U.S. COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

American Public Health Association, et al.,
Petitioners,

v.

U.S. Environmental Protection Agency and Lee M. Zeldin, Administrator,
Respondents.

Petitions for Review of a Final Rule of the U.S. Environmental Protection Agency

**EPA's Opposition to Abeyance Motion**

Adam R.F. Gustafson
*Principal Deputy Assistant Attorney General*

Robert N. Stander
*Deputy Assistant Attorney General*

Sue Chen
Daniel J. Martin
U.S. Department of Justice
Environment & Natural Resources Div.
950 Pennsylvania Avenue NW
Washington, D.C. 20530

**TABLE OF CONTENTS**

Table of Authorities ..................................................................................... iii

Glossary....................................................................................................... vi

Introduction ...................................................................................................1

Background ....................................................................................................3

     I.      Legal background. ...............................................................................3

           A.     The Clean Air Act's regulation of motor-vehicle
                 emissions ...............................................................................3

           B.     Judicial review and administrative reconsideration under
                 the Act. ..................................................................................5

     II.     Procedural history................................................................................5

Argument.......................................................................................................8

     I.      The Court should deny the abeyance motion as untimely. ...................8

     II.     Abeyance is improper and this case should proceed to merits
           briefing. ...........................................................................................11

           A.     The Clean Air Act, which favors prompt judicial review,
                 specifies that pending reconsideration requests cannot
                 delay that review. .................................................................11

           B.     The Court should not override EPA's choice about how
                 to manage its docket.............................................................15

           C.     Petitioners give no compelling reason for abeyance. ...............17

           D.     Abeyance would prejudice EPA and others. ............................20

Conclusion ..................................................................................................22

Certificates of Compliance and Service.......................................................24

## TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. NRC*,
   988 F.2d 146 (D.C. Cir. 1993)...............................................................21

*Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012)...............................................................15

*Ass'n of Battery Recyclers, Inc. v. EPA*,
   2012 WL 2373298 (D.C. Cir. June 25, 2012) .......................................12

*EME Homer City Generation, L.P. v. EPA*,
   795 F.3d 118 (D.C. Cir. 2015)...............................................................19

*Grant v. U.S. Air Force*,
   197 F.3d 539 (D.C. Cir. 1999).................................................................9

*Lead Indus. Ass'n v. EPA*,
   647 F.2d 1184 (D.C. Cir. 1980)..................................................... 15, 18

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ...............................................................................17

*Mexichem Specialty Resins v. EPA*,
   787 F.3d 544 (D.C. Cir. 2015)...............................................................15

*New York v. EPA*,
   2003 WL 22326398 (D.C. Cir. 2003) .....................................................15

*NRDC v. EPA*,
   643 F.3d 311 (D.C. Cir. 2011).................................................................11

*Salinas v. U.S. R.R. Ret. Bd.*,
   592 U.S. 188 (2021) ...............................................................................13

*Sierra Club v. EPA*,
   551 F.3d 1019 (D.C. Cir. 2008)..............................................................15

*Utah v. EPA*,
   2025 WL 1354371 (D.C. Cir. May 2, 2025) ........................................................20

*Util. Air. Regul. Grp. v. EPA*,
   744 F.3d 741 (D.C. Cir. 2014) ........................................................12

**Statutes**

28 U.S.C. § 2401(a) ........................................................12

42 U.S.C. § 7411(b)(1)(A) ........................................................13

42 U.S.C. § 7412(d)(6) ........................................................13

42 U.S.C. § 7521(a)(1) ........................................................3, 4

42 U.S.C. § 7604(a) ........................................................ 7, 13, 17

42 U.S.C. § 7607(b)(1) ........................................................ 5, 12, 17

42 U.S.C. § 7607(d) ........................................................5

42 U.S.C. § 7607(d)(7)(A) ........................................................5

42 U.S.C. § 7607(d)(7)(B) ........................................................ 5, 17, 18

42 U.S.C. § 7607(d)(8) ........................................................5

**Federal Registers**

74 Fed. Reg. 66496 (Dec. 15, 2009) ........................................................3

90 Fed. Reg. 36288 (Aug. 1, 2025) ........................................................4

91 Fed. Reg. 7686 (Feb. 18, 2026) ........................................................3, 4

**Legislative Materials**

S. Rep. No. 101-228 (1989) ................................................................... 13, 14

**Rules**

D.C. Cir. Handbook .................................................................................10

D.C. Cir. R. 27(g).....................................................................................11

D.C. Cir. R. 27(g)(1)..................................................................................9

# GLOSSARY

| | |
|---|---|
| EPA | U.S. Environmental Protection Agency |
| Petitioners | Petitioners in Case Nos. 26-1037, 26-1039, 26-1051, 26-1061, and 26-1090 |
| Rule | Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act, 91 Fed. Reg. 7686 (Feb. 18, 2026) |

**INTRODUCTION**

It is not every day that frequent-flyer litigants blow past a deadline that they themselves asked for. And it is not every day they rush to challenge an EPA rule with great pomp, only to repeatedly find excuses to slow-walk the path to merits briefing.

Yet that is precisely what Petitioners have done here. Having received, over EPA's objection, an extension of the procedural-motions deadline to May 20, Petitioners waited two more months—until July 29—before moving for abeyance, seeking the same relief (delaying merits briefing until EPA responds to reconsideration requests) that they had asked this Court for back in April. Petitioners could have and should have renewed that request by the procedural-motions deadline.

By holding the abeyance motion in reserve, however, Petitioners were able to unveil it well after other procedural motions have been briefed and are ready for decision. Their goal: delay merits briefing and resolution of this dispute for as long as possible. It is part of a broader strategy that Petitioners have been pursuing here and in other recent Clean Air Act cases.

This Court should not reward such gamesmanship. It should enforce its deadlines and deny the abeyance motion as untimely.

Even if the Court were to overlook Petitioners' tardiness, it should still deny abeyance. Under review is the Rule, promulgated under the Clean Air Act, that rescinds EPA findings as to greenhouse-gas emissions from new motor vehicles and engines, and repeals the agency's standards regulating those emissions. Many Petitioners rushed to challenge the Rule and trumpeted their lawsuits in press release after press release.

But since then, Petitioners have tried, one way or another, to delay merits litigation. That strategy is at war with the Clean Air Act, which is designed to ensure prompt judicial review in the interest of legal certainty. Indeed, the Act specifies that pending reconsideration requests, the basis for Petitioners' abeyance motion, do not derail litigation. Abeyance would also harm EPA, automakers, and the broader public by denying them the certainty that the Act favors. This legal limbo is all the more damaging because it forces automakers to plan their future model-year fleets under a cloud of uncertainty.

Besides, having publicly branded the Rule illegal, Petitioners now need to back up those accusations in court. If they are not prepared to do so, they are welcome to dismiss their petitions for review. Otherwise, the Court should deny the abeyance motion and order the parties to propose a schedule for merits briefing.

# BACKGROUND

## I.      Legal background.

### A.      The Clean Air Act's regulation of motor-vehicle emissions.

The Clean Air Act authorizes EPA to regulate emissions from new motor vehicles and engines "which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). EPA lacks authority to regulate emissions failing this requirement.

In 2009, the agency made endangerment and contribution findings for greenhouse-gas emissions from new motor vehicles and engines (the 2009 Finding). 74 Fed. Reg. 66496 (Dec. 15, 2009). It later issued greenhouse-gas emission standards for various classes of vehicles and engines. 91 Fed. Reg. 7686, 7696/1 n.35 (Feb. 18, 2026). Earlier this year, EPA finalized the Rule, which (1) rescinded the 2009 Finding and (2) repealed the associated greenhouse-gas standards. *Id.* at 7686/1.

EPA rescinded the 2009 Finding on multiple legal grounds. It determined that Section 7521(a) does not authorize regulation of vehicle greenhouse-gas emissions in response to global climate-change concerns. *Id.* at 7688/2, 7710/3-11/2. Instead, that provision is best read as authorizing EPA to identify and regulate "air pollution" that may "reasonably be anticipated" to endanger health

and welfare through local and regional exposure. *Id.* at 7710/3, 7712/2-15/1; 42 U.S.C. § 7521(a)(1). Because global climate-change concerns fall outside Section 7521(a)'s ambit, the 2009 Finding exceeded EPA's statutory authority. 91 Fed. Reg. at 7690/-3, 7710/3-18/2. And without that finding, the vehicle greenhouse-gas standards could not stand. *Id.* at 7690/-3. EPA also explained that the best reading of Section 7521(a)(1)'s other text independently justifies the rescission. *Id.* at 7718/1-21/2.

EPA provided a "separate" rationale for the Rule: futility. *Id.* at 7691/2, 7734/1; *see also* 90 Fed. Reg. 36288, 36312/2-3 (Aug. 1, 2025). The agency used generally accepted modeling to show that elimination of greenhouse-gas emissions from all U.S. motor vehicles would have *de minimis* impact on global temperatures and sea levels (which served as proxies for health and welfare impacts attributed to global climate change). *See* 91 Fed. Reg. at 7730/1-3. But that showing, by looking at all U.S. motor vehicles, vastly overestimates the impact of the standards, which cover only new motor vehicles and do not eliminate all emissions. *Id.* at 7732/2. EPA thus reasoned that the standards, which eliminate only some of those modeled vehicle emissions, would likewise have no more than *de minimis* effect. *Id.* at 7732/2-33/1.

4

**B.** **Judicial review and administrative reconsideration under the Act.**

The Act includes a unique judicial-review provision that specifies that nationally applicable rules must be challenged in this Court within 60 days of publication in the Federal Register. 42 U.S.C. § 7607(b)(1), (d). The Act also enumerates the materials that comprise the record for judicial review. *Id.* § 7607(d)(7)(A), (8). In addition, courts can consider only objections that were raised with reasonable specificity in public comments. *Id.* § 7607(d)(7)(B).

Parties may also request EPA to reconsider a challenged rule. *Id.* Reconsideration must be granted if EPA determines that (i) it was "impracticable" to raise an objection during the comment period, *or* the grounds for the objection arose after the comment period but within the 60-day judicial-review window, and (ii) the objection is "of central relevance" to the rule's outcome. *Id.* A reconsideration request, however, does not affect the finality of a rule for purposes of judicial review. *Id.* § 7607(b)(1). And the Act imposes no deadline for EPA to act on a reconsideration request. *See id.* § 7607(d)(7)(B).

## II.    Procedural history.

Although the Clean Air Act gives parties 60 days from the Rule's Federal Register publication to sue, Nonprofit Petitioners (Case No. 26-1037) filed suit on publication day. Doc. No. 2159562 (Feb. 18, 2026). Their lawsuit was trumpeted

in a press release castigating the rule and vowing to fight EPA in court.[1] Other petitions and press releases soon followed.[2]

Despite this initial rush, Petitioners have not shown the same alacrity to proceed to merits briefing. In fact, Petitioners, here and in other cases, have adopted a new strategy: delay resolution of their petitions for review. *See* Doc. No. 2183426, *Env'tl Def. Fund v. Zeldin*, No. 26-1152 (D.C. Cir. July 15, 2026); Doc. No. 2171960, *Sierra Club v. EPA*, No. 26-1055 (D.C. Cir. May 5, 2026); Doc. No. 2173981, *Air All. Hous. v. EPA*, No. 26-1070 (D.C. Cir. May 18, 2026).

In March, Nonprofit Petitioners moved, over EPA's opposition, to extend their procedural- and dispositive-motions deadlines by two months. Doc. No. 2163614 (Mar. 13, 2026). While that motion remained pending, in April, four sets of Petitioners each submitted administrative requests to EPA to reconsider the Rule's futility modeling. Later that month, Nonprofit Petitioners and State Petitioners each moved to defer merits briefing so that EPA could act on their reconsideration requests. Doc. No. 2169080 (Apr. 16, 2026); Doc. No. 2169572 (Apr. 20, 2026).

---

[1] https://www.nrdc.org/press-releases/nrdc-coalition-sue-endangerment-rollback-climate-protections.

[2] *See, e.g.*, https://oag.ca.gov/news/press-releases/california-attorney-general-rob-bonta-denounces-epa%E2%80%99s-rescission-greenhouse-0; https://earthjustice.org/press/2026/earthjustice-endangerment-finding-statement.

The Court granted Petitioners' extension motion. Doc. No. 2169939 (Apr. 22, 2026). Relevant here, the procedural-motions deadline was extended to May 20. The Court also granted the deferral motions "to the extent that any order directing the parties to file briefing proposals will be entered after any procedural or dispositive motions are resolved." *Id.* at 2.

By May 20, Petitioners moved to complete the administrative record and the Venner Petitioners (Case No. 26-1038) moved to stay the Rule. Doc. No. 2174286 (May 20, 2026) (record motion); Doc. No. 2174285 (May 20, 2026) (stay motion). Briefing of these two procedural motions was completed on July 16. Doc. No. 2180991 (June 29, 2026) (record reply); Doc. No. 2183632 (July 29, 2026) (ordering filing of stay reply, lodged on July 16).

Meanwhile, on June 12, Petitioners notified EPA that they intend to sue the agency in federal district court to compel action on their pending reconsideration requests. Mot., Ex. E; *see* 42 U.S.C. § 7604(a) (requiring 180 days' notice before a party can bring suit for unreasonably delayed agency actions).

On July 29, more than two months after the procedural-motions deadline, Petitioners moved for abeyance, again seeking to delay merits briefing until EPA acts on the reconsideration requests. Mot., Doc. No. 2185720 (July 29, 2026).

## ARGUMENT

The Court should deny Petitioners' belated abeyance motion. First, the motion is untimely and no circumstances excuse the delay. Because the motion simply renews Petitioners' earlier deferral motions, it could have and should have been filed on the procedural-motions deadline over two months ago.

Second, abeyance is improper. The Clean Air Act, which favors prompt judicial review, makes clear that pending reconsideration requests do not derail litigation. The Court should thus respect EPA's choice to move forward to merits litigation, a choice that reflects EPA's judgment about how to manage its docket. Abeyance is all the more improper where, as here, other petitioners have moved to stay the Rule, and delayed resolution would harm EPA and regulated entities.

## I.     The Court should deny the abeyance motion as untimely.

Procedural motions, like those seeking abeyance, affect the progress of the case. D.C. Cir. Handbook of Practice and Internal Procedures 29. The deadline to file these motions is an "important time limit[] to observe." *Id.* at 28. As this Court reminds litigants, it is "essential" for counsel to "comply fully" with the procedural requirements for motions practice. *Id.*

Here, the procedural-motions deadline was extended, at Petitioners' request and over EPA's objection, to May 20.  But it was not until more than two months later that Petitioners moved for abeyance. In doing so, they did not even have the

courtesy to acknowledge the deadline—one that they asked for—let alone offer any explanation for missing it. Petitioners have thus forfeited any argument that their delay was justified. *See, e.g.*, *Grant v. U.S. Air Force*, 197 F.3d 539, 542 n. 6 (D.C. Cir.1999) ("[A]n argument first made in a reply brief comes too late."). The Court should deny the motion on timeliness grounds alone.

Nor are there extraordinary circumstances—or, indeed, *any* circumstances—to excuse Petitioners' tardiness. *Cf.* D.C. Cir. R. 27(g)(1); Doc. No. 1887614, *Telematch v. USDA*, No. 20-5378 (D.C. Cir. Mar. 1, 2021). That is because the abeyance motion in effect renews the same request that Petitioners made in April: It seeks the same relief on the same basis as their two motions to defer a call for merits briefing. Doc. No. 2169080; Doc. No. 2169572. All three motions ask to delay merits briefing until EPA acts on the reconsideration requests. And all three motions attempt to justify that relief by contending that a reconsideration decision would promote efficiency and allow administrative exhaustion. Mot. 3, 12; Doc. No. 2169080 at 13-18; Doc. No. 2169572 at 12-13.

This case, then, is not one where circumstances arose after the procedural-motions deadline to excuse a belated abeyance motion. Petitioners submitted their reconsideration requests in early April. They have known since at least mid-April, when they filed their deferral motions, that they want EPA to act on those

9

reconsideration requests before merits briefing. They could have and should have renewed that request by May's procedural-motions deadline.

For that reason, the content of EPA's stay opposition—filed on June 29—cannot excuse their delay. Mot. 2-4, 14-16; Stay Opp'n, Doc. No. 2181103 (June 29, 2026). In any event, Petitioners exaggerate when they say EPA's stay opposition "relied" on the futility analysis. Mot. 2. EPA mentioned the futility analysis as only one of many reasons why the Venner Petitioners failed to show standing and failed to justify a stay. Stay Opp'n at 9-10, 18, 23. Nor was futility off-limits to EPA: The stay motion did not challenge the futility analysis, and EPA was entitled to point that out. *Contra* Mot. 15.

What is more, Petitioners' tardiness threw a wrench into the orderly judicial process that the Court aimed to achieve. The point of the procedural-motions deadline is for parties to raise all issues they then have so that the Court can coherently and efficiently address, at the same time, all issues that "may affect the progress of the case through the Court." D.C. Cir. Handbook at 29. Petitioners cannot save a procedural motion for a rainy day. By waiting to file their abeyance motion well after all other procedural motions have been briefed, Petitioners extended the period for motions practice and delayed merits briefing. The Court should not reward such gamesmanship.

Even more inexplicable, Petitioners knew they had to file procedural motions by the procedural-motions deadline. After all, they sought an extension of that deadline to give themselves "an opportunity to confer regarding any motions they intend to file" and otherwise coordinate their requests. Doc. No. 2166208 at 3-4 (Mar. 30, 2026). If they thought they could justify another extension, they should have moved the Court for that relief instead of ignoring the deadline they themselves had requested. *See* D.C. Cir. R. 27(g).

Finally, Petitioners' tardiness prejudices EPA and others by unnecessarily delaying prompt resolution of this important case. *See also infra* Arg. § II.D. That tardiness is all the more inexcusable given Petitioners' own promise that extending the procedural-motions deadline "promotes the efficient administration of this case and does so without extending the overall schedule for disposition of these challenges." Doc. No. 2163614 at 5.

The Court should deny Petitioners' abeyance motion as untimely.

## II.    Abeyance is improper and this case should proceed to merits briefing.

### A.    The Clean Air Act, which favors prompt judicial review, specifies that pending reconsideration requests cannot delay that review.

In the Clean Air Act, Congress "emphatically declared a preference" for "immediate" judicial review of challenges to EPA rules. *NRDC v. EPA*, 643 F.3d 311, 320 (D.C. Cir. 2011). That preference holds even when the challenged rule is the subject of a pending reconsideration request.

11

Start with the Act's judicial-review deadline. Whereas the default deadline to challenge agency actions is six years, here Congress limited that period to 60 *days*. *Compare* 28 U.S.C. § 2401(a) *with* 42 U.S.C. § 7607(b)(1). Congress thus envisioned that in general, litigation over Clean Air Act challenges should occur months, not years, after a rule is finalized. Elsewhere in Section 7607, Congress smoothed the path to merits litigation using provisions that minimize the need for preliminary skirmishes like disputes over venue. *See, e.g.*, 42 U.S.C. § 7607(b)(1) (specifying that this Court has exclusive venue over nationally applicable regulations like the Rule).

In addition, Congress made clear that reconsideration requests cannot derail litigation. It expressly rejected the general rule that a pending administrative reconsideration request makes a final agency action unreviewable: Such a request, Section 7607(b)(1) says, "shall not affect the finality of . . . [a] rule" that is otherwise final. *See Util. Air Regul. Grp. v. EPA*, 744 F.3d 741, 746 (D.C. Cir. 2014) (discussing Clean Air Act exception and congressional intent); *Ass'n of Battery Recyclers, Inc. v. EPA*, 2012 WL 2373298, at *1 (D.C. Cir. June 25, 2012) ("[T]he statute reflects a departure from the ordinary tolling rule."). This language, the Senate Committee explained when Congress amended the Act in 1990, is "designed to ensure prompt judicial review of final actions by EPA" and to

"assure" that a pending reconsideration request "does not delay that review." S. Rep. No. 101-228, at 3755 (1989).

Congress thus chose to allow parallel reconsideration and judicial proceedings. In doing so, Congress intended for EPA to proceed at its own pace, to decide for itself how best to use its limited resources to manage its administrative docket, while litigation could proceed to promote finality and certainty.

That intent is confirmed by the fact that Congress did not set a deadline for EPA's action on reconsideration requests. Congress, of course, knows how to set deadlines under the Act. *See, e.g.*, 42 U.S.C. §§ 7411(b)(1)(A), 7412(d)(6). Its silence in Section 7607(d)(7)(B), which details the reconsideration process, thus speaks volumes. *See Salinas v. U.S. R.R. Ret. Bd.*, 592 U.S. 188, 196 (2021) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

On top of that, Congress withheld authority from the courts of appeals to compel reconsideration actions. Under the Act, a party may, after giving EPA 180 days' notice, bring a suit in *district court* alleging that an agency action is unreasonably delayed. 42 U.S.C. § 7604(a). If the party then proves unreasonable delay, the district court can compel the agency to act, usually by setting a deadline. *Id.*; *see* Mot. 8 n.3.; *id.* Ex. E. The fact that initiation of such a suit is subject to six-

13

month notice—and in a different court—underscores Congress's intent that reconsideration and judicial review can proceed on parallel tracks.

To be sure, courts retain discretion to postpone consideration of a challenged rule pending EPA's reconsideration proceedings. *See* S. Rep. No. 101-228, at 3755. But that discretion must be exercised with due regard for Congress's intent that litigation ordinarily may proceed, and of EPA's discretion to manage its resources as it sees fit and work toward resolution of a reconsideration request on a timeframe untethered to litigation. Here, where EPA opts to move forward with the litigation, Petitioners' call for efficient adjudication does not outweigh these considerations. Mot. 10, 12; *see generally id.* at 11-14. Were it otherwise, anyone could commandeer EPA's discretion and resources through strategic reconsideration requests and motions practice. But that is not what the Act or this Court's precedents allow.

This Court has denied motions for abeyance in similar circumstances— where Petitioners sought abeyance when reconsideration requests remained pending and EPA opposed abeyance. *See, e.g.*, Doc. No. 1817249, *Am. Lung Ass'n v. EPA*, No. 19-1140 (D.C. Cir. Nov. 22, 2019); Doc. No. 1826992, *Union of Concerned Scientists v. NHTSA*, Case No. 19-1230 (D.C. Cir. Feb. 4, 2020).

Petitioners' cited examples where the Court granted opposed abeyance motions involve different procedural scenarios and thus are inapplicable. Mot. 10-

11. In most, EPA had agreed to abeyance or provided a timeframe for acting on reconsideration requests, so there was no violation of Congress's intent to give EPA discretion to manage its docket. *See Sierra Club v. EPA*, No. 02-1135 (D.C. Cir. Aug. 15, 2002) (agreeing to abeyance) (noted in *Sierra Club v. EPA*, 551 F.3d 1019, 1023 (D.C. Cir. 2008)); *New York v. EPA*, 2003 WL 22326398, at *1 (D.C. Cir. 2003) (per curiam) (anticipating action on reconsideration by date certain); *Mexichem Specialty Resins v. EPA*, 787 F.3d 544, 551 n.4 (D.C. Cir. 2015) (agreeing to sever and hold certain issues in abeyance). *American Petroleum Institute v. EPA*, which arose under a different environmental statute, involved parallel proceedings: The parties filed merits briefs while EPA was revising a portion of the challenged rule. 683 F.3d 382, 386 (D.C. Cir. 2012). And *Lead Industries Association v. EPA* predates the 1990 amendment of Section 7607(b)(1) to allow parallel reconsideration and judicial proceedings and thus does not speak to this case. 647 F.2d 1184 (D.C. Cir. 1980) (per curiam).

**B.    The Court should not override EPA's choice about how to manage its docket.**

In seeking to halt litigation pending EPA's action on their reconsideration requests, Petitioners in effect ask the Court to override the agency's choices about how to manage its voluminous docket. The Court should decline to do so.

Litigants often couple petitions for judicial review with administrative petitions for reconsideration. After all, litigants seeking vacatur of an EPA rule

15

would also be tempted to allege that the agency would have reached a different result had it considered additional information they think is relevant to the final rule.

In that recurring situation, EPA's determination of whether to oppose abeyance is necessarily case-specific. The agency must consider how best to balance its competing priorities and its limited resources, as well as the likelihood that litigation could be avoided through further action. That determination carries significant weight because Congress gave EPA control of the timeframe of its reconsideration actions. That control, in turn, means that EPA is best positioned to determine whether and to what extent any further administrative process should be aligned with the litigation.

Petitioners invite the Court to overrule EPA's determination and impose a *de facto* deadline to act on the reconsideration requests. Mot. 3-4, 13. They deem that 30 more days gives EPA "sufficient time" because in a handful of cherry-picked cases, EPA acted quickly. *Id.* at 13. But the timing of reconsideration actions depends on specific factors like EPA's current docket and the issues raised for reconsideration. It is arbitrary to tie that timing to what EPA did in an earlier phase of the administrative process or in a different case. *Contra id.* More to the point, the Court lacks authority to impose any kind of deadline on EPA to act on reconsideration requests. That authority belongs to the district court and may be

16

exercised only in limited circumstances. *See* 42 U.S.C. § 7604(a); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020) ("It is a fundamental principle of statutory interpretation that absent provisions cannot be supplied by the courts." (cleaned up)).

Separately, the reconsideration requests present EPA with a choice about what kind of record it wants to use to defend the Rule. EPA could, in effect, supplement the record by acting on those requests. *See* Mot. 12 (noting that challenges to the reconsideration decision could be consolidated with this case). Or it could defend the Rule on the existing record. The Court should defer to EPA's choice because Congress gave EPA discretion to determine when and how to dispose of a reconsideration petition during ongoing litigation. *See* 42 U.S.C. § 7607(b)(1), (d)(7)(B).

### C.    Petitioners give no compelling reason for abeyance.

None of the reasons Petitioners offer to delay merits briefing passes muster given the Clean Air Act's preference for prompt judicial review and congressional blessing for parallel proceedings.

First, Petitioners' notice-and-comment arguments do not justify abeyance. *See* Mot. 11-12. These arguments presume that their reconsideration requests are

17

meritorious and should be granted. *See id.* But EPA has made no decision about these requests and the Court should not consider their merits ahead of EPA.[3]

*Lead Industries*, the only case Petitioners cite here (at 11), involved different stages of administrative and judicial processes. There, after argument, petitioners submitted their reconsideration request—which EPA denied. *Lead Indus.*, 647 F.2d at 1185 & n.1. The Court then denied petitioners' abeyance motion because it was unconvinced that the reconsideration request "rais[ed] substantial questions about the validity of the Agency's analysis." *Id.* at 1186-87, 1189. That reason does not inform the situation here, where the reconsideration requests remain pending and there are no merits briefs for the Court to assess whether those requests raise any substantial questions about the Rule's validity.

Second, Petitioners are not prejudiced by proceeding to merits briefing now. In arguing prejudice, they invoke the exhaustion principle that the Court cannot review arguments raised for the first time in reconsideration requests. *See* Mot. 3, 14-16. But whether an issue has been exhausted is a question that should be decided by the Court against the full context of facts and arguments developed in

---

[3] To be clear, EPA has not denied the reconsideration requests simply because it cited the futility rationale as one of many bases to deny the Venner Petitioners' stay motion. *Contra* Mot. 3-4, 12. The Rule and all its rationales remain in effect— and will continue to remain in effect even if EPA were to grant reconsideration. 42 U.S.C. § 7607(d)(7)(B). So EPA's reference to the futility rationale in its stay opposition says nothing about the merits of Petitioners' reconsideration requests.

18

merits briefing—not on an abeyance motion. And in fact, Petitioners expressly reserved their ability to argue that the reconsideration issues are ripe for review now. *See, e.g.*, *id.* at 3 n.1, Ex. A at 2. In other words, though Petitioners seek abeyance based on an alleged notice-and-comment defect, they effectively concede that it is unclear whether the Rule suffers from such a defect, so that their merits briefs can raise those issues. They cannot have it both ways.

Anyway, Petitioners will be able to bring their reconsideration issues before the Court—either by raising them in merits briefing, or by challenging EPA's action on the reconsideration petition. That the latter course "may . . . seem a roundabout procedure" is simply the result of how Congress chose to design EPA's reconsideration proceedings and judicial review under the Clean Air Act. *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 137 (D.C. Cir. 2015).

Finally, this case—with a stay motion pending—is not the usual candidate for abeyance. Even when the Court denies a stay motion, it normally orders the parties to promptly propose briefing schedules (or even expedites briefing). For example, in *West Virginia v. EPA*, Case No. 24-1120, this Court denied a stay motion, ordered briefing schedules proposed in 14 days, and then entered a schedule that completed briefing in two months. Doc. No. 2065493 (July 19, 2024); Doc. No. 206206 (Aug. 9, 2024). The Court issued similar orders in *North Dakota v. EPA*, Case No. 24-1119 (D.C. Cir.), Doc. No. 2068631 (Aug. 6, 2024);

19

*id.*, Doc. No. 2072376 (Aug. 29, 2024).[4] The filing of a stay motion sets this case apart from Petitioners' handful of examples where the Court granted abeyance. *See* Doc. No. 1843071, *Air All. Hous. v. EPA*, No. 19-1260 (D.C. Cir. May 15, 2020); Doc. No. 2184077, *Sierra Club v. EPA*, No. 26-1055 (D.C. Cir. July 20, 2026); Mot. 10-11.

## D. Abeyance would prejudice EPA and others.

Abeyance would harm regulated entities, EPA, and even this Court. That harm cannot be justified by Petitioners' preference for delay. *Utah v. EPA*, 2025 WL 1354371, *2 (D.C. Cir. May 2, 2025) (Rao, J., statement).

By ensuring prompt review in the months rather than years after a rule is finalized, the Clean Air Act sought to bring certainty to regulated entities (and the public at large). An abeyance would achieve the opposite. Until the petitions are adjudicated, automakers must make business, investment, and production decisions about future model-year fleets not knowing whether the Rule would be vacated by this Court—an outcome that, as automakers have explained, would be "disastrous" for industry and consumers alike. Brief of the Alliance for Automatic Innovation as *Amicus Curiae* in Opposition to Venner Petitioners' Stay Motion at 12 (lodged

---

[4] In these cases, a party either moved or suggested expedited briefing to the court. Though no party has expressly made this request here, EPA has consistently opposed Petitioners' attempts to delay merits briefing. *See, e.g.*, Doc. No. 2165141 at 4; Doc. No. 2169572 at 4.

June 29, 2026), Doc. No. 2181191; *see also* Private Respondent-Intervenors' Stay Opp'n at 24-26 (June 29, 2026), Doc. No. 2181086. This is precisely the sort of litigation uncertainty that the statute disfavors. And unlike in *Sierra Club v. EPA*, which Petitioners cite for authority, industry intervenors here oppose abeyance. *See* Mot. 11; Doc. No. 2171960 at 3 n.1, Case No. 26-1055 (May 5, 2026) (noting that petitioners could not get intervenors' position).

EPA, too, would suffer harm from litigation uncertainty. For one thing, a court decision would bring clarity and help EPA better gauge how to address similar issues. For another, Petitioners have publicly branded the Rule "illegal."[5] And now they want to let that accusation hang over EPA without being put to the proof. EPA should have the chance to respond to those accusations and receive a court decision.

Abeyance could also affect the relief available to this Court should it grant the petitions for review. Vacatur may not be a proper remedy if it is disruptive. *See Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150 (D.C. Cir. 1993). And the longer a challenged rule remains in place, the more likely it is that vacatur will be disruptive. That is especially true of a diverse and investment-intensive industry

---

[5] *See, e.g.*, https://earthjustice.org/press/2026/environmental-groups-sue-epa-for-illegal-repeal-of-climate-protections.

like the automotive sector. A prompt resolution would thus reduce the likelihood of disruption should the Court need to consider remedy here.

*    *    *

Throughout this lawsuit and in other Clean Air Act challenges in this Court, Petitioners have sought to put off the day when they will have to brief the merits and prove their press-release claims. The Court should not reward that attempt: If parties choose to sue under a statute that, like the Clean Air Act, favors prompt judicial review, they must actually litigate. They should not be allowed to flood the Court with petitions, only to leave those petitions (and EPA and regulated entities) in limbo. Reconsideration requests are no excuse for halting litigation—not when Congress amended the Act to allow judicial review to proceed while EPA takes the time it needs to respond to those requests.

## CONCLUSION

The Court should deny Petitioners' motion and direct the parties to propose a schedule for merits briefing.

Submitted on August 10, 2026.

Adam R.F. Gustafson
*Principal Deputy Assistant Attorney General*

*/s/ Robert N. Stander*
Robert N. Stander
*Deputy Assistant Attorney General*

Sue Chen
Daniel J. Martin
U.S. Department of Justice
Environment & Natural Resources Div.
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(202) 717-7067 (Stander)
(202) 598-5334 (Chen)
(202) 598-1869 (Martin)
robert.stander@usdoj.gov
sue.chen@usdoj.gov
daniel.martin3@usdoj.gov

## CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that this document complies with Fed. R. App. P. 32(a)(5) and (6) because it uses 14-point Times New Roman, a proportionally spaced font.

I also certify that this document complies with D.C. Cir. R. 27(c) because according to Microsoft Word's count, it has 4,878 words, excluding the parts of exempted under Fed. R. App. P. 32(f).

Finally, I certify that on August 10, 2026, I electronically filed this document with the Court's CM/ECF system, which will serve each party.

_/s/    Sue Chen_
Sue Chen